UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*********************************
                                  *
Ann Marie Porto and Nicholas Porto, Individually  *
and on Behalf of Stephen Colon, a Minor Person    *
with a Disability                                 *
                                                  *
Vs.                                               *   DOCKET NO.
                                                  *
Town of Tewksbury, Town of Tewksbury Public Schools, *
Town of Tewksbury School Committee,               *
Christine L. McGrath, James McGuire,              *
Kevin P. McArdle, Pauline King, Loreen R. Bradley, *
Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, *
Jennifer A. Fiore, Julie E. Bossdorf-Paras,       *
Eleanor Edelstein, Robert Ware, Sharon J. Moser,  *
William X. Traveis, Kara M. Buckley and Allison Dixon *
                                                  *
*********************************
```

04 10003 PBS

MAGISTRATE JUDGE Bowler

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**I. PARTIES**

1. Ann Marie Porto and Nicholas Porto (hereinafter the "Portos" or the "Guardians") have been the legal guardians of Stephen Colon since June 12, 1991.

2. Stephen Colon ("Stephen") is the paternal nephew of Ann Marie Porto. Stephen has resided with the Guardians since he was 13 months old.

3. The Guardians and Stephen reside in Tewksbury, Massachusetts. Stephen began attending the Tewksbury Public Schools in 1994.

4. The Town of Tewksbury (hereinafter "Tewksbury") is a municipality in the Commonwealth of Massachusetts.

5. The Tewksbury Public Schools is a division of the Town of Tewksbury.

6. The Tewksbury School Committee oversees policies and procedures for the public school system. Christine L. McGrath, PhD, is the Superintendent of the Tewksbury Public Schools.

1

7. The following public school administrators were employed by Tewksbury and directly involved in the administration and/or implementation of educational services for Stephen during his term in the Tewksbury Public Schools: James McGuire, Principal of the John W. Wynn Middle School; Kevin P. McArdle, Principal of the Heath Brook Elementary School and the J.F. Ryan Elementary School; Pauline King, Vice Principal of the Heath Brook Elementary School; Loreen R. Bradley, Principal of the Dewing Elementary School; Michelina DeAngelis, Director of Student Services; Cheryl D. Porcaro, System Team Coordinator.

8. The following public school teachers were employed by Tewksbury and directly involved in the implementation of educational services for Stephen during his term in the Tewksbury Public Schools: Carol A. Gallo, Christine Hassan, J. Fiore, Julie E. Bossdorf-Paris and Eleanor Edelstein.

9. The following public school personnel and staff were employed by Tewksbury and directly involved in the implementation of educational services for Stephen: Robert Ware, Behavior Modification Specialist at the Wynn Middle School; Sharon J. Moser, Special Education Guidance Counselor at the J.F. Ryan Elementary School; William X. Traveis, Adjustment School Counselor at the John W. Wynn Middle School; Kara M. Buckley, Classroom Aide at the John W. Wynn Middle School; and Allison Dixon, Special Education Classroom Aide at the John W. Wynn Middle School.

## II. JURISDICTION

10. The United States District Court for the District of Massachusetts has jurisdiction over matters involving a federal question.

11. The United States District Court for the District of Massachusetts has authority to address Plaintiffs' state law claims under the court's supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 [17].

## III. FACTUAL ALLEGATIONS

12. The Portos have cared for Stephen since he was 13 months old. Mrs. Porto is Stephen's paternal aunt. The Portos obtained guardianship of Stephen on June 12, 1991, when Stephen was five years old. Stephen has resided with the Porto family at all times since he was thirteen months old until February 2002 when he was placed at the Eagleton School in order to receive therapeutic educational programming in a residential setting.

13. Stephen is a person with a disability. He has been diagnosed with Fetal Alcohol Syndrome, moderate mental retardation (FS IQ 62 in 5/99 testing, 65 in 4/01

2

testing) and general global delays. Stephen has received special education services since age three. He first received services in Tewksbury during the 1994-1995 school year as a first grade student at the Heath Brook Elementary School. Tewksbury has always identified Stephen as a special needs student and has provided educational services and an individualized education plan ("IEP") for each school year from his enrollment to the current time.

14. Several weeks after Stephen started school in Tewksbury, he was moved from a regular education class to a specialized class with eight boys. Richard Collins ("Richard") and Stephen have been classmates since the first grade.

15. Stephen's history of being sexually harassed and assaulted at school by Richard began in 1994. In the 1994-1995 school year at the Heath Brook Elementary School, Mrs. Porto notified Stephen's first grade teacher, Mrs. Mason, that Richard was using profanity and telling Stephen sexually explicit stories at school. Mrs. Mason directed Mrs. Porto to speak to Richard's mother.

16. In following up with Richard's mother as directed, Mrs. Porto was informed that Richard was adopted with a known history of sexual abuse.

17. In the 1995-1996 school year when Stephen was in the second grade, Stephen continued to complain to Mrs. Porto that Richard was using profanity and telling stories about sexual activity. When Mrs. Porto approached Mrs. Gallo about Richard's ongoing behavior, Mrs. Gallo told her that she had already spoken to Richard's mother. During the same school year, Mrs. Porto also reported that Stephen's classmates were verbally and physically abusing him during recess. She was particularly concerned given Stephen's known disability and decreased social skills. Mrs. Porto specifically requested that the school supervise Stephen on the playground during recess.

18. In the 1996-1997 school year, Stephen's third grade teacher was again Mrs. Gallo. During the third grade, Mrs. Porto found out through reading Stephen's diary that there were ongoing problems that she had never been notified of. Mrs. Porto confronted Mrs. Gallo with the diary. Stephen's diary indicated that Richard was also exposing his penis to Stephen at school. Stephen also wrote in the diary that Richard forced him to lick urine off the ground in the schoolyard. Mrs. Gallo acknowledged the ongoing problems and reassured Mrs. Porto that the matters had been addressed. At this time, Mrs. Porto requested a teacher's aid to monitor Stephen at all times.

19. Upon information and belief, Richard has a history of sexualized behaviors toward other children throughout his career at Tewksbury Public Schools. Later in the third grade year, another parent informed Mrs. Porto that Richard was sexually inappropriate with her child as well. Alarmed by this information, Mrs. Porto again questioned Stephen. Stephen informed her that while at school, Richard touched his (Stephen's) penis and that Richard provided graphic

3

descriptions of oral sex and sexual positions. Richard also discussed his sister's sexual activity with Stephen. Mrs. Porto reported this additional information to Mrs. Gallo and to school officials at the yearly special education team meeting.

20. In the 1997-1998 school year, Mrs. Porto made several complaints to Mrs. Fiore, Stephen's fourth grade teacher. Mrs. Porto reported that Stephen was coming home upset and bruised and that he was still being physically, emotionally and verbally abused on the playground. Mrs. Fiore indicated that she was aware of the situation and would speak to the children.

21. Stephen's complaints escalated during the course of the fourth grade school year. Stephen complained of being physically and verbally abused on the school bus as well. Mrs. Porto reported this conduct to Vice Principal King and to Principal McArdle. Mr. McArdle re-assigned Stephen to a seat behind the school bus driver. Nevertheless, the abuse continued.

22. After reporting the physical and verbal abuse of Stephen to Mrs. Fiore, Vice Principal King and Principal McArdle, Mrs. Porto witnessed Stephen being chased, taunted and hit over the head with a stick during an unannounced visit to the school.

23. The 1998-1999 school year was Stephen's fifth grade year. Stephen attended the Dewing Elementary School. Stephen continued to report to Mrs. Porto that he was verbally and physically abused in the schoolyard. Mrs. Porto reported this conduct to Julie E. Bossdorf-Paras, Stephen's fifth grade teacher. She also reported this conduct to the school headmaster.

24. While in the fifth grade, Stephen disclosed that Richard performed oral sex on him while on the special education transportation vehicle. Stephen also reported that Richard touched and penetrated his buttocks with his fingers. Mrs. Porto notified Mrs. Bossdorf-Paras and Principal Bradley. At this time, Mrs. Porto threatened to call the police. She also filed a child abuse and neglect report pursuant to M.G.L. c. 119, § 51A regarding the activity between Stephen and Richard.

25. Mrs. Bossdorf-Paras acknowledged to Mrs. Porto that she witnessed inappropriate touching between the children in the classroom. Principal Bradley promised to monitor the children in the classroom and to provide separate transportation. Thereafter, Stephen again reported that Richard grabbed him and tried to stick his fingers in his buttocks through his pants while in school. Mrs. Porto reported this conduct to Principal Bradley and threatened to call the police. Principal Bradley stated that she would notify Richard's mother, but that there was nothing she could do because it was the last day of school.

26. Mrs. Porto requested additional supervision at Stephen's fifth grade special education team meeting. Mrs. Porto was told this request did not need to be in the

Individualized Education Plan ("IEP") and that Stephen was appropriately supervised.

27. Mrs. Porto was never informed of a complaint or grievance procedure following any of the above-identified incidents. Although Tewksbury was on notice of the verbal, physical and emotional abuse and sexual harassment that Stephen was subjected to, Tewksbury provided no services or safeguards sufficient to prevent or to protect Stephen from such conduct.

28. The Tewksbury School Committee is charged with the responsibility of establishing compliance with state and federal anti-harassment and anti-discrimination laws.

29. In the 1999-2000 school year, Stephen attended the J.F. Ryan Elementary School. Julie E. Bossdorf-Paras was Stephen's primary sixth grade teacher. Despite Mrs. Bossdorf-Paras' prior knowledge of the ongoing safety issues and exposure to sexualized behaviors, Stephen continued to report physical touching by Richard.

30. Mrs. Porto requested one-to-one supervision of Stephen in the sixth grade based on the inappropriate contact between Stephen and Richard. Mrs. Porto also addressed this request at the sixth grade special education team meeting. The team assured Mrs. Porto that Stephen was supervised and monitored at all times by the classroom teacher as well as other classroom personnel.

31. In the 2000-2001 school year, Stephen attended the seventh grade at the John W. Wynn Middle School. Eleanor Edelstein was Stephen's seventh grade teacher. At the beginning of the school year, Mrs. Porto asked Mrs. Edelstein to ensure that Stephen was supervised at all times. At a special education team meeting, Adjustment Counselor William X. Traveis and Special Education Classroom Aide Allison Dixon assured Mrs. Porto that Stephen would be monitored at all times. Nevertheless, Richard had unsupervised access to Stephen in the seventh grade including but not limited to contact in the gym locker room and gym bathroom.

32. Behavior Modification Specialist Robert Ware had knowledge that Richard exposed Stephen to sexualized and other harassing behaviors in the seventh grade and in prior years.

33. Upon information and belief, Sharon Moser, Christine L. McGrath, James McGuire, Kevin P. McArdle, Loreen R. Bradley, Michelina DeAngelis and Cheryl D. Porcaro were aware via participation in educational team meetings and in their administrative capacity of the ongoing discrimination, harassment and abuse of Stephen.

34. Richard was allowed unsupervised access to Stephen while they were seventh grade students in Ms. Edelstein's classroom. Then classroom aides Kara Buckley, Allison Dixon and Elaine Karl were aware of sexualized behavior between the

5

boys. On January 11, 2001, Ms. Edelstein directed Mr. Ware to locate Richard and Steven, who were both out of the classroom. Mr. Ware discovered Richard and Stephen engaged in sexual activity in the boy's restroom.

35. As a result of the January 11, 2001 incident, Mrs. Porto filed a child abuse and neglect report pursuant to M.G.L. c. 119, §51A with the Department of Social Services ("DSS"). After an investigation pursuant to M.G.L. c. 119, §51B, DSS found there was reasonable cause to believe that Tewksbury Public Schools and its personnel were negligent in supervising Stephen and Richard.

36. Stephen was seen at the Floating Hospital for Children Emergency room following the January 11, 2001 sexual assault.

37. The Tewksbury Police were notified and completed an incident report. Upon information and belief, the police retrieved semen stained underwear from Mrs. Porto's residence on January 12, 2001. The police sent the underwear to the state lab in Sudbury.

38. The harassment and abuse Stephen suffered at school has caused irreversible emotional trauma and psychiatric harm. Stephen has been hospitalized numerous times since the January 11, 2001 incident including: Charles River Hospital, Lowell Youth Treatment Center, New England Medical Center and the Bournewood Hospital. Stephen is unable to attend public school. From February 2002 to date, Stephen has resided in a residential therapeutic treatment facility.

39. Numerous elements of Stephen's life have been compromised indefinitely including but not limited to unrestricted access to the community and to his family and his ability to participate in independent gainful employment.

40. Stephen has substantial damages as a result of years of sexual abuse and harassment including but not limited to the following: He has received extensive psychological counseling, and it is expected that such counseling will be required for the indefinite future. Stephen resides in a full-time residential facility, which precludes regular daily contact with his family. He has lost the society and companionship of his guardians and his extended family.

41. The Portos' relationship with Stephen has been damaged as a result of years of sexual abuse and harassment including but not limited to the following: Stephen's anger about his placement outside the home has damaged the once trusting and loving relationship shared with his guardians. Their interaction is now guarded and requires constant supervision that imposes restrictions upon the family and their activities. The Portos are also affected by their son's inability to join the family business in the future.

42. Ann Marie Porto lost the ability to provide specialized foster care, which was her primary source of income. Mrs. Porto was also denied the right to adopt two

6

children who resided in her home for an extended period of time thereby causing further emotional distress.

### IV. CAUSES OF ACTION

### COUNT I

### TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972
### (20 U.S.C. § 1681 (a))

43. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 42 of this Complaint.

44. Upon information and belief, Tewksbury Public Schools receive federal funding.

45. Defendants had actual knowledge of sexual harassment against Plaintiff.

46. Defendants had authority to address the sexual harassment against Plaintiff.

47. Defendants were deliberately indifferent in responding to sexual harassment against Plaintiff.

48. Sexual harassment was so severe and pervasive and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by the school.

### COUNTS II AND III

### RIGHT TO FREEDOM FROM SEXUAL HARASSMENT
### (M.G.L. c. 214, §1C and M.G.L. 151 C)

49. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 48 of this Complaint.

50. Stephen was subject to conduct of a sexual nature that unreasonably interfered with his education by creating an intimidating, hostile, humiliating and sexually offensive educational environment.

## COUNT IV

## DISCRIMINATION IN PUBLIC SCHOOLS
## (M.G.L. c. 76, § 5)

51. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 50 of this Complaint.

52. Stephen was excluded from and discriminated against obtaining the advantages, privileges and courses of study at the Tewksbury Public Schools as a result of sexual harassment.

53. Defendants failed to establish and/or utilize effective policies and procedures and/or to implement monitoring and evaluation practices to insure that sexual harassment was eliminated.

54. Sexual harassment discrimination created an obstacle to equal access to Tewksbury school programs for Stephen.

55. Defendants failed to prevent harassment and discrimination and failed to respond promptly to such discrimination and harassment when they had knowledge of its occurrence.

56. Defendants failed to provide and/or utilize adequate in-service training regarding the prevention of discrimination and harassment and the appropriate methods for responding to such discrimination and harassment in a school setting.

## COUNT V

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT

57. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 56 of this Complaint.

58. Stephen is a person with a disability. He has been diagnosed with Fetal Alcohol Syndrome and moderate mental retardation.

59. Stephen's disability has a substantial limitation on his major life activities.

60. Stephen was denied access to policies and procedures regarding protections against sexual harassment and sexual abuse that non-disabled students are afforded.

## COUNT VI

### DEPRIVATION OF RIGHTS
### (42 U.S.C. 1983)

61. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 60 of this Complaint.

62. At all times material to this Complaint, Defendants were acting under color of federal and state laws, statutes, ordinances, codes and regulations while depriving the Plaintiff of established legal rights, including but not limited to:

    a) the right to be free from sexual harassment and sexual abuse;
    b) the right to be free from discrimination on the basis of disability; and
    c) equal access to education.

## COUNT VII

### MASSACHUSETTS TORT CLAIMS ACT
### (M.G.L. c. 258, § 4)

**A. Negligence**

63. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 62 of this Complaint.

64. Plaintiffs have complied with the statutory prerequisites for filing a claim for negligence against the Town of Tewksbury.

65. The Town of Tewksbury was negligent in failing to provide a safe environment free from sexual harassment, physical, verbal and emotional abuse and discrimination.

66. As a direct and proximate result of the negligence of the Defendant, Stephen Porto suffered the injuries and damages described herein.

67. As a direct and proximate result of the negligence of the Defendant, Ann Marie Porto suffered the injuries and damages described herein.

68. The Town of Tewksbury is liable for the negligent acts of all school personnel acting within the scope of their employment while engaged in the conduct alleged in this Complaint.

### B. Negligent Infliction of Emotional Distress

69. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 68 of this Complaint.

70. The Town of Tewksbury negligently inflicted emotional distress upon Stephen by allowing repeated, foreseeable incidents of sexual harassment, abuse and discrimination against him.

71. Defendant's negligence caused the Plaintiff to suffer emotional distress.

72. Plaintiff's emotional distress was caused by sexual harassment, abuse and discrimination. Plaintiff's emotional distress also caused physical injury manifested by objective symptomatology supported by expert medical testimony.

73. Plaintiff's distress was reasonably foreseeable. Defendant was aware that Plaintiff's disability rendered him especially susceptible to emotional distress and a reasonable person would have suffered distress under the circumstances.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 73 of this Complaint.

75. Defendants knew or should have known that emotional distress was the likely result of the conduct described herein.

76. The sexual abuse, harassment and discrimination described herein is extreme and outrageous, is beyond all possible bounds of decency and is utterly intolerable in a civilized community.

77. The acts and omissions of the Defendants were the cause of the Plaintiff's distress.

78. The emotional distress sustained by the Plaintiff was severe and of a nature that no reasonable man could be expected to endure.

## COUNT VIII

## LOSS OF CONSORTIUM
## (M.G.L. c. 231, § 85X)

79. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 78 of this Complaint.

80. Ann Marie and Nicholas Porto suffered a loss of society and companionship with Stephen as described herein.

81. Stephen Porto suffered a loss of society and companionship with his parents as described herein.

## COUNT IX

## LOSS OF ENJOYMENT OF LIFE

82. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 81 of this Complaint.

83. As a result of Defendants' negligence, Stephen's ability to enjoy of life has been substantially diminished as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

1. Award compensatory damages against the Defendants;

2. Award punitive damages against the Defendants;

3. Award Plaintiff all reasonable costs, expenses and attorney's fees; and

3. Such other relief as the Court deems just and proper.

Plaintiffs demand a jury trial on all claims so triable.

11

PLAINTIFFS
By their Attorneys,

*[signature]*
Lynn A. Leonard
Attorney-At-Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662

*[signature]*
Anita B. Sullivan
Attorney-At-Law
458 Main Street
Wakefield, MA  01880
(781) 224-0701
B.B.O. No. 628873

Dated: January 5, 2004