UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

Ann Marie Porto and Nicholas Porto, Individually )
and on Behalf of Stephen Colon, a Minor Person )
with a Disability, )
            **Plaintiff** )
    )
    )
vs. )
    )
    )
    )
Town of Tewksbury, Town of Tewksbury Public )
Schools, Town of Tewksbury School Committee, )
Christine L. McGrath, James McGuire, )
Kevin P. McArdle, Pauline King, )
Loreen R. Bradley, Michelina DeAngelis, )
Cheryl D. Porcaro, Carole A. Gallo, )
Jennifer A. Fiore, Julie E. Bossdorf-Paras, )
Eleanor Edelstein, Robert Ware, Sharon J. Moser, )
William X. Traveis, Kara M. Buckley, )
and Allison Dixon, )
          **Defendants**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter arises from an incident that occurred on January 12, 2001, when Stephen Porto and a classmate were found in the bathroom of the Wynn Middle School engaged in consensual, inappropriate sexual behavior. The Plaintiffs claim that Stephen was the subject of sexual harassment by this classmate culminating with this incident. The crux of all nine counts contained in the Plaintiffs' Complaint is that the Defendants knew about the sexual harassment alleged and were deliberately indifferent in responding.

The Defendants the Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine McGrath, James McGuire, Kevin P. McArdle. Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro,

Carole A. Gallo, Jennifer A. Fiore, Julie E. Bossdorf-Paris, Eleanor Edelstein, Robert

Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon, move

for summary judgment at this time to dismiss all of Plaintiffs' claims against them on

the grounds that the Plaintiffs will not be able to show based on the undisputed

material facts that Stephen was the subject of sexual harassment by his classmate as the

behavior engaged in between the boys was not unwanted.  As there are no material

issues of fact in dispute, the Defendants' are entitled to judgment as a matter of law as

to all of Plaintiffs' claims against them.[1]

## I.    <u>Stephen was not sexually harassed by his classmate</u>

In their Complaint, the Plaintiffs improperly bring nine counts against each of

the nineteen defendants named without specifying which Counts they intend to bring

against which of the sixteen individually named defendants or against the three Town

Defendants. Regardless, all of the Counts are based on the Plaintiffs' assertion that

Stephen Colon was sexually harassed by his classmate. The gravamen of any sexual

harassment claim, however is that the alleged sexual advances were "unwelcome".

<u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57 (1986); <u>Beaupre v. Cliff Smith &</u>

<u>Associates</u>, 50 Mass.App.Ct. 480 (2000).  Here, the Plaintiffs will not be able to present a

scintilla of evidence that any of the sexual behavior alleged to have occurred between

the boys was unwelcome to Stephen.  <u>See</u> Exhibit 7at p. 2.[2]  Stephen "learned that it was

good to have sex, and the therapist [told Ms. Porto] that [she] might catch him

masturbating now" because he is an adolescent boy.  It is normal for boys to do it.

Exhibit 1 at pp. 157-159.  ". . . [Stephen] learned that having sex is fun.  I mean everyone

---

[1] On November 22, 2004, the Plaintiffs agreed to dismiss Pauline King, Jennifer Fiore, and Sharon Moser as Defendants.  Thirteen individual Defendants remain.

[2] All exhibits referenced herein are those attached to the Defendants' Statement of Undisputed Facts.

knows having sex is fun. And here is a child that is not capable of understanding what it is, but has that feeling in him that it's good to have it. So when [the classmate said] – "let's do it." "Okay." It feels good. Let's do it." Exhibit 1 at pp. 206-207. By Ms. Porto's own admission, none of the sexual behavior even if all initiated by the classmate as Ms. Porto alleges was unwelcome to Stephen as the behavior was "fun" and felt "good" to Stephen. Id. This welcome behavior, while not always appropriate, does not constitute sexual harassment.

Not only will the Plaintiffs not be able to prove that any of the sexual behavior alleged was not unwelcome, they will also not be able to show, and in fact have not alleged, that Stephen or Ms. Porto ever told any of the individual Defendants or anyone at the Tewksbury Public Schools that the inappropriate sexual behavior alleged was unwanted by Stephen and was anything but mutual behavior between the two boys. Exhibit 1 at p. 195. "Stephen never told me. He never told the teacher. He never told anybody." Id. While Ms. Porto is clearly upset that Stephen was engaging in any type of sexual activity and is under the misguided belief that Stephen would never have engaged in any sexual behavior at all if it had not been for his classmate, the fact that he engaged in such activity with a classmate even if the sexual behavior was as Ms. Porto alleges all taught to Stephen by his classmate while at the Tewksbury Public Schools, does not turn that activity into sexual harassment. Exhibit 1 at pp. 247-248. The activity might be characterized as inappropriate for a school setting, but just because it is inappropriate does not mean that the behavior was unwelcome as required to bring a claim of sexual harassment. As all of the evidence shows that the sexual behavior alleged by Ms. Porto even if true was consensual, all of the Plaintiffs' claims must fail as all are based on the Plaintiffs' allegations that Stephen was being sexually harassed by his classmate and that the Defendants were deliberately indifferent in their response.

## II.    Plaintiffs' Title IX Claim Fails as a Matter of Law.

In Count I of their Complaint, the Plaintiffs claim that the Defendants violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), because the Defendants had knowledge of sexual harassment against the Plaintiff Stephen Colon, were deliberately indifferent in responding to the sexual harassment alleged which sexual harassment was so severe and pervasive and objectively offensive, that Stephen was deprived of access to educational opportunities and benefits provided by the Defendants.[3] The Plaintiffs will not be able to prevail on their Title IX claim against the Town of Tewksbury Public Schools (the "Town") because as set forth in Section I above, they will not be able to prove that Stephen was being sexually harassed by his classmate.

Assuming arguendo that all of the behavior alleged by the Plaintiffs in their Complaint did occur and that the consensual sexual behavior alleged to have occurred between the boys could somehow be construed as sexual harassment of Stephen by his classmate, the Plaintiffs will still not be able to prevail on their Title IX claim as there is absolutely no evidence that the sexual behavior alleged, was so severe and pervasive and objectively offensive that it deprived Stephen of access to educational opportunities and benefits provided by the Town or that the Town was deliberately indifferent in responding when suspicions arose or allegations were made by Ms. Porto that Stephen and his classmate were engaged in sexual experimentation. Recipients of federal funding may be liable under Title IX of the Education Amendments of 1972, for

---

[3] The Plaintiffs do not set forth in their Complaint which Counts they intend to bring against each of the specific nineteen named Defendants. As Title IX only applies to education programs or activities receiving Federal financial assistance, the Town of Tewksbury Public Schools (the "Town") is the only Defendant against which the Plaintiffs can properly bring a Title IX claim. Davis v. Monroe County Bd. Of Edu, 526 U.S. 629, 119 S.Ct. 1661 (1999). Accordingly, Plaintiffs' Title IX claim contained in Count I of their Complaint should be dismissed against all of the other Defendants.

subjecting their students to discrimination only where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority. Davis v. Monroe County Board of Education et al., 526 U.S. 629 (1999). That recipients may be liable for their deliberate indifference to known acts of peer sexual harassment – does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. Id. at p. 648. In fact, Courts have refrained from second-guessing the disciplinary decisions made by school administrators. School administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed "deliberately indifferent" to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof, is clearly unreasonable in light of the known circumstances. The recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable. This is not a mere "reasonableness" standard. In an appropriate case, there is no reason why courts on a motion for summary judgment could not identify a response as not "clearly unreasonable" as a matter of law. Id. at p. 649. Courts moreover, must bear in mind that schools are unlike the adult workplace and children may regularly interact in a manner that would be unacceptable among adults. Damages are not available for simple acts of teasing, shoving, pushing and gender-specific conduct that is upsetting to the students. Id. at p. 652.

Here, the Town of Tewksbury Public Schools was not "clearly unreasonable" in their response to Ms. Porto's allegations that Stephen was being teased or that he was allegedly engaged in sexual experimentation with his classmate in March 1999. Likewise, the Town's response when suspicions arose of inappropriate touching between the boys in October 2000 was not unreasonable. The Town of Tewksbury

Public Schools does not deny that Stephen was teased on occasion while at school and on the school bus. Stephen's teachers have no memory, however, of the specific acts of teasing alleged by Ms. Porto. In addition, Ms. Gallo, Stephen's 3rd grade teacher, was never shown a diary by Ms. Porto, as Ms. Porto alleges, in which Stephen wrote of ongoing problems with his classmate or indicated that his classmate was exposing his penis to him at school or forced him to lick up urine and it is very doubtful that Stephen given his cognitive limitations would have been able to write that type of diary in second grade as alleged. See Exhibit 20.[4] Regardless, it is unfortunate, but not unusual, for teasing to occur in school. Exhibit 1 at pp. 67-69. Even though the conduct was no doubt upsetting to Stephen as it is to any child who is the subject of teasing or bullying, it is not sufficient conduct to find the Town of Tewksbury Public Schools liable under Title IX.

Further, even if sufficient, the Town of Tewksbury Public Schools and its staff's response to allegations of teasing was not unreasonable. "There were issues at various times and not only with Stephen where there was teasing going on, but they usually were dealt with when they happened." Exhibit 9 at pp. 47-48. There was always a staff person with the special education students to trouble shoot if an issue arose. Exhibit 9 at pp. 47-53. Teasing aside, the Town was not deliberately indifferent in response to Ms. Porto's allegations of inappropriate sexual behavior between the boys in March 1999 their 5th grade year and was not unreasonable in responding to suspicions of inappropriate touching between the boys October 2000, their 7th grade year. Despite that there was no allegation by anyone in 1999, 2000 or 2001 that the sexual behavior was unwelcome by either boy, the Town took the allegations seriously and responded appropriately.

---

[4] The Plaintiffs have not provided a copy of the alleged diary to the Defendants.

Curiously, no inappropriate sexual behavior between Stephen and his classmate was reported to anyone in the Town until March 1999, when Stephen was discovered to be engaging in inappropriate sexual behavior with a younger foster sister while at Ms. Porto's house under Ms. Porto's supervision. Exhibit 1 at pp. 130-145. Ms. Porto was angry at Stephen and only after this discovery did she approach Ms. Paris, Stephen's 5th grade teacher, and tell her not only about the inappropriate behavior between Stephen and his foster sister that was not consensual on the foster sister's part, but also alleged that Stephen had been engaged in sexual experimentation with his classmate on the special education van that transported them to school. Exhibit 9 at pp. 53-55; Exhibit 1 at p. 140. Despite knowing that there was bad blood between the families and not having witnessed any inappropriate conduct between the boys, Ms. Paris reported the incident to the Principal Loreen Bradley and agreed to keep the boys apart as much as possible at Ms. Porto's request. Exhibit 9 at pp.62-66. Ms. Porto did not allege at that time that the touching between the boys on the bus was not consensual or that Stephen was being sexually harassed by his classmate. Exhibit 1 at pp. 141-145. Principal Bradley reported Ms. Porto's allegations to the Superintendent of the Tewksbury Public Schools, Christine McGrath. Exhibit 8. According to procedure, the Tewksbury Police Department was notified and an investigation into the allegations was conducted. After conversations with Town Counsel, the Police Department, and the van driver, Ms. Porto was contacted and informed of the Police Department's finding. Exhibit 8. Only after she was informed of the result of the Police Department's investigation, did Ms. Porto allege that there was additional contact between the boys in the classroom and at recess. Id. Ms. Bradley filed a 51A Application with the Department of Social Services based on Ms. Porto's allegations. Exhibit 8. The Department of Social Services investigated the allegations and screened out the complaint. Exhibit 10. In response to the

allegations and at Ms. Porto's request, the Tewksbury Public Schools agreed to
transport the boys to school in separate vans. In a memorandum to Dr. McGrath after
the investigations were conducted, Ms. Bradley noted that the boys were assigned to
the Life Skills classroom that has three adults assigned to it at all times and that while at
the Dewing School the boys were never left unattended. Ms. Bradley recommended
that heightened restrictions be placed on the boys that included that they never travel
alone in or outside of the building and that both were to be escorted to and from the
van transportation and that they were to be separated during in class groupings.
Exhibit 8. The Town's response to Ms. Porto's allegations was certainly reasonable. The
allegations were taken seriously, reported to the appropriate authorities, and even
though the allegations were screened out, steps were taken to keep the boys separate as
much as possible given that there was only one Life Skills class for their grade level in
the Tewksbury Public School District.

Following Ms. Porto's allegations in 5th grade 1998-1999, there were no suspicions
or allegations made by anyone of any inappropriate sexual behavior or conduct
between the boys until their 7th grade year 2000-2001. The IEP developed for Stephen at
the end of his 5th grade year (the year the bus incident allegedly occurred) and at the
end of 6th grade did not include any heightened restrictions or supervision to be placed
on Stephen above and beyond the heightened supervision and low staff to student ratio
already provided to him as a member of the Life Skills Classroom. Exhibit 12, 13, and
14. The IEPs did not require that Stephen always have an aid to shadow him when he
traveled within the school building. Ms. Porto did not request in the IEPs that Stephen
have a one on one aide with him at all times. Id. Ms. Porto could have requested such
an aid and if not provided for in Stephen's IEP could have rejected the IEP and
appealed to the Bureau of Education Appeals. Ms. Porto was well aware how to appeal

an IEP as she was given her parental rights at the beginning of each ISET meeting and had in fact rejected and appealed IEPs for both Stephen and for her daughter in the past. Exhibit 1 at pp. 167-169.

Further, Tewksbury staff members present at the ISET meetings at the end of Stephen's 5th grade year, (Ms. Paris and Ms. Porcaro) and 6th grade year (Ms. Porcaro) were well aware of Ms. Porto's 1999 allegations and of her desire to have the boys separated as much as possible. Exhibit 11. The Team, of which Ms. Porto was a member, did not believe that it was necessary that Stephen have a one on one aid present or that any heightened restrictions be placed on the two students over and above the heightened supervision already given to the seven Life Skills students. Again, if Ms. Porto objected to those services being left out of Stephen's IEPs she could have rejected the IEP at that time and appealed to the Bureau of Education Appeals. Ms. Porto cannot now object to services not provided for in Stephen's IEP by means of this federal lawsuit as Ms. Porto did not exhaust her administrative remedies. Kelly K. v. Town of Framingham, 36 Mass.App. Ct. 483, 633 N.E.2d 414 (1994).

In October of Stephen's 7th grade year, Alison Dixon one of the certified aids in the Life Skills classroom was told by another certified aid in the classroom that she thought that the boys were rubbing one anothers' thighs while sitting together in the classroom on two occasions. In addition, Ms. Dixon was told that yet another certified aid in the classroom, Kara Buckley, believed that Stephen had his hands under his classmate while they were sitting in the bleachers and that the boys later reversed positions. Exhibit 6 at pp. 13-16; Exhibit 15. Ms. Dixon reported her suspicions to Robert Ware, the Behavioral Management Facilitator and/or Sharon Moser and put her suspicions in writing. Id.; Exhibit 16 at pp. 37-40. Mr. Ware informed other administrators about the suspicions and collaboratively it was decided that the

appropriate response would be to educate the boys through counseling as to what is and is not sexually appropriate behavior. Exhibit 6 at pp. 69-75. Such a discretionary decision on the part of the School administrators was certainly reasonable given the circumstances as was the decision not to call the boys parents, but rather, to use the occasion as an educational opportunity to counsel the boys as to appropriate and inappropriate sexual behavior. Exhibit 19 at pp. 40-44. The boys met with the School Adjustment Counselor William Traveis who spoke with them about the suspicions. Both boys admitted that they had touched each other and neither told anyone at anytime that the touching was not mutual. Both were embarrassed, very apologetic and promised Mr. Traveis that they would not do it again. Exhibit 17 at pp. 63-68. Further, Ms. Edelstein and the other aides in the classroom knew to keep the boys separated as much as possible when together. The Town of Tewksbury's response to the suspicious touching was reasonable in light of the suspicions raised and the desire to educate the boys as to proper behavior. While Ms. Porto clearly believes that the boys should have been disciplined for the suspicious touching, such discipline is left to the discretion of the School Administrators and even with the benefit of hindsight, Mr. McGuire the Principal of the Wynn Middle School at the time still would not have disciplined the boys for the behavior alleged. See Exhibit 19 at pp. 42-44, 63,64, 116-129. While Ms. Porto obviously does not agree with the School's response, the response cannot be said to be unreasonable in light of the boys cognitive limitations, the mutual touching alleged and the desire to change the students behavior as opposed to merely punishing the students with no resulting change in behavior. Id.

While the boys were found in the bathroom with their pants down in January 2001 and admitted to touching one another, the fact that the incident occurred does not make the School's response to the prior incidents unreasonable. The teachers and aides

were aware that the boys were not to be left alone together and in fact as soon as Ms.

Edelstein realized that Stephen had not gone to his locker as requested, but rather had

followed the classmate, who had permission to be in the bathroom, into the bathroom,

she asked Mr. Ware to look in the bathroom to see if the boys were there. Exhibit 19 at

p. 114; Exhibit 5 at pp. 63, 64. Given that all of this occurred during the passing

between classes, at most, the boys were together in the bathroom at Stephen's behest for

two minutes. Id.; Exhibit 16 at p. 89. When he found the boys, Mr. Ware asked the boys

if they were o.k. and both responded that they were. Both admitted that Stephen had

followed Richard into the bathroom and that the two had engaged in touching. The

boys have never alleged that the touching was anything but consensual. Exhibit 21 –

Notes written by Mr. Ware dated January 12, 2001. The School again responded

reasonably and called the Tewksbury Police Department who in turn called the District

Attorney's Office. After investigation and a meeting between the District Attorney, the

parents and School officials, it was again determined that the matter should be handled

by counseling the boys as to appropriate sexual behavior. Ms. Porto was upset with all

authorities including the District Attorney's Office for not disciplining or prosecuting

the boys and instead, all recommending that the boys receive counseling. Exhibit 1 at

pp. 224, 225; Exhibit 19 at pp. 117-129. While Ms. Porto still wants and believes that the

boys should have been disciplined and prosecuted for engaging in the sexual behavior,

her desire to see the boys punished for consensual sexual contact does not make the

Town's response to the incident unreasonable. As Ms. Porto will not be able to prove

that the Town's response to allegations of inappropriate sexual behavior was not

reasonable, she will not be able to prevail on her Title IX claim.

   Finally, even if the Plaintiffs can prove that Stephen was sexually harassed by his

classmate and that the School did not respond to the alleged harassment in a reasonable

manner, they will not be able to show that the sexual harassment was so severe as to deprive Stephen of an education. First, the Town was made aware of alleged behavior on only two occasions, first in 1999 and again when suspicions were raised in October 2000 of inappropriate touching. Even if these two occasions could somehow be construed to be pervasive, Stephen was not deprived of an education, but rather, was provided with extensive special educational services in a seven student Life Skills classroom. He was making progress appropriate for his cognitive abilities and loved school. Exhibit 1 at pp. 186-187; Exhibit 9 at pp. 99, 100. Stephen, as required was evaluated every three years by a professional and at no time did any of those professionals recommend services that were not provided for by the Town or even assert that Stephen's rate of progress was not appropriate. Ms. Porto never objected to the extent of services provided for Stephen in his annual IEPs and in any event, Ms. Porto cannot now challenge the services provided by way of this federal lawsuit as she did not exhaust her administrative remedies. Exhibits 2, 12, 13, and 14. After January 2001, the Town was willing to have Stephen return to school, but Ms. Porto refused. Exhibit 4. Accordingly, the Town paid for the provision of educational services to Stephen first through tutoring and then at Ms. Porto's request, Stephen was placed in a residential program rather than a day program because she did not want Stephen to live at her home. While not physically located in a Tewksbury Public School, the Town pays for Stephen's residential program and related services, which services are all approved by Ms. Porto in Stephen's annual IEPs. Exhibit 4.

As the Plaintiffs will not be able to prove that Stephen was sexually harassed by his classmate, that the sexual harassment alleged even if all true was so severe and pervasive as to deprive Stephen of an education or that the Town did not respond

reasonably to the allegations and suspicions of inappropriate sexual contact between the two boys, the Plaintiffs Title IX claim must fail.

**III.    The Plaintiffs' Complaint fails to state a cause of action under M.G.L. c. 214 §1C and M.G.L. c. 151C, the Fair Education Practices Act.**

In Count II and III of the Complaint the Plaintiffs allege that the Defendants violated M.G.L. c. 214, §1C and M.G.L. c. 151C, The Fair Educational Practices Act. The Plaintiffs' Complaint fails to state a cause of action under either of those statutes. While Chapter 151C does provide for a cause of action when an "educational institution" as described therein, discriminates against a student or sexually harasses a student in any program or course of study, it does not provide a cause of action for a claim of student on student sexual harassment. As the Plaintiffs' by their allegations here claim that Stephen Colon was sexually harassed and abused by another student, and not that he was sexually harassed by the School or any of its employees, his claim pursuant to M.G.L. c. 151C, must fail. Likewise, as Chapter 214 of the Massachusetts General Laws relies upon the definitions contained in Chapter 151B and 151C for sexual harassment, the Plaintiffs' claim under that statute must fail as well.

Regardless of the definition for sexual harassment contained in Chapter 151C, the Plaintiffs' claims must also fail because they did not timely file their Complaint with the Massachusetts Commission Against Discrimination ("MCAD"). Pursuant to M.G.L. c. 151C § 3(d), at the time Plaintiff's Complaint was filed, a petition must be filed with the Commission within six months after the alleged unfair educational practice was committed.[5] Here, the last unfair educational practice alleged was on January 11, 2001. There is no allegation that any incident took place after that date, and it is clear from the

---

[5] Since the filing of the Plaintiffs' MCAD Complaint, the period of time for filing an MCAD Complaint has been enlarged. The change in the statute of limitations period, however, is not retroactive.

Complaint, that the Plaintiffs were aware of the action and the history of alleged incidents by January 11, 2001. The Plaintiffs did not file their MCAD Complaint until October 2, 2001, well beyond the statute of limitations period required under Chapter 151C at the time. Accordingly, regardless of whether a valid cause of action exists for student on student sexual harassment pursuant to M.G.L. c. 151C, the Plaintiffs' Complaint pursuant to Chapter 151C must be dismissed as they did not fulfill the statutory prerequisite of timely filing their Complaint with the MCAD.

Even if timely filed, as argued in Section I above, the Plaintiffs will not be able to prove that Stephen was sexually harassed by his classmate as the sexual behavior alleged was consensual. Accordingly, Counts II and III of the Plaintiffs' Complaint must be dismissed.

## IV.   Stephen was not denied the right to attend Public Schools in Tewksbury.

In Count IV of their Complaint, the Plaintiffs allege that the Defendants by failing to establish and/or utilize effective policies and procedures and/or to implement monitoring and evaluation practices to insure that sexual harassment was eliminated excluded Stephen Colon from obtaining the advantages and privileges and course of study at the Tewksbury Public Schools in violation of M.G.L. c. 76, § 5. Not only is the Plaintiffs reliance on Chapter 76 incorrect, the plaintiffs claim that Stephen Colon was excluded from obtaining the advantages, privileges and course of study by Tewksbury School System is outrageous given the effort and resources that the Tewksbury School System has spent in insuring that Stephen Colon received the special education services required.

Again, as stated above in Section I, the Plaintiffs will not be able to prove that Stephen was sexually harassed by his classmate. Further as stated in Section II above, the Plaintiffs cannot appeal the provision of services agreed to annually by the ISET

team, which included Ms. Porto by means of this federal lawsuit as Ms. Porto did not exhaust her administrative remedies.

Chapter 76, § 5 provides that, "[e]very person shall have a right to attend the public schools of the town where he actually resides, subject to the following section. No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, religion, national origin or sexual orientation." M.G.L. c. 76, §5.   As the Plaintiffs have not set forth the basis for their Chapter 76, §5 claims, the Defendants assume for purposes of this motion that the Plaintiffs will argue that the Town violated Chapter 76, § 5 because Stephen no longer attends school in Tewksbury because of the sexual harassment alleged, but rather, attends the Eagleton School in Western Massachusetts.  However, the Plaintiffs' claim must fail not only because they will not be able to prove that Stephen was sexually harassed, but also because it was Ms. Porto who insisted that Stephen not return to the Town of Tewksbury Public Schools. Having refused to have Stephen return despite the Town's willingness to accept him back, Ms. Porto cannot now blame the Town. Further, it was only at Ms. Porto's insistence that Stephen was placed in a residential program.  The Town recommended day programs for Stephen in close proximity to his home, but Ms. Porto would not allow Stephen to live in her home.  Exhibit 11. Consequently, it is because of Ms. Porto's refusal to allow Stephen to come home that he has had to remain in a residential program.

Clearly from the language of the statute and the allegations contained in the plaintiffs' Complaint, they will not be able to prevail on their claim as there is no basis in fact to support the Plaintiffs' allegations that Stephen was excluded from or discriminated against in the admission to public school on the basis of his race, color,

sex, religion, national origin or sexual orientation. Regardless of his placement, Tewksbury Public Schools continues to pay for Stephen's expensive and extensive educational services and Ms. Porto has approved Stephens IEP and placement at the Eagleton School on an annual basis. Accordingly, Count IV of the Plaintiffs' Complaint must be dismissed.

## V.     The Town did not violate the Americans with Disabilities Act.

In Count V of their Complaint the Plaintiffs claim that the Defendants violated the American With Disabilities Act because Stephen Colon was "denied access to policies and procedures regarding protections against sexual harassment and sexual abuse that non-disabled students are afforded". Plaintiffs Complaint at ¶¶58-60. The Plaintiffs will never be able to prevail on their claim as Stephen was provided the same sexual harassment policy contained in the Wynn Middle School Student Handbook as all of the other non-disabled students and was afforded the same access to policies, procedures, and protection as non-disabled students. Exhibit 22; Exhibit 19 at pp. 28-31. The undisputed fact is that neither Stephen nor Ms. Porto or anyone for that matter, ever alleged that Stephen was being sexually harassed or abused to trigger the sexual harassment policy prior to the January 2001 incident or complained at all that the sexual behavior alleged was not consensual.

In order to establish a prima facie case under Title II of the American with Disabilities Act, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. Panzardi-Santiago v. University of Puerto Rico, 200 F.Supp. 2d 1(D. Puerto Rico 2002). Putting aside whether or not the Plaintiff is a qualified

individual with a disability, the Plaintiffs will not be able to prove the essential elements of their prima facie case because they will not be able to show that Stephen was excluded from participation in or denied the benefits of the sexual harassment policy and protections afforded non-disabled students because of his disability.

Further, as with the Plaintiffs discrimination claim brought pursuant to M.G.L. c. 151C above, regardless of whether or not the Plaintiffs claim has any merit, the Plaintiffs failed to fulfill the statutory prerequisite of filing a discrimination claim with the MCAD or the Equal Opportunity Employment Commission alleging handicap discrimination. A Party who seeks to recover for an asserted violation of Title I of the ADA, first must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC), or alternatively, with an appropriate state or local agency, within the prescribed time limits. Bonilla v Alvarez, Inc., 194 F.3d 275 (1999). As the Plaintiffs did not file a claim for handicap discrimination with the appropriate administrative agency as required by the ADA, their claim must be dismissed.

## VI.   The Plaintiffs will not be able to prevail on their civil rights claims against any of the Defendants.

In Count VI of their Complaint, the Plaintiffs allege that all of the Defendants violated 42 U.S.C. § 1983 because they deprived Stephen of his right to be free from sexual harassment and sexual abuse, from discrimination on the basis of disability and equal access to education. Complaint at ¶¶ 61, 62. The Plaintiffs claim must fail against all of the Defendants. As stated in Section 1 above, the Plaintiffs will not be able to prove the crux of their section 1983 claims because they will not be able to show that Stephen was sexually harassed.

## A.    Town Defendants

The Plaintiffs have named the Town of Tewksbury, Town of Tewksbury Public
Schools and Town of Tewksbury School Committee ("Town Defendants") as
defendants in this case and have alleged that the Town Defendants violated Stephen's
civil rights as set forth above.

A municipal entity or local government unit may only be found liable under 42
U.S.C. §1983 where it has executed an "official policy" or "custom" that is causally
linked to the injury inflicted. The Supreme Court in <u>Monell v. Dept. of the City of New
York City</u>, 436 U.S. 658 (1978) held that a local governmental entity could not be found
liable under 42 U.S. C. §1983 for an injury inflicted solely by its employees. The mere
application of the doctrine of respondeat superior is not sufficient to establish liability.
The <u>Monell</u> Court held that a local governmental entity can be held liable under 42
U.S.C. § 1983 only when by executing an "official policy" or "custom" it causes the
injury inflicted. <u>Id.</u> at 690-691. Subsequent cases have further indicated that there must
be an affirmative link between the harm complained of and the municipal misconduct.
<u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808 (9185); <u>Polk County v. Dodson</u>, 454 U.S.
312, 326 (1981) (the municipal policy must be the "moving force" behind the
constitutional violation); <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 480 (1986) (municipalities
may only be held liable under 42 U.S.C. section 1983 for acts which the municipality has
officially sanctioned or ordered).

The Plaintiffs here have failed to enunciate any official policy or custom that they
believe resulted in the deprivation of Stephen's civil rights. The Plaintiffs will not be
able to set forth any such policy as there is no "official policy" or "custom" that caused
Stephen to be the subject of sexual harassment or abuse because as stated in Section I
above, Stephen was not sexually harassed or abused by his classmate. Further, as set

forth above, Stephen was not discriminated against on the basis of his cognitive disability but rather, was subject to the same policies and procedures as the non-disabled students matriculating at the Wynn Middle School. Finally, Stephen was not denied equal access to education, but was provided with a plethora of services as set forth in his approved IEPs to enable him to have the same access to education as regular functioning students. As there was no deprivation of Stephen's civil rights, the Plaintiffs will not be able to point to and have not pointed to any policy or custom of the Town Defendants that caused such deprivation

Assuming arguendo that the Plaintiffs are claiming that the Town did not properly investigate the allegations of sexual harassment even if such allegations were made prior to the filing of this lawsuit, the Plaintiffs' claims against the Town Defendants still must fail. In Spann v. Tyler Indep. School Dist., 876 F.2d 437 (5th Cir. 1989)(cert. denied 493 U.S. 1047 (1990)) the court refused to find a local governmental entity liable under 42 U.S. C. §1983 for the alleged negligence of its Principal in failing to investigate claims that its bus driver was sexually abusing the plaintiff. Following the directive of Monell, the court noted that the error in judgment by the Principal did not constitute an official policy or custom. Liability would only be grounded on a theory of respondeat superior. The court noted that the school board policy did not cause the repeated sexual abuse. The injury was caused by a school employee not exercising his discretion wisely. Id. Here, the Plaintiffs will not even be able to show that the Principals did not exercise their discretion wisely when told about alleged sexual behavior between Stephen and his classmate and will certainly not be able to show that any Town policy caused the sexual behavior alleged.

Likewise, in Jane Doe v. Special School District of St. Louis County, 901 F. 2d 642 (8th Cir. 1990) the court granted summary judgment to a governmental entity and other

defendants sued both individually and in their official capacity in a 42 U.S.C. § 1983 case. In that case, multiple handicapped students alleged that they were molested by a school bus driver. They claimed unconstitutional deprivation of rights. The superintendent of schools received at least one complaint involving the bus driver cursing at a parent and at least one complaint involving the driver kissing child. Other school personnel received other similar complaints. The <u>Doe</u> court held that official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. Citing <u>Monell</u> and <u>Pembaur</u>, the court dismissed the case against both the individual employees and the District.

In this case, there was an official policy against discrimination and against sexual harassment and a procedure in place to investigate such complaints. Exhibits 22 and 23. The undisputed fact is, however, that there was never a complaint made to the Town of sexual harassment or abuse. Rather, Ms. Porto complained on one occasion of sexual behavior between the boys and suspicions were raised in October 2000 of such behavior. Despite the fact that the Town did not consider the behavior to be "sexual harassment" as the behavior, while inappropriate, was consensual, the Town investigated the 1999 incident and reasonably responded to both the 1999 and 2000 suspicions. Such actions do not demonstrate a policy of discrimination as one that violates Stephen's rights. Acts of peers directed solely at one student do not demonstrate a custom or policy of the school to be deliberately indifferent to harassment as a general matter. <u>See  Monell</u>, 436 U.S. at 691 and n. 56.

In addition to showing a policy or custom of the Town Defendants, the Plaintiffs must also show deliberate indifference on the part of the Town Defendants. <u>Davis v. Monroe County Bd. Of Edu.</u>, 526 U.S. 629 (1999); <u>Grant v. Wallington Bd. of Edu.</u>, 195

F.3d 134 (2nd Cir. 1999). Deliberate indifference can be found only when the defendant's response to known discrimination "is clearly unreasonable in light of the known circumstances." Id. As stated in Section II above, the Plaintiffs will not be able to show that the Town Defendants' response to the alleged sexual behavior between the two students was not unreasonable. Accordingly, the Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 against the Town Defendants must fail.

### Individual Defendants

In order for the Plaintiffs to prevail on their claims against the thirteen remaining individual defendants, they must prove that each of the individual defendants violated a constitutional right, that they acted under color of state law and that the behavior of the individual defendant amounted to "encouragement, condonation or acquiescence" or amounts to "deliberate indifference". Lipsett v. University of Puerto Rico, 864 F. 2d 881, 901-902 (1st Cir. 1988). In Doe v. Special School Dist. Of St. Louis County, 901 F. 2d 642 (8th Cir. 1990), the plaintiff brought suit against district officials both in their individual and official capacities, alleging deliberate disregard for the plaintiffs' constitutional rights. The court noted that in order for the individual defendants to be personally liable, the following conditions must be met: 1) the individual received notice of a pattern of unconstitutional acts committed by subordinates; 2) the individual demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) the individual failed to take sufficient remedial action; and 4) that such failure proximately caused injury to the children. Id. at 645, (citing Wilson v. City of North Little Rock, 801 F. 2d 316, 322 (8th Cir. 1986)). The court noted that negligence alone does not implicate Fourteenth Amendment protections. The court found that knowledge of isolated incidents of striking, kissing and fondling did not establish that the individual defendants had notice of a pattern of unconstitutional acts and they did

not display deliberate indifference to or tacitly authorize the violation of plaintiff's constitutional rights.  In <u>Scarpa v. Murphy</u> 624 F. Supp. 33 (D. Mass. 1985), the federal district court granted a motion to dismiss claims against a municipality as well as defendants sued both individually and officially.  The court analyzed the standard of proof in 42 U.S.C. section 1983 cases against defendants sued in both their individual and official capacities.  The court noted that to the extent that an individual is sued in their official capacity, the suit is really a suit against the municipality.  If the claims against the municipality fail then they also fail as to the individual in their official capacity.  With respect to the defendants in their individual capacity, the <u>Scarpa</u> court emphasized that the alleged conduct by the individuals must be severe, and must amount to more than mere negligence.  There must be pervasive constitutional violations and deliberate disregard.  <u>Id.</u> at 35.

In their Complaint the Plaintiffs again fail to set forth what action or inaction on the part of each individual defendant they believe shows that the specific individual was deliberately indifferent.  None of the facts developed during discovery proves any deliberate indifference on the part of any of the individual defendants, but rather proves that each of the defendants performed their respective jobs in a stellar manner and always had the best interest of the boys in mind when making their decisions.

### 1.    Christine L. McGrath

Dr. McGrath is the Superintendent of the Tewksbury Public Schools. Presumably the Plaintiffs have brought their §1983 claim against Dr. McGrath because she is the supervisor of the other named Defendants. It is well settled that a supervisor may be liable under §1983 "only on the basis of his or her own acts or omissions." <u>Bowen v. City of Manchester</u>, 966 F.2d 13, 20 (1st Cir. 1992) *quoting* <u>Figueroa v. Aponte-Rogue</u>, 864 F.2d 947, 953 (1st Cir. 1989); <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 957

(1st Cir. 1992). While she may be liable under section 1983 if she formulates a policy or engages in a practice that leads to a civil rights violation of another, notice is a salient consideration in determining whether liability exists. See Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). While actual knowledge on the part of the supervisor is not required, he or she "may be liable for the foreseeable consequences of such conduct if he or she would have known of it but for his or her deliberate indifference or willful blindness. Id. quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). To demonstrate deliberate indifference a plaintiff must show, (1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) his or her failure to take easily available measures to address the risk. Id. Deliberate indifference alone however, does not equate with supervisory liability. A Plaintiff must also show causation. Id. There must be an "affirmative link" between the street-level misconduct and the action, or inaction of the supervisory officials. Bowen v. City of Manchester, 966 f.2d 13, 20 (1992) citing Gutierrez-Rodriquez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989).

Dr. McGrath did not formulate any policy or engage in any practice that lead to the violation of Stephen's civil rights. In fact the practices established lead to Dr. McGrath responding in a serious manner to allegations of inappropriate sexual behavior brought to her attention in 1999 and then again in 2001. Once notified, Dr. McGrath insured that the proper authorities, the Tewksbury Police Department and the Department of Social Services were notified and that those authorities conducted investigations which investigations resulted in the Complaint being screened out. Exhibit 10. Regardless, Dr. McGrath was made aware that the boys would be transported on separate vans in the future and that due to their placement in the Life

Skills Classroom they already were subjected to heightened restrictions while at school. Exhibit 8.

Further, the Plaintiffs will not be able to prove that Dr. McGrath was deliberately indifferent in her response because they will not be able to prove that she knew, because it was not true, that the boys were somehow in grave risk of harm. The Plaintiffs must show that such grave risk of harm existed and that Dr. McGrath had knowledge of that harm in order to prevail on their claim. There were never any allegations or assertions made by anyone after the 1999 incident that either boys was in grave risk of harm by the other as there were never any assertions prior to January 2001 that the inappropriate sexual contact alleged was anything but consensual. There were no allegations of sexual harassment or sexual abuse by Ms. Porto, by the Tewksbury Police or by the Department of Social Services as regards the alleged sexual behavior between the two boys. Certainly had Ms. Porto believed at that time that Stephen was somehow in grave risk of harm by being in the same Life Skills classroom with the classmate with whom Stephen had allegedly engaged in inappropriate sexual behavior she would have at a minimum rejected the IEPs for Stephens 5th and 6th grade years as was her right and insisted that Stephen be placed elsewhere.

As the Plaintiffs will not be able to prove that the boys were in grave risk of harm or that Dr. McGrath had knowledge of any such risk, and will not be able to show that Dr. McGrath was deliberately indifferent in her response to the sexual behavior brought to her attention, they will not be able to prevail on their civil rights claims against Dr. McGrath. Accordingly, Count VI as against Dr. McGrath must be dismissed.

### 2.   James McGuire

James McGuire was the principal of the Wynn Middle School during the 2000-2001 school year when Stephen was in the 7th grade Life Skills classroom. Again, the

Plaintiffs fail to set forth any theory of liability as regards Mr. McGuire specifically in their Complaint and the Defendants are left to surmise that the Plaintiffs will allege first, that Mr. McGuire as Principal is responsible for actions of those he supervised and second, that because Mr. McGuire was aware of suspicions in October 2000 that the boys were inappropriately touching each other, that he was deliberately indifferent in his response. The Plaintiffs will not be able to prevail on either of these theories. First, as stated above, the Plaintiffs will not be able to show that Stephen was ever in any grave risk of harm. Rather, Stephen was engaging in consensual sexual behavior with his classmate which according to Ms. Porto he enjoyed. Until October 2000, no one in the Town witnessed any inappropriate sexual behavior between the two boys and the behavior witnessed in October 2000 consisted of touching of each others' thighs and sitting on each others' hands. Further, even if Mr. McGuire had actual or constructive knowledge that the sexual behavior alleged constituted a grave risk to Stephen, Mr. McGuire and those he supervised responded appropriately when told of suspicions by counseling the boys and attempting to keep the boys separated as much as possible.

It is clear that Mr. McGuire, even if he was made aware of the suspicions in October 2000, which he personally does not recall, would not have considered the isolated incidents of touching of the thighs and sitting on each others' hands to be unconstitutional acts let alone a pattern of unconstitutional acts against Stephen. Even if the 1999 allegations regarding the "school bus incident" were true, and Mr. McGuire had knowledge of that incident, he still would not have considered the consensual behavior to have violated Stephen's or for that matter Stephen's classmate's constitutional rights as there were never any allegations or assertions by anyone including Ms. Porto to any official at the Tewksbury Public Schools that the touching was anything but consensual prior to January 2001. Further, even if construed to be

unconstitutional, Mr. McGuire was not deliberately indifferent in his measured response to the incidents. While Principal McGuire does not recall being told of suspicions of inappropriate touching between the boys in October 2000, he testified that if he was he would have taken the same course of action as was taken in October by Mr. Ware and others involved in the decision making process. That is, he would not have disciplined the boys, but rather would have used the incidents as an opportunity to counsel the boys and educate them as to proper behavior. Exhibit 19 at pp. 42-44, 63, 64, 116-129.

As the Plaintiffs will not be able to show that Mr. McGuire had knowledge that Stephen was in grave risk of harm or was the subject of a pattern of unconstitutional acts, and will not be able to prove that he was deliberately indifferent in his response to the October 2000 suspicions, they will not be able to prevail on their civil rights claims against him. Accordingly, Count VI of the Plaintiffs' Complaint should be dismissed as against Mr. McGuire.

### 3.    **Kevin McArdle**

Mr. McArdle was the Principal of the Heathbrook Elementary School while Stephen attended school there. The only allegations contained in the Plaintiffs' Complaint as regards Principal McArdle are that when Stephen allegedly complained during his fourth grade year of being physically or verbally abused on the school bus, Ms. Porto reported the conduct to Principal McArdle and in response "Principal McArdle re-assigned Stephen to a seat behind the school bus driver." Complaint ¶ 21. After having reporting the alleged physical and verbal abuse, to Principal McArdle, Ms. Porto allegedly witnessed "Stephen being chased, taunted and hit over the head with a stick during an unannounced visit to the school". Complaint ¶ 22. The Plaintiffs will not be able to prevail on their Section 1983 claim against Mr. McArdle as they will not

be able to show that Mr. McArdle received notice of a pattern of unconstitutional acts committed against Stephen as simple acts of teasing, pushing and shoving do not amount to the violation of Stephen's constitutional rights. <u>David v. Monroe County Board of Education, et al</u>; 526 U.S. at ¶65. Regardless, the Plaintiffs will not be able to show that Mr. McArdle was deliberately indifferent to the complaints that he was made aware of, as by Ms. Porto's own admission, Mr. McArdle took action.    Ms. Porto does not know anyone in particular who was bothering Stephen and Stephen never told her the children's names. Exhibit 1 at p. 54, 74-76. The "regular normal kids" were "calling him a retard. Calling him stupid." <u>Id.</u> Ms. Porto alleges she complained about "kids bothering Stephen. Calling him names out in the schoolyard". Exhibit 1 at p. 68, 71. When Stephen complained to the "people watching them out on the playground....they stuck them on some wall...they couldn't play in recess because they were being fresh." Exhibit 1 at pp. 75, 76.  In third grade Stephen allegedly complained about kids "bothering and teasing him on the school bus. They were spitting on him.  Stephen didn't know the kids' names and [Ms. Porto] never found out their names." Exhibit 1 at p. 77-78.  In response to Ms. Porto's concerns however, Stephen was placed in the front seat of the bus behind the bus driver. Exhibit 1 at p. 94.  Further, Stephen along with all other students, was always supervised in the playground. Exhibit 1 at pp. 96, 98. Exhibit 20.  When the behavior allegedly continued, Mr. McArdle "went on to the school bus and told them that there's going to be no tolerance..." Exhibit 1 at p. 101. Mr. McArdle took the kids off the bus that were bothering Stephen and brought them to his office. Exhibit 1 at p. 102. Even if the teasing and alleged physical touching occurred, by the Plaintiffs own recitation of the facts, Mr. McArdle did not demonstrate deliberate indifference to the complaints, but rather, disciplined the students that Stephen was able to identify.

As the behavior complained of to Mr. McArdle can not be construed to constitute a pattern of unconstitutional acts taken against Stephen and as Mr. McArdle's response to the complaints of teasing does not demonstrate deliberate indifference or tacit authorization of the offending students' behavior, the Plaintiffs' claim brought pursuant to 42 U.S.C. § 1983 as against Mr. McArdle must fail.

**4.    Loreen Bradley**

Loreen Bradley was the Principal of the Dewing Elementary School during the 1998-1999 school year when Stephen was in 5th grade. In their Complaint the Plaintiffs allege that Ms. Porto notified Ms. Bradley that Stephen disclosed that his classmate performed oral sex on him while on the special education transportation vehicle and that the classmate had touched and penetrated his buttocks with his fingers. Complaint ¶ 24. Further the Plaintiffs allege that following the incident Ms. Bradley promised to monitor the children in the classroom and to provide separate transportation. The plaintiffs allege that thereafter, Stephen reported that the classmate again grabbed him and tried to stick his fingers in his buttocks through his pants while in school and that Ms. Porto reported this to Ms. Bradley and threatened to call the police. Ms. Bradley allegedly then told Ms. Porto that she would notify the classmate's mother but that there was nothing she could do because it was the last day of school. Complaint ¶ 25.

In 1999 Ms. Bradley was told by Ms. Paris that she had received information from Ms. Porto that the boys were engaging in some form of "sexual experimentation" on the special education van. There were never any allegations made at that time that the boys were performing oral sex while on the van. Exhibit 8. Ms. Bradley was never made aware of any other incident of inappropriate behavior between the boys. Exhibit 24 at pp. 41-47. Even assuming arguendo that Ms. Porto did report an incident of touching between the boys on the last day of school, the two incidents taken together do

not amount to a pattern of unconstitutional acts against Stephen as again, there were no allegations that the behavior on the school bus was not consensual. Regardless, Ms. Bradley's response to the allegations can hardly be construed as being deliberately indifferent or demonstrating tacit authorization of the offending behavior. Ms. Bradley informed Dr. McGrath and Cheryl Porcaro, the SPED Team Leader, of the allegations. Legal counsel was sought and Tewksbury Police were notified of the allegations. After discussions with the authorities, Ms. Bradley contacted both homes and a decision was made to transport the boys in separate vans and to have each sit in the front seat next to the van driver. In addition, DSS was contacted. Exhibit 8. Ms. Bradley then documented the incident for the Superintendent and noted that the boys are assigned to a .4 Special Education/LifeSkills classroom that has three adults assigned to it at all times and that the children are never left unattended. Ms. Bradley placed heightened restrictions on both boys. Exhibit 8.

After the boys 5th grade year they changed schools and Ms. Bradley had no further involvement with the boys. Ms. Bradley was aware that the 1999 allegations and investigation into inappropriate behavior was known to the boys' 6th grade teacher as well as to the ISET team as Ms. Paris was the teacher in the Life Skills classroom in both the 5th and 6th grade and Ms. Porcaro remained the SPED Team Leader. Exhibit 11.

The Plaintiffs will simply not be able to show that Ms. Bradley was deliberately indifferent to the 1999 allegations, given her serious response, the authorities she contacted and the remedial measure she took by placing the boys on separate special education vans despite the fact that they lived right around the corner from each other. The Plaintiffs will not be able to prevail on their civil rights claim brought against Ms. Bradley pursuant to 42 U.S.C. § 1983. Accordingly, Count VI as against Ms. Bradley should be dismissed.

5.    **Michelina DeAngelis**

Dr. Michelina DeAngelis is the Director of Student Services for the Tewksbury Public Schools. Other than their allegation that "[u]pon information and belief … Michelina DeAngelis… [was] aware via participation in educational team meetings and in [her] administrative capacity of the ongoing discrimination, harassment and abuse of Stephen", Complaint ¶ 33, the Plaintiffs make no specific allegations against Dr. DeAngelis in their Complaint. The Plaintiffs will not be able to present evidence to prevail on their civil rights claim against Dr. DeAngelis because as stated in Section I above, they will not be able to show that Stephen was being discriminated against, harassed or abused while at Tewksbury Public Schools. Even if the behaviors alleged did occur, the Plaintiffs will not be able to show that Dr. DeAngelis as the overall administrator of the special education services for students in the Tewksbury Public Schools had knowledge of some or all of the incidents alleged or would have been involved in the response to any such incidents if the response did not involve a revision to an IEP that was brought to her attention. As the Plaintiffs will not be able to show that Dr. DeAngelis had knowledge of a pattern of unconstitutional acts committed against Stephen, they will not be able to prevail on their civil rights claim against her. Accordingly, Count VI as against Dr. DeAngelis should be dismissed.

6.    **Cheryl D. Porcaro**

Ms. Porcaro is the Systemwide Team Chairperson for Special Education for the Tewksbury Public Schools. As with Dr. DeAngelis, the only allegation the Plaintiffs make in their Complaint against Ms. Porcaro is that "[u]pon information and belief … Cheryl Porcaro ….[was] aware via participation in educational team meetings and in [her] administrative capacity of the ongoing discrimination, harassment and abuse of

Stephen", Complaint ¶ 33, the Plaintiffs make no specific allegations against Ms. Porcaro in their Complaint.

Ms. Porcaro was aware of the 1999 allegations of inappropriate sexual behavior between the boys while on the special education van and did attend ISET meetings in order to develop Stephen's IEPs. Again however, the Plaintiffs will not be able to prove that Ms. Porcaro had notice of a pattern of constitutional acts against Stephen or of ongoing discrimination, harassment or abuse of Stephen because as stated in section I above, the inappropriate sexual behavior alleged was consensual and there is no evidence that Stephen was being sexually harassed or physically abused while at School. Rather, the only allegations brought to Ms. Porcaro's attention were that Ms. Porto had made allegations that Stephen and his classmate had engaged in consensual, inappropriate sexual behavior involving touching one another while on the school bus and that on occasion Stephen was teased either in the playground or on the school bus. No other incidents were brought to Ms. Porcaro's attention prior to the January 2001 bathroom incident and the Plaintiffs do not allege that any such incidents took place in the Plaintiff's sixth grade year. Isolated incidents of striking, kissing and fondling do not establish that the individual defendants had notice of a pattern of unconstitutional acts. Scarpa v. Murphy, 624 F.Supp. 33 (D. Mass. 1985). Here, Ms. Porcaro's isolated knowledge of the 1999 incident even if construed to be an unconstitutional act does not establish that she knew of a pattern of constitutional acts and isolated incidents of teasing, while unfortunate do not amount to the violation of Stephen's Constitutional Rights.

Assuming arguendo that the Plaintiffs can show that Ms. Porcaro had knowledge of a pattern of unconstitutional acts, the Plaintiffs will not be able to show that Ms. Porcaro was deliberately indifferent or failed to take remedial actions as Ms. Porcaro

was a member of the ISET team that developed Stephen's IEPs. If Ms. Porto believed that Ms. Porcaro as a member of that team was being deliberately indifferent in her response to the allegations and refused to provide services requested to address the behavior alleged, Ms. Porto could have rejected the IEP and appealed.  Ms. Porto did not reject the IEPs developed based on Ms. Porcaro's failure to include services or her failure to address the inappropriate sexual behavior alleged.  As the Plaintiffs will not be able to show that Ms. Porcaro had knowledge of a pattern of unconstitutional acts or that she was deliberately indifferent to suspicions raised or complaints made, they will not be able to prevail on their civil rights against Ms. Porcaro.

### 7.   **Carole Gallo**

Ms. Gallo was Stephen's third grade teacher for the 1996-1997 school year. The Plaintiffs allege that Ms. Porto told Ms. Gallo that Stephen's classmate was using profanity and telling stories about sexual activity.  In addition, they claim that Ms. Porto told Ms. Gallo that Stephen was being verbally and physically abused at recess and requested that he be supervised at recess.  In his third grade year, the Plaintiffs allege that Ms. Porto showed Ms. Gallo a diary that Stephen had written in the second grade. Exhibit 1 at p. 79.  In that diary Stephen allegedly wrote that his classmate had exposed his penis to Stephen at school and that the classmate forced him to lick urine off the ground in the schoolyard.  Complaint ¶¶ 17 and 18,  Exhibit 1 at p. 79-94.  Finally the Plaintiffs allege that Ms. Porto told Ms. Gallo that the classmate touched Stephen's penis, that the classmate provided graphic description of oral sex and sexual positions and that the classmate discussed his sister's sexual activity with Stephen.  ¶19.

Ms. Gallo does recall Ms. Porto telling her that Stephen was being teased on the school bus and as discussed above under Mr. McArdle, Ms. Gallo and Mr. McArdle responded to the incidents of which they were made aware and had Stephen sit in the

front seat behind the bus driver to prevent further teasing. Such teasing does not amount to a constitutional violation and the Plaintiffs will not be able to show that Ms. Gallo was deliberately indifferent in her response to the teasing or that her failure somehow to take appropriate remedial action proximately caused Stephen's alleged injury.

Ms. Porto never showed Ms. Gallo a diary written by Stephen in the second grade in which he wrote that he was forced to lick up someone else's urine or forced to pull down his pants by his classmate and it is doubtful that Stephen would have been able to write such statements in a diary given his cognitive limitations in the second grade. Exhibit 20. Further, Ms. Porto absolutely never told Ms. Gallo that the classmate touched Stephen's penis or that the classmate provided graphic description of oral sex and sexual to Stephen. Exhibit 20. Regardless, even if all of the above was told to Ms. Gallo, the teasing, daring to pull down one's pants, the stories and even the touching if consensual (and there was never any allegation that it was not) do not amount to a pattern of constitutional violations as the statements and incidents alleged even if they occurred did not violate any of Stephen's constitutional rights. Rather what is clear is that Stephen was teased on occasion while at school or on the school bus. When Ms. Gallo was made aware of incidents of teasing she responded appropriately by either disciplining the offending student or recommending that Stephen sit in the front seat on the school bus. Again while it is unfortunate that Stephen was teased, such teasing does not amount to a violation of Stephen's constitutional rights. As Plaintiffs will not be able to show that Ms. Gallo had knowledge of a pattern of unconstitutional acts, they will not be able to prevail on their civil rights claim and Count VI as against Ms. Gallo should be dismissed.

8.    **Julie Bossdorf Paris**

Ms. Paris was Stephen's 5th and 6th grade teacher. In their Complaint the
Plaintiffs allege that while in 5th grade Ms. Porto notified Ms. Paris that Stephen had
disclosed that the classmate had performed oral sex on him while on the special
education van and that the classmate had touched and penetrated his buttocks.
Complaint ¶ 24. They further allege that Ms. Paris "acknowledged" that she had
witnessed inappropriate touching between the children in the classroom and that she
promised to monitor the children and provide separate transportation. The Plaintiffs
further allege that Ms. Porto reported on a second occasion to Ms. Paris that the
classmate had grabbed Stephen and tried to stick his finger in his buttocks. Complaint
¶25. Finally, the Plaintiffs allege that Stephen continued to report physical touching by
his classmate in the 6th grade year, but do not allege that this information was ever told
to Ms. Paris. Complaint ¶ 29.

Again, the Plaintiffs will not be able to show that Ms. Paris had knowledge of a
pattern of unconstitutional acts as required to prevail on their civil rights claims against
her. Ms. Porto did report to Ms. Paris in Stephen's 5th grade year that Stephen had
engaged in inappropriate sexual behavior with his foster sister. During that same
conversation, Ms. Porto told Ms. Paris that Stephen and his classmate were engaging in
inappropriate sexual behavior on the special education van. Ms. Porto did not allege
that the sexual experimentation was not consensual. Ms. Paris did not witness any
inappropriate sexual behavior or touching between Stephen and his classmate. Exhibit 9
at pp. 62, 63 and 79. Following the 1999 bus incident, Ms. Paris never learned from any
source of any other allegations of touching between the two boys prior to this lawsuit
being filed. Stephen never complained to her about any student touching him
inappropriately and without his consent. Exhibit 9 at pp. 49-53. Ms. Paris' knowledge

of one incident of inappropriate sexual behavior even if that incident did violate Stephen's constitutional rights, which it did not, is not sufficient to show that Ms. Paris was aware of a pattern of unconstitutional acts. Even if Ms. Porto did report that the classmate had touched Stephen's buttocks again in the 6th grade, the same does not amount to a pattern of unconstitutional acts as there was no allegation that any of the alleged behavior was not consensual.

Regardless, when Ms. Porto reported the allegations to Ms. Paris her response was not one of deliberate indifference, but rather, she immediately reported the allegations to Principal Bradley who as stated above informed the appropriate authorities. Following the 1999 bus incident, Ms. Paris kept the boys separate even though she did not believe it was necessary as she had not observed any inappropriate behavior. Exhibit 9 at pp. 61, 62. Ms. Paris was not deliberately indifferent to the allegations raised, she did not fail to take remedial actions and she certainly did not cause Stephen any harm as in fact "Stephen loved Ms. Paris". Exhibit 1 at p. 122, 124.

As the Plaintiffs will not be able to prove that Ms. Paris had knowledge of a pattern of unconstitutional acts, that she was deliberately indifferent to allegations raised by Ms. Porto or that she failed to take remedial actions which proximately caused Stephen harm, the Plaintiffs will not be able to prevail on their civil rights claim against her. Accordingly, Count VI as against Ms. Paris should be dismissed.

### 9. **Eleanor Edelstein**

Ms. Edelstein was one of the Life Skills Teachers at the Wynn Middle School while Stephen was in the 7th grade. In their Complaint the Plaintiffs allege that Ms. Edelstein allowed the classmate unsupervised access to Stephen while they were in the seventh grade, Complaint ¶34, and that when she became aware that the boys were not

in the classroom, she directed Mr. Ware to locate them. Mr. Ware located the boys in the bathroom allegedly engaged in sexual activity. Complaint ¶ 35.

On January 11, 2001, Ms. Edelstein did allow the classmate to go to the bathroom when he entered Ms. Edelstein's class after having come from an exploratory classroom. Stephen subsequently asked Ms. Edelstein if he could go to his locker which was located directly outside of the classroom. Ms. Edelstein gave him permission to go to his locker. Exhibit 5 at pp. 63-64; Exhibit 16 at pp. 83-85; Exhibit 18. Stephen did not go to his locker, but instead followed the classmate to the bathroom. Id. Stephen did not have permission from Ms. Edelstein or one of the certified aids in the classroom to go to the bathroom as required. Id. Ms. Edelstein realized that Stephen was not at his locker and as she was aware that the boys were to be kept separate, she immediately saw Mr. Ware walking down the hallway and asked him to look for the boys in the bathroom. Id. Also see Exhibit 16 at pp. 83-89. Mr. Ware walked into the bathroom and saw the boys with their pants around their ankles. He did not see the boys touching each other. Exhibit 16 at pp. 83-89. Ms. Edelstein simply did not violate Stephen's constitutional rights by allowing Stephen to go to his locker unsupervised while his classmate was in the bathroom on one occasion. While Ms. Edelstein was aware that the boys were to be kept apart, she did not have knowledge of a pattern of unconstitutional acts and her allowing the boys out of her sight for a short period of time cannot be characterized as severe conduct on her part and certainly cannot be characterized as pervasive constitutional violations and deliberate disregard for Stephen's constitutional rights as required for the Plaintiffs to prevail on their civil rights claim against her. As Ms. Edelstein did not interact with Stephen after Mr. Ware found him in the bathroom on January 11, 2001, the Plaintiffs will not be able to prevail on their civil rights claim

against her based on her one isolated act. Accordingly, Count VI as against Ms. Edelstein should be dismissed.

### 10.   Robert Ware

Robert Ware is the Behavior Management Facilitator at the Wynn Middle School. In their Complaint the Plaintiffs allege that Mr. Ware had knowledge that Stephen's classmate exposed Stephen to sexualized and other harassing behaviors in the 7th grade and prior years. Complaint ¶ 32. The Plaintiffs do not set forth any other allegations against Mr. Ware in their Complaint. Mr. Ware did have knowledge prior to the bathroom incident on January 11, 2001 that some of the certified aides in the Life Skills classroom had suspicions that the boys were engaging in inappropriate behavior. That behavior was limited to the boys touching each others' thighs under the desk while sitting next to each other and sitting on each others' hands while at gym. Exhibit 15. While the behavior was inappropriate it does not amount to harassment or abuse of Stephen as again, no one in the Tewksbury Public Schools including Mr. Ware was ever told by anyone that the behavior was not consensual, that the behavior was anything more than the boys touching each other or that it was always the classmate who initiated and touched Stephen. Rather, the boys were mutually engaging in sexual experimentation and while the behavior was not appropriate for a school setting, it was not unusual for adolescent boys. Regardless, even if Mr. Ware did have knowledge of a pattern of unconstitutional acts, he did not demonstrate deliberate indifference to or tacit authorization to the offensive behavior. Rather, Mr. Ware had Ms. Dixon the certified aid put her suspicions in writing. Exhibit 15. He then informed other administrators about the suspicions and collaboratively it was decided that the appropriate action would be to educate the boys through counseling as to what is and is not sexually appropriate behavior. Exhibit 16 at pp. 69-75. The boys did meet with Mr.

Traveis, the School Adjustment Counselor who they met with on a regular basis, to discuss the behavior. Exhibit 17 at pp. 63-68. Until Mr. Ware discovered the boys in the bathroom on January 11, 2001, no one informed Mr. Ware of any other suspicious behavior between the boys since October 2000 and no one including the boys ever told Mr. Ware that the behavior in October and for that matter in January was anything but consensual. Again, as discussed above under Mr. McGuire, while Ms. Porto does not agree with the course of action taken by Mr. Ware in response to the October suspicions, such response including the decision of whether or not to discipline the boys is left to the discretion of the school administrators. Mr. Ware's response to the incident was certainly not unreasonable and did not demonstrate deliberate indifference. Just because the boys were found in the bathroom in January 2001, does not demonstrate that Mr. Ware was deliberately indifferent to the suspicions in October 2000 or that he failed to take sufficient remedial action. It certainly does not prove that Mr. Ware's decision to counsel the boys versus discipline them for the October suspicions proximately caused any injury to Stephen. Accordingly, the Plaintiffs will not be able to prevail on their civil rights claim and Count VI of their Complaint as against Mr. Ware should be dismissed.

### 11.    **William Traveis**

William Traveis was the School Adjustment Counselor at the Wynn Middle School during Stephen's 7th grade year and met with Stephen and his classmate in separate groups on a regular basis prior to the 2001 incident. In their Complaint, the Plaintiffs allege that at a special education team meeting, Mr. Traveis assured Ms. Porto that Stephen would be monitored at all times. Complaint ¶ 31. The Plaintiffs set forth no other allegations against Mr. Traveis.

Mr. Traveis was aware that there were suspicions in October 2000 that the boys were touching each other inappropriately. As Mr. Traveis counseled the boys on a regular basis it was decided that he should be the one to speak with the boys about the issue. When Mr. Traveis met with them, both boys admitted that they had touched each other. Both were embarrassed, very apologetic and promised Mr. Traveis that they would not do it again. Exhibit 17 at pp. 63-68. Neither Stephen nor his classmate ever told Mr. Traveis (who they met with on a regular basis in different groups because he was aware that they were not to be together) that the touching was not consensual or ever complained to Mr. Traveis about each other. Exhibit 17 at pp. 63-68; 83-85. Mr. Traveis' counseling of the boys does not demonstrate deliberate indifference on his part to the suspicions raised, as certainly Mr. Traveis believed the counseling to be sufficient remedial measure. Even if Mr. Traveis did tell Ms. Porto that Stephen would be monitored at an ISET meeting (presumably the ISET meeting held in November 2000), the fact that the boys were found in the bathroom together does not demonstrate deliberate indifference on Mr. Traveis' part as he was not charged with monitoring the boys and Stephen's IEP did not require that he have an aide to shadow him throughout the building at all times.

As the Plaintiffs will not be able to prove that Mr. Traveis was deliberately indifferent in his response to suspicions of inappropriate sexual behavior in October 2000, they will not be able to prevail on their civil rights claim against him. Accordingly, Count VI as against Mr. Traveis should be dismissed.

### 12.    Kara Buckley

Kara Buckley was a certified aid in the Life Skills classroom at the Wynn Middle School while Stephen was in the 7th grade. The Plaintiffs allege in their Complaint that Ms. Buckley was aware of sexualized behavior between the boys. Complaint ¶ 34. Ms.

Buckley was aware of the October 2000 behavior as outlined in Ms. Dixon's written statement to Mr. Ware and was aware that she was supposed to keep the boys separated. Ms. Buckley was also aware that the suspicions had been brought to the attention of school administrators. The Plaintiffs do not set forth any action or inaction on the part of Ms. Buckley that they believe demonstrates her deliberate indifference as no such action or inaction on her part exists. Accordingly, Plaintiffs will not be able to prevail on their civil rights claims against Ms. Buckley and Count VI as against Ms. Buckley should be dismissed.

### 13.   **Allison Dixon**

Ms. Dixon was a certified aid in the Life Skills Classroom from September 2000 until December 2000 while Stephen was in the 7th grade. In their Complaint, the Plaintiffs allege that Ms. Dixon was aware of the sexualized behavior between the boys. Complaint ¶ 34. Ms. Dixon was aware of the suspicions raised in October 2000 of inappropriate sexual behavior between the boys although she never witnessed the boys touching each other inappropriately. Ms. Dixon's knowledge of the suspicions does not mean that Ms. Dixon violated Stephen's civil rights. Rather, quite the contrary. Ms. Dixon aware of the suspicions responded appropriately by bringing her concerns to a superior, Mr. Ware. Ms. Dixon was aware that the boys needed to be kept apart and while she was in the Life Skills Classroom they were. Exhibit 6 at pp. 24-31. After the suspicions were raised she was more cautious. Ms. Dixon was not made aware of any other incidents of inappropriate touching between the boys. Id. Ms. Dixon was no longer at the Wynn Middle School at the time of the January 2001 bathroom incident.

As Ms. Dixon's actions when she learned of the suspicious behavior do not demonstrate deliberate indifference to or tacit authorization of the inappropriate behavior, but rather, demonstrate her concern for the boys and her desire to respond

appropriately, the Plaintiffs will not be able to prove their civil rights claims against her and Count VI of their Complaint against Ms. Dixon should be dismissed.

**VII.    The Statutory Public Duty Rule bars Plaintiffs' negligence claim.**

In Count VI of their Complaint, the Plaintiffs allege that the Defendants were negligent in failing to provide a safe environment free from sexual harassment, physical, verbal and emotional abuse and discrimination in violation of the Massachusetts Tort Claims Act, M.G.L.c. 258.  In paragraph 64 of their complaint the Plaintiffs allege that they have complied with the statutory prerequisites for filing a claim for negligence against the Town of Tewksbury.  The Plaintiffs however, have not satisfied the statutory prerequisite to filing a claim pursuant to the Massachusetts Tort Claims Act as the plaintiff did not file a presentment letter within two years of the date the cause of action arose.

General Laws c. 258, § 2, provides that a public employer is liable "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment" M.G.L. c. 258, §2.  However, a condition precedent to bringing a suit under Chapter 258, is the presentment of the claim "in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose." M.G.L. c. 258, § 4.  Only if the claim is denied or the executive officer fails to settle, arbitrate, or compromise the claim within six months, may the claimant file suit. M.G.L. c. 258, § 4.  If proper presentment is not made within the allotted time, the plaintiffs' Complaint is subject to dismissal.  Vasys v. Metropolitan Dist. Comm'n, 387 Mass. 51, 57 (1982).  The public employer need not show prejudice to rely upon the plaintiff's failure of presentment.  Weaver v. Commonwealth, 387 Mass. 43 (1982).  As

the Plaintiffs here failed to comply with the presentment requirement, their negligence claim brought pursuant to M.G.L.c. 258, should be dismissed.

Regardless, even if the Plaintiffs had properly made presentment pursuant to M.G.L. c, 258, §4, their Complaint would still be subject to dismissal as their allegations fall within the public duty exception to the Massachusetts Tort Claims Act, M.G.L. c. 258, § 10(j). Section 10(j) of Chapter 258, exempts from the Tort Claims Act "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation including the violent or tortuous conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.   The principal purpose of section 10(j) is to preclude liability failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party. Brum v. Town of Dartmouth,  428 Mass. 684 (1999). In Brum, the Court held that the statutory public duty rule provided immunity from claims based on failure to act to prevent or diminish harmful consequence of a condition or situation not originally caused by public employer barred suit claiming that the town, school officials and municipal officials were liable for the death of a student who was stabbed at school based on their failure to maintain adequate security and failure to protect the student. Brum v. Town of Dartmouth, 428 Mass at 694-95.

As in Brum, the Plaintiffs here allege that their harm was caused by the Town Defendants failure to protect a student, the Plaintiff Stephen Colon.  The sole basis for the Plaintiffs' negligence claim is that the Defendants failed to diminish or prevent the harassing activity alleged from occurring.  As a result of the Defendants' failure to prevent, the Plaintiffs claim that Stephen was harmed by a third-party, his classmate. This is the very type of claim that is barred by the public duty rule, Section 10(j) of the Massachusetts Tort Claims Act.  Accordingly, the Plaintiffs negligence claim, claim for

the negligent infliction of emotional distress, and claim for loss of enjoyment of life, and loss of consortium contained in Counts VIIA, VIIB, VIII, and IX of the Plaintiffs' Complaint should be dismissed as against all defendants.

### VIII.  None of the actions or inactions of any of the individuals were extreme or outrageous.

In Count VIII of their Complaint, the Plaintiffs' bring a claim against the defendants for the intentional infliction of emotional distress claiming that the defendants knew or should have known that emotional distress was likely to result from the sexual abuse, harassment and discrimination alleged.  As stated in Section I above, the Plaintiffs will not be able to show that Stephen was sexually harassed or abused and accordingly will not be able to show that each individual Defendant knew of the alleged abuse and harassment.

The Massachusetts Tort Claims Act does not apply to intentional torts. Municipal employers, such as the Town Defendants, cannot be found liable for the intentional torts of their employees. See Spring v. Geriatric Authority of Holyoke, 394 Mass. 274 (1985).  In order to recover under the theory of intentional infliction of emotional distress against the individual defendants, the Plaintiffs must establish that the individual defendants "intended to inflict emotional distress" and that their "conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community ...'"  Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976);  see  Nolan and Sartorio, Tort Law section 19 (2d ed. 1989 & 1991 Supp.).  See also Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts, section 46, comment d (1965) (liability found only where conduct is so outrageous in character, and extreme in degree, as to be regarded as atrocious).  The conduct of the defendants and emotional distress must have been so

"severe" and of a nature "that no reasonable man could be expected to endure it." Agis
v. Howard Johnson Co., supra.

While in their Complaint the Plaintiffs allege that the "sexual abuse, harassment
and discrimination" described in the Complaint was "extreme and outrageous",
"beyond all possible bounds of decency and .. utterly intolerable in a civilized society",
(Complaint at ¶76), the Plaintiffs do not allege that any action or inaction taken by the
individual defendants was extreme and outrageous and beyond all possible bounds of
decency in order to satisfy their claim for the intentional infliction of emotional distress
as the harassment and abuse alleged was inflicted by Stephen's classmate. It is not
disputed that the individual defendants did not sexually abuse or harass the Plaintiff
Stephen Colon. Rather, the Plaintiffs allege that the defendants failed to protect
Stephen Colon from outrageous acts allegedly committed by a third party. It is the acts
of that third-party if true, that caused the emotional distress alleged.

Even taking all of the Plaintiffs' allegations as true for purposes of this summary
judgment motion, the Plaintiffs will not be able to prevail on their claim for the
intentional infliction of emotional distress against the individual defendants as they will
not be able to present evidence that the actions or inactions of each defendant were so
outrageous and beyond all bounds of human decency in failing to prevent the alleged
harassment from occurring. Certainly, the Plaintiffs will not be able to show that the
individual defendants intended to inflict emotional distress. Rather as set forth in
Section VII, all of the individual defendants performed their respective jobs in a stellar
manner with the best interest of the boys in mind.

Accordingly, as the plaintiffs will not be able to prevail on their claims for the
intentional infliction of emotional distress against any of the defendants, Count VIII of
their Complaint should be dismissed.

## Conclusion

For all of the foregoing reasons, all of the Plaintiffs' claims against all of the Defendants should be dismissed.

<div style="margin-left: 45%;">

Respectfully submitted,
The Defendants,
**Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine L. McGrath, James McGuire, Kevin P. McArdle, Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, Jennifer A. Fiore, Julie E. Bossdorf-Paras, Eleanor Edelstein, Robert Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon,**
By their attorney,


Deborah I. Ecker, BBO # 554623
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

</div>

DATED: November 30, 2004