UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of S.C., a Minor Person with a Disability,         Plaintiff <br><br> vs. <br><br> Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine L. McGrath, James McGuire, Kevin P. McArdle, Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, Jennifer A. Fiore, Julie E. Bossdorf-Paras, Eleanor Edelstein, Robert Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon,         Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' CONCISE STATEMENT OF MATERIAL FACTS SUPPORTING TRIABLE ISSUES PURSUANT TO LOCAL RULE 56.1[1]

1.  Denied.

2.  Denied. See, Exhibit 20; see also, Exhibit 1.[2]

3.  Denied. Ms. Porto did report to Ms. Gallo that S.C. was being teased on the school bus. The issue was addressed immediately. See Defendants Concise Statement of Material Facts at ¶ 6; also see, Exhibit 20 and Exhibit 3. Ms. Edelstein and Mr. Traveis had no involvement with Ms. Porto and

---

[1] The Plaintiffs have chosen not to respond to the Defendants' Concise Statement of Facts filed in support of the Defendants' Motion for Summary Judgment. Accordingly, pursuant to Local Rule 56.1 the Defendants will assume that the Plaintiffs admit the facts contained therein as those facts are not controverted by the Statement of Facts filed by the Plaintiffs.

[2] All Exhibits cited herein are those attached to the Defendants' Concise Statement of Material Facts in Support of Defendants' Motion For Summary Judgment unless otherwise stated.

1

S.C. during S.C.'s third grade year 1996-1997 and consequently did not assure Ms. Porto that S.C. was being appropriately supervised during his third grade year.

4. Denied. See Defendants Concise Statement of Material Facts at ¶ 20.

5. Denied. See Defendants Concise Statement of Material Facts at ¶ 6.

6. Denied. See Exhibit 1.

7. Denied. See Defendants Concise Statement of Material Facts at ¶¶ 11-19 and referenced exhibits.

8. Denied. See Defendants Concise Statement of Material Facts at ¶¶ 21-26 and referenced exhibits.

9. Admit Ms. Bradley wrote a memorandum regarding allegations in 1999 that the boys were engaging in sexual experimentation on the special education van during their AM ride to school and outlining steps taken. Exhibit 8. Deny remaining allegations.

10. Admit allegations are made by S.C. in Affidavit purported to be written by S.C. attached to the Plaintiff's Concise Statement of Material Facts. The Defendants further state that they were never notified at any time until the filing of the Plaintiff's Opposition to Defendants' Motion for Summary Judgment of the allegations contained in paragraph ten and consequently could not have responded to the allegations. See Plaintiff's Complaint; also, see Exhibit 1.

11. Denied. See Exhibit 7; Defendants further state that S.C. never told anyone at the Tewksbury Public Schools about any inappropriate sexual behavior between he and the classmate on a school bus at any time and never reported to any authority that Student R would talk him into

2

putting his mouth on his penis. Defendants' Concise Statement of Material Facts at ¶ ¶13, 16, 17, and 19. also see, Exhibits 8 and 10.

12. Denied.

13. The Defendants admit that Ms. Paris was involved in the development of the IEP for S.C.'s sixth grade year and that Ms. Paris did not believe that S.C. was a behavioral problem. The Defendants' deny the remaining allegations. Defendants' Concise Statement of Material Facts at ¶¶ 29, 30.

14. Admitted that S.C. entered the sixth grade at the J.F. Ryan Elementary school in 1999-2000. Admitted that it was noted that S.C. was having staring spells. Admitted that Dr. Herskowitz Addendum report attached to the Plaintiff's Concise Statement of Material Facts notes Ms. Porto telling him of her frustration that S.C. remains in class with a boy who allegedly molested S.C. sexually. Defendants further state that Dr. Herskowitz did not note that S.C. had made any such allegations to him and by his addendum was only reporting allegations Ms. Porto made to him only after he had written his original report and did not conclude that the staring spells were caused by any type of stressor but rather, concluded that S.C. was not having seizures and that his mood alterations have a bipolar flavor of which there is a family history. Regardless, Dr. Herskowitz's report with addendum was not provided to the Tewksbury Public Schools and Dr. Herskowitz never made any recommendations to the Tewksbury Public Schools for the treatment of S.C.'s alleged staring spells.

15. Denied that Ms. Paris observed sexual conduct. See Defendants' Concise Statement of Material Facts at ¶ 32. Further state that even if the allegations that are recited by S.C. for the first time in the affidavit

3

purportedly written by him attached to the Plaintiff's Concise Statement of Material Facts, are true, S.C. never told anyone at the Tewksbury Public School of these allegations.

16. Admitted that Ms. Moser knew S.C. as a student in her social studies class while at the Ryan School and that he did not exhibit difficult behaviors and that he was a sincere little kid. Deny remaining allegations.

17. Admitted that S.C. attended the seventh grade at the Wynn Middle School in 2000-2001 and that Ms. Paris spoke with the Wynn Life Skills teacher, Eleanor Edelstein as part of the transition from the Ryan to the Wynn School. Further admit that she spoke with Ms. Edelstein about not allowing the boys to be alone together as much as possible. Ms. Paris provided Ms. Edelstein with information about all of the Life Skills students including S.C. and his classmate. The Defendants deny the remaining allegations contained in this paragraph.

18. Admit that in October 2000, a certified aid in the Life Skills Classroom told Ms. Dixon that she thought that the boys were rubbing one anothers' thighs while sitting together in the classroom on two occasions. In addition, Ms. Dixon was told that yet another certified aid in the classroom, Defendant Kara Buckley believed that S.C. had his hands under Student R while they were sitting in the bleachers and that the boys later reversed positions. Exhibit 15. Further admit that Ms. Dixon reported these suspicions to defendant Robert Ware, the Behavioral Management Facilitator, and put the suspicions in writing. Exhibit 15 and Exhibit 16. Mr. Ware informed other administrators about the suspicions including Mr. Traveis who spoke with the boys about the touching. Mr. Traveis was not told by the boys that the touching was not consensual and

did not believe the touching alleged to be sexual harassment. Deny remaining allegations.

19. Denied. Mr. Traveis was certified by the Department of Education to be a school adjustment counselor. Mr. Traveis spoke with the boys who he saw on a regular basis. Both boys admitted that they touched each other meaning that not only did Student R admit to touching S.C., but S.C. also admitted to touching Student R. Ms. Porto never requested in the Amended IEP that S.C. have heightened supervision. Exhibit 14. Defendants admit that supervision is part of a regular education program.

20. Denied. Mr. Ware and other administrators at the Wynn Middle School were notified by Ms. Dixon that there were suspicions raised of three separate incidents of alleged touching between the boys. The administration was made aware of these allegations on only one occasion not on three separate occasions as the Plaintiffs allege. Defendants' Concise Statement of Facts at ¶¶ 41-43 and referenced exhibits. Defendants further state that Mr. Ware's notes also reflect that S.C. touched Student R and that S.C. had his hands under Student R while on the bleachers. Exhibit 18 attached to Plaintiff's Concise Statement of Facts.

21. Admit that Mr. Ware informed other administrators about the allegations and that collaboratively it was decided that the appropriate action would be to educate the boys through counseling as to what is and is not sexually appropriate behavior. Exhibit 16 at pp. 69-75. Admit that Mr. Ware did not call the police and did not notify Ms. Porto. Admit that Mr. Ware recalls informing Mr. McGuire and further state that Mr. McGuire does not recall being informed.

22. Admitted.

23. Denied. Ms. Edelstein allowed S.C. and other children in the Life Skills classroom to go to the bathroom one at a time only after they asked permission without an aid shadowing them. Ms. Edelstein was aware that the boys were to be kept apart as much as possible. Exhibit 12 attached to Plaintiff's Concise Statement of Fact. The boys did not attend gym class without an aid present. All witnesses deposed by the Plaintiffs have consistently testified that statements attributed to them in the DSS report attached to Plaintiffs' Concise Statement of Fact as Exhibit 20 are not at all accurate.

24. Admit that Mr. Ware discovered the boys in the bathroom with their pants down and concluded after his conversations with the boys that the boys were touching each other in a sexual nature. Denied that this happened in the bathroom five and ten times during the time that S.C. attended the Wynn School including the gym and cafeteria bathrooms. Regardless, no one from the Tewksbury Public School was ever notified prior to January 2001 by S.C., Ms. Porto or anyone that S.C. alleged that he had engaged in inappropriate touching of a sexual nature with his classmate in the gym and cafeteria bathrooms.

25. Denied that S.C. ever alleged prior to the statements contained in the affidavit purported to have been written by S.C. attached to the Plaintiff's Concise Statement of Facts that he first went to his locker, returned to the class and then asked to use the bathroom. All parties involved including S.C. have always stated that on January 11, 2001, during passing time, the classmate arrived at the Life Skills classroom and asked Ms. Edelstein if he could go to the bathroom. Ms. Edelstein gave the classmate permission to go to the bathroom. Exhibit 5 at pp. 63-64; Exhibit 16 at pp. 83-89; Exhibit

6

18. S.C. then asked Ms. Edelstein if he could go to his locker that was located directly outside of the classroom. Ms. Edelstein gave him permission to go to his locker. S.C. did not go to his locker, but instead followed his classmate to the bathroom. S.C. did not have permission from Ms. Edelstein or from one of the certified aides to go to the bathroom as required. Id.

26. Admitted that Mr. McGuire filed a 51A report with the Department of Social Services. Further admit that the Department of Social Services conducted and investigation. The Defendants dispute the accuracy of the statements contained in the DSS investigator's report as attributed to them. Further admit that the DSS found Ms. Edelstein to be negligent in her supervision of S.C.. Deny remaining allegations. Exhibit 17 attached to the Plaintiff's Concise Statement of Material Facts.

27. Denied. See Exhibit 13 attached to Plaintiff's Concise Statement of Material Facts.

28. Denied. See Exhibit 12 attached to the Plaintiff's Concise Statement of Material Facts.

29. Denied. See Exhibit 17 attached to the Plaintiff's Concise Statement of Material Facts.

30. Admit that only after S.C. was taken home were allegations made by Ms. Porto that S.C. was forced to engage in the behavior with his classmate. Likewise, the classmates parents alleged that he was forced to engage in the inappropriate sexual behavior by S.C.. Admit that Ms. Porto took S.C. to the emergency room at the New England Medical Center. Deny that the New England Medical Center found semen in S.C.'s underwear. Admit that Ms. Porto alleged to the Tewksbury Police Department that

semen had been found in S.C.'s underwear and that the Tewksbury Police report indicates that the articles of clothing were retrieved. Deny remaining allegations.

31. Admit that Mr. McGuire as well as the District Attorneys' Office believed that the matter should be handled by counseling the boys and that the boys should not have been disciplined for the behavior alleged. Exhibit 1 at pp. 224-225; Exhibit 19 at pp. 117-129. Further admit that after the January 2001 incident, the Town recommended having S.C. evaluated to determine if he understood the nature of what the boys were doing and that it was not appropriate. Admit that Mr. McGuire further wanted an evaluation to determine whether the Wynn Middle School was an appropriate placement for S.C.. Exhibit 19.

32. Admitted. The Defendants further state that Dr. Weida's report also states that S.C. told him that he engaged in sexual contact with a female foster child who resided in the family home. While Dr. Weida's report indicates that S.C. does not have an actual grasp of the concept of wrong, it does not state that S.C. did not consent to the behavior engaged in between he and his classmate or that S.C. because of his cognitive limitations was not able to consent. Rather, the evaluation report by Daniel Pilachowski states that it is very likely that the sexual activity engaged in between S.C. and the boy at school was mutual. Exhibit 7.

33. Denied. Ms. Porto appealed the IEP developed for S.C. that would have provided him with tutoring immediately following the January 2001 incident. Mediation was scheduled and as a result, it was agreed that tutoring would be provided for S.C. while an evaluation of S.C. could be performed and other tests could be performed. Following the receipt of

the test results, it was agreed that the ISET team would reconvene to review results and to engage in educational planning on S.C.'s behalf. Exhibit 27 attached to Plaintiff's Concise Statement of Facts; also see Exhibit 11.

34. Admit that S.C. was hospitalized at the Charles River Hospital in September 2001. Deny that the hospitalization was due to sexual harassment at the school. Admit that in November 2001 Stephen was admitted to Bournewood Hospital. Deny that he was admitted to Bournewood in order to await placement. Admit that S.C. was admitted to the Eagleton School and continues to reside at the Eagleton School because Ms. Porto refuses to allow S.C. to return home. Exhibit 11.

35. Denied. Exhibit 1. Defendants further state that S.C. never told anyone at the Tewksbury Public Schools that his classmate's stories about sex made him feel uncomfortable or that he regularly told his classmate to stop touching him and often defended himself by hitting his classmate in an effort to keep him away. Further S.C. never told anyone at the Tewksbury Public Schools and no one at the Tewksbury Public Schools observed S.C. become angry and frustrated when the alleged conduct between he and his classmate occurred or did not stop and did not observe him at times throwing is books and papers as a result. Further, neither S.C. or Ms. Porto for that matter ever told anyone at the Tewksbury Public Schools that the boys were performing oral sex on one another and therefore never told anyone at the Tewksbury Public Schools that the oral sex made S.C. uncomfortable or that he told his classmate that he did not want to do this or that his classmate told him that he would tell everybody what he was doing on the bus if he didn't do what he wanted. Finally S.C. never told

anyone at the Tewksbury Public Schools that his classmate threatened him with word or threatened to tell the kids that he was gay. Exhibit 16 at pp. 83-89 and 139-140; Exhibit 7; and Exhibit 5 at pp. 47.

36. Denied. The sexual harassment policies contained in the Student Handbook are written at a level appropriate for the age of the students matriculating in each of the schools. Further the Code of Conduct provides for what **may** happen if that student participates in unacceptable behavior listed in the handbook. The Student Handbooks are distributed to students at the beginning of each year. The students are expected to take the handbook home and have their parent review the handbook with them and sign a form indicating that the parent received the handbooks. S.C. would have received a handbook like all other students and would have brought it home for Ms. Porto's review. Regardless, Ms. Porto had several other children in the same schools as S.C. and would have received multiple copies of the school handbooks. Ms. Porto never complained to anyone at the Tewksbury Public Schools of behavior that would have amounted to sexual harassment against S.C. and therefore would not have been told of the process for filing a sexual harassment complaint. Ms. Porto met at a minimum one time per year with the ISET team. At that time she could have and did voice all concerns she had regarding S.C.'s treatment while at school. She never alleged to anyone at the Tewksbury Public Schools that the inappropriate sexual behavior in 1999 was not consensual and she never told anyone at the Tewksbury Public Schools of any other inappropriate or appropriate sexual behavior between S.C. and his classmate to trigger the filing of a sexual harassment complaint. Exhibit 1 at p. 140-145; 195; Exhibit 8; Exhibit 16 at pp. 83-89.

37. Admit that the assistant principal and the behavior management facilitator are two of the individuals who could receive a report of sexual harassment. Obviously the classroom teachers also could receive complaints from their students. The complaint is discussed with the student and the student can chose whether or not he or she wants to make a formal complaint in writing. Denied that Mr. McGuire does not know how the student would know the difference between a formal and informal complaint. The employee taking the complaint and involved in a discussion with the student would obviously explain to the student different options for resolving the behavior alleged. Denied that Mr. McGuire testified that there is no black and white policy regarding sexual harassment procedures. Mr. McGuire testified that, "[I]f you are asking me is there a black and white procedure that they follow in regard to any time a youngster comes down and says that Joey Jones is calling me whatever, no, there's not. They would use their discretion because a lot of times it's not black and white. We're dealing with middle level youngsters, and there is a lot of gray matter when you're dealing with youngsters at that level." Plaintiff's Exhibit 23 at pp. 82 continued onto p. 83. Denied that Mr. McGuire concedes that special education students do not understand behaviors which can be construed as sexual harassment and that the education process begins at that point. Rather Mr. McGuire testified at the portion of the transcript cited that, "[w]ith kids at this level [middle school level] I don't know if in their minds, they're viewing it as harassment or sexual harassment. In their mind it's them viewing some situation whereas somebody is making them feel uncomfortable because of something that is being said. ....And so, you know, it's brought

11

generally speaking to administrators as inappropriate behavior as opposed to sexual harassment or harassment, and then the education process begins, and Mr. Donahue and Mr. Ware, the guidance people, make students aware of the nature of the offense and let them know that it can be viewed as sexual harassment or it's a violation of their civil rights when there are ethnic remarks that might be being made. It's an educational process that begins at that point." Plaintiff's Exhibit 23 at p. 107.

38. Denied. The Tewksbury employees, Dr. Edelstein, Mr. Ware, Ms. Moser, and Dr. Bradley do not recall sexual harassment training received over the years they have been employed with the Tewksbury Public Schools.

39. Denied. Dr. McGrath testified that the sexual harassment policy is disseminated to the students in the wording of the student handbook that would be distributed to students at the commencement of the academic year. The building principals enjoy some latitude in the transcription of policies into their handbooks. There is one policy. They [the principals] would translate the policy language into their respective handbooks in language that would be developmentally appropriate for the age of the child who is the recipient of the handbook. Plaintiff's Exhibit 25 at pp. 29-34. Denied that Tewksbury does not conduct its own investigation when sexual touching is involved. The faculty and administration do not engage in any detailed conversation with the child if there is an allegation of sexual touching or sexual abuse that the administration believes should potentially be reported to the Tewksbury Police Department in order to minimize the number of times a child is interviewed and in order not to compromise any potential investigation of the Police Department and the

District Attorney's Office. The school does two things. The school would file a 51A notifying the Department of Social Services and then the school would take the appropriate action following the results of the investigation by the Tewksbury Police Department, McGrath Deposition Transcript at p. 79 attached hereto as Exhibit A.

40. Denied. Because Ms. Porto would not allow S.C. to reside at her home, the ISET team eventually recommended a residential program for S.C. after initially recommending several day programs for S.C. that would have allowed him to reside at Ms. Porto's home. Exhibit 11. S.C.'s trauma stems from among other things his committing of sexual offenses against his foster sister while at Ms. Porto's home. S.C. committed those offenses because he "was very mad at [his foster sister] because she got more attention from Nick." S.C. has suffered set backs in his progress while at the Eagleton School each time Ms. Porto has told him that she will not allow him to return home. Exhibit 7. S.C.'s IEPs speak for themselves.

41. Denied. S.C.'s IEPs speak for themselves. He has made progress both while at the Tewksbury Public Schools and while at Eagleton. His progress while at Eagleton has been made while he has not resided with Ms. Porto.

42. Denied. Following the January 2001 incident in the bathroom at the Wynn Middle School, an ISET meeting was held during which the ISET team recommended and offered to provide S.C. with home tutoring until an evaluation could be conducted. Ms. Porto did not accept the IEP that would have provided the tutoring and only after mediation could tutoring be provided. Ms. Proto rejected the IEP for tutoring on February 9, 2001 and a letter was sent to her on February 26, 2001 urging her to reconsider.

The tutoring contract was dated Marcy 12, 2001. By the mediated agreement dated March 19, 2001, the parties agreed to continue the tutoring services that were being provided. Exhibit 11. S.C. was hospitalized in September 2001 and again in November 2001. He felt sad and lonely because he missed his friends at school and because Ms. Porto refused to have him live at her home.

43. Denied. On one page of a 97 page Coordinated Program Review Report of Findings dated June 2002, the Department of Education found that there was not annual training being provided to all staff in the area of civil rights. It does not mention the specific staff interviewed during the evaluation process or whether any of those interviewed had contact with S.C. While the statutes are referenced in the box in the section cited there is no statement that the statutes had been violated by Tewksbury or that was statutes were not being implemented. Further, following the report, the Tewksbury Public Schools then have the opportunity to respond and file a corrective action plan.

Respectfully submitted,
The Defendants,
**Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine L. McGrath, James McGuire, Kevin P. McArdle, Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, Jennifer A. Fiore, Julie E. Bossdorf-Paras, Eleanor Edelstein, Robert Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon,**
By their attorneys

/s/ Deborah I. Ecker
Deborah I. Ecker, BBO # 554623

                                        BRODY, HARDOON, PERKINS & KESTEN, LLP
                                        One Exeter Plaza
                                        Boston, MA 02116
                                        (617) 880-7100

DATED: January 14, 2005