FILED
CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 JAN -5 P 1: 41

U.S. DISTRICT COURT
DISTRICT OF MASS.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of Stephen Colon, a Minor Person with a Disability | \* <br> \* <br> \* <br> \* |
| Vs. | \*     DOCKET NO. <br> \* |
| Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine L. McGrath, James McGuire, Kevin P. McArdle, Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, Jennifer A. Fiore, Julie E. Bossdorf-Paras, Eleanor Edelstein, Robert Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon | \* <br> \* <br> \* <br> \*\*   **04  10003 PBS** <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

### I. PARTIES

1. Ann Marie Porto and Nicholas Porto (hereinafter the "Portos" or the "Guardians") have been the legal guardians of Stephen Colon since June 12, 1991.

2. Stephen Colon ("Stephen") is the paternal nephew of Ann Marie Porto. Stephen has resided with the Guardians since he was 13 months old.

3. The Guardians and Stephen reside in Tewksbury, Massachusetts. Stephen began attending the Tewksbury Public Schools in 1994.

4. The Town of Tewksbury (hereinafter "Tewksbury") is a municipality in the Commonwealth of Massachusetts.

5. The Tewksbury Public Schools is a division of the Town of Tewksbury.

.. The Tewksbury School Committee oversees policies and procedures for the public school system. Christine L. McGrath, PhD, is the Superintendent of the Tewksbury Public Schools.

1

7. The following public school administrators were employed by Tewksbury and directly involved in the administration and/or implementation of educational services for Stephen during his term in the Tewksbury Public Schools: James McGuire, Principal of the John W. Wynn Middle School; Kevin P. McArdle, Principal of the Heath Brook Elementary School and the J.F. Ryan Elementary School; Pauline King, Vice Principal of the Heath Brook Elementary School; Loreen R. Bradley, Principal of the Dewing Elementary School; Michelina DeAngelis, Director of Student Services; Cheryl D. Porcaro, System Team Coordinator.

8. The following public school teachers were employed by Tewksbury and directly involved in the implementation of educational services for Stephen during his term in the Tewksbury Public Schools: Carol A. Gallo, Christine Hassan, J. Fiore, Julie E. Bossdorf-Paris and Eleanor Edelstein.

9. The following public school personnel and staff were employed by Tewksbury and directly involved in the implementation of educational services for Stephen: Robert Ware, Behavior Modification Specialist at the Wynn Middle School; Sharon J. Moser, Special Education Guidance Counselor at the J.F. Ryan Elementary School; William X. Traveis, Adjustment School Counselor at the John W. Wynn Middle School; Kara M. Buckley, Classroom Aide at the John W. Wynn Middle School; and Allison Dixon, Special Education Classroom Aide at the John W. Wynn Middle School.

## II. JURISDICTION

10. The United States District Court for the District of Massachusetts has jurisdiction over matters involving a federal question.

11. The United States District Court for the District of Massachusetts has authority to address Plaintiffs' state law claims under the court's supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 [17].

## III.   FACTUAL ALLEGATIONS

12. The Portos have cared for Stephen since he was 13 months old. Mrs. Porto is Stephen's paternal aunt. The Portos obtained guardianship of Stephen on June 12, 1991, when Stephen was five years old. Stephen has resided with the Porto family at all times since he was thirteen months old until February 2002 when he was placed at the Eagleton School in order to receive therapeutic educational programming in a residential setting.

13. Stephen is a person with a disability. He has been diagnosed with Fetal Alcohol Syndrome, moderate mental retardation (FS IQ 62 in 5/99 testing, 65 in 4/01

2

testing) and general global delays. Stephen has received special education services since age three. He first received services in Tewksbury during the 1994 -1995 school year as a first grade student at the Heath Brook Elementary School. Tewksbury has always identified Stephen as a special needs student and has provided educational services and an individualized education plan ("IEP") for each school year from his enrollment to the current time.

14. Several weeks after Stephen started school in Tewksbury, he was moved from a regular education class to a specialized class with eight boys. Richard Collins ("Richard") and Stephen have been classmates since the first grade.

15. Stephen's history of being sexually harassed and assaulted at school by Richard began in 1994. In the 1994 -1995 school year at the Heath Brook Elementary School, Mrs. Porto notified Stephen's first grade teacher, Mrs. Mason, that Richard was using profanity and telling Stephen sexually explicit stories at school. Mrs. Mason directed Mrs. Porto to speak to Richard's mother.

16. In following up with Richard's mother as directed, Mrs. Porto was informed that Richard was adopted with a known history of sexual abuse.

17. In the 1995-1996 school year when Stephen was in the second grade, Stephen continued to complain to Mrs. Porto that Richard was using profanity and telling stories about sexual activity. When Mrs. Porto approached Mrs. Gallo about Richard's ongoing behavior, Mrs. Gallo told her that she had already spoken to Richard's mother. During the same school year, Mrs. Porto also reported that Stephen's classmates were verbally and physically abusing him during recess. She was particularly concerned given Stephen's known disability and decreased social skills. Mrs. Porto specifically requested that the school supervise Stephen on the playground during recess.

18. In the 1996-1997 school year, Stephen's third grade teacher was again Mrs. Gallo. During the third grade, Mrs. Porto found out through reading Stephen's diary that there were ongoing problems that she had never been notified of. Mrs. Porto confronted Mrs. Gallo with the diary. Stephen's diary indicated that Richard was also exposing his penis to Stephen at school. Stephen also wrote in the diary that Richard forced him to lick urine off the ground in the schoolyard. Mrs. Gallo acknowledged the ongoing problems and reassured Mrs. Porto that the matters had been addressed. At this time, Mrs. Porto requested a teacher's aid to monitor Stephen at all times.

19. Upon information and belief, Richard has a history of sexualized behaviors toward other children throughout his career at Tewksbury Public Schools. Later in the third grade year, another parent informed Mrs. Porto that Richard was sexually inappropriate with her child as well. Alarmed by this information, Mrs. Porto again questioned Stephen. Stephen informed her that while at school, Richard touched his (Stephen's) penis and that Richard provided graphic

3

descriptions of oral sex and sexual positions. Richard also discussed his sister's sexual activity with Stephen. Mrs. Porto reported this additional information to Mrs. Gallo and to school officials at the yearly special education team meeting.

20. In the 1997-1998 school year, Mrs. Porto made several complaints to Mrs. Fiore, Stephen's fourth grade teacher. Mrs. Porto reported that Stephen was coming home upset and bruised and that he was still being physically, emotionally and verbally abused on the playground. Mrs. Fiore indicated that she was aware of the situation and would speak to the children.

21. Stephen's complaints escalated during the course of the fourth grade school year. Stephen complained of being physically and verbally abused on the school bus as well. Mrs. Porto reported this conduct to Vice Principal King and to Principal McArdle. Mr. McArdle re-assigned Stephen to a seat behind the school bus driver. Nevertheless, the abuse continued.

22. After reporting the physical and verbal abuse of Stephen to Mrs. Fiore, Vice Principal King and Principal McArdle, Mrs. Porto witnessed Stephen being chased, taunted and hit over the head with a stick during an unannounced visit to the school.

23. The 1998-1999 school year was Stephen's fifth grade year. Stephen attended the Dewing Elementary School. Stephen continued to report to Mrs. Porto that he was verbally and physically abused in the schoolyard. Mrs. Porto reported this conduct to Julie E. Bossdorf-Paras, Stephen's fifth grade teacher. She also reported this conduct to the school headmaster.

24. While in the fifth grade, Stephen disclosed that Richard performed oral sex on him while on the special education transportation vehicle. Stephen also reported that Richard touched and penetrated his buttocks with his fingers. Mrs. Porto notified Mrs. Bossdorf-Paras and Principal Bradley. At this time, Mrs. Porto threatened to call the police. She also filed a child abuse and neglect report pursuant to M.G.L. c. 119, § 51A regarding the activity between Stephen and Richard.

25. Mrs. Bossdorf-Paras acknowledged to Mrs. Porto that she witnessed inappropriate touching between the children in the classroom. Principal Bradley promised to monitor the children in the classroom and to provide separate transportation. Thereafter, Stephen again reported that Richard grabbed him and tried to stick his fingers in his buttocks through his pants while in school. Mrs. Porto reported this conduct to Principal Bradley and threatened to call the police. Principal Bradley stated that she would notify Richard's mother, but that there was nothing she could do because it was the last day of school.

26. Mrs. Porto requested additional supervision at Stephen's fifth grade special education team meeting. Mrs. Porto was told this request did not need to be in the

Individualized Education Plan ("IEP") and that Stephen was appropriately supervised.

27. Mrs. Porto was never informed of a complaint or grievance procedure following any of the above-identified incidents. Although Tewksbury was on notice of the verbal, physical and emotional abuse and sexual harassment that Stephen was subjected to, Tewksbury provided no services or safeguards sufficient to prevent or to protect Stephen from such conduct.

28. The Tewksbury School Committee is charged with the responsibility of establishing compliance with state and federal anti-harassment and anti-discrimination laws.

29. In the 1999-2000 school year, Stephen attended the J.F. Ryan Elementary School. Julie E. Bossdorf-Paras was Stephen's primary sixth grade teacher. Despite Mrs. Bossdorf-Paras' prior knowledge of the ongoing safety issues and exposure to sexualized behaviors, Stephen continued to report physical touching by Richard.

30. Mrs. Porto requested one-to-one supervision of Stephen in the sixth grade based on the inappropriate contact between Stephen and Richard. Mrs. Porto also addressed this request at the sixth grade special education team meeting. The team assured Mrs. Porto that Stephen was supervised and monitored at all times by the classroom teacher as well as other classroom personnel.

31. In the 2000-2001 school year, Stephen attended the seventh grade at the John W. Wynn Middle School. Eleanor Edelstein was Stephen's seventh grade teacher. At the beginning of the school year, Mrs. Porto asked Mrs. Edelstein to ensure that Stephen was supervised at all times. At a special education team meeting, Adjustment Counselor William X. Traveis and Special Education Classroom Aide Allison Dixon assured Mrs. Porto that Stephen would be monitored at all times. Nevertheless, Richard had unsupervised access to Stephen in the seventh grade including but not limited to contact in the gym locker room and gym bathroom.

32. Behavior Modification Specialist Robert Ware had knowledge that Richard exposed Stephen to sexualized and other harassing behaviors in the seventh grade and in prior years.

33. Upon information and belief, Sharon Moser, Christine L. McGrath, James McGuire, Kevin P. McArdle, Loreen R. Bradley, Michelina DeAngelis and Cheryl D. Porcaro were aware via participation in educational team meetings and in their administrative capacity of the ongoing discrimination, harassment and abuse of Stephen.

34. Richard was allowed unsupervised access to Stephen while they were seventh grade students in Ms. Edelstein's classroom. Then classroom aides Kara Buckley, Allison Dixon and Elaine Karl were aware of sexualized behavior between the

boys. On January 11, 2001, Ms. Edelstein directed Mr. Ware to locate Richard and Steven, who were both out of the classroom. Mr. Ware discovered Richard and Stephen engaged in sexual activity in the boy's restroom.

35. As a result of the January 11, 2001 incident, Mrs. Porto filed a child abuse and neglect report pursuant to M.G.L. c. 119, §51A with the Department of Social Services ("DSS"). After an investigation pursuant to M.G.L. c. 119, §51B, DSS found there was reasonable cause to believe that Tewksbury Public Schools and its personnel were negligent in supervising Stephen and Richard.

36. Stephen was seen at the Floating Hospital for Children Emergency room following the January 11, 2001 sexual assault.

37. The Tewksbury Police were notified and completed an incident report. Upon information and belief, the police retrieved semen stained underwear from Mrs. Porto's residence on January 12, 2001. The police sent the underwear to the state lab in Sudbury.

38. The harassment and abuse Stephen suffered at school has caused irreversible emotional trauma and psychiatric harm. Stephen has been hospitalized numerous times since the January 11, 2001 incident including: Charles River Hospital, Lowell Youth Treatment Center, New England Medical Center and the Bournewood Hospital. Stephen is unable to attend public school. From February 2002 to date, Stephen has resided in a residential therapeutic treatment facility.

39. Numerous elements of Stephen's life have been compromised indefinitely including but not limited to unrestricted access to the community and to his family and his ability to participate in independent gainful employment.

40. Stephen has substantial damages as a result of years of sexual abuse and harassment including but not limited to the following: He has received extensive psychological counseling, and it is expected that such counseling will be required for the indefinite future. Stephen resides in a full-time residential facility, which precludes regular daily contact with his family. He has lost the society and companionship of his guardians and his extended family.

41. The Portos' relationship with Stephen has been damaged as a result of years of sexual abuse and harassment including but not limited to the following: Stephen's anger about his placement outside the home has damaged the once trusting and loving relationship shared with his guardians. Their interaction is now guarded and requires constant supervision that imposes restrictions upon the family and their activities. The Portos are also affected by their son's inability to join the family business in the future.

42. Ann Marie Porto lost the ability to provide specialized foster care, which was her primary source of income. Mrs. Porto was also denied the right to adopt two

6

children who resided in her home for an extended period of time thereby causing further emotional distress.

## IV.   CAUSES OF ACTION

## COUNT I

## TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972
## (20 U.S.C. § 1681 (a))

43. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 42 of this Complaint.

44. Upon information and belief, Tewksbury Public Schools receive federal funding.

45. Defendants had actual knowledge of sexual harassment against Plaintiff.

46. Defendants had authority to address the sexual harassment against Plaintiff.

47. Defendants were deliberately indifferent in responding to sexual harassment against Plaintiff.

48. Sexual harassment was so severe and pervasive and objectively offensive that it deprived Plaintiff of access to the educational opportunities and benefits provided by the school.

## COUNTS II AND III

## RIGHT TO FREEDOM FROM SEXUAL HARASSMENT
## (M.G.L. c. 214, §1C and M.G.L. 151 C)

49. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 48 of this Complaint.

50. Stephen was subject to conduct of a sexual nature that unreasonably interfered with his education by creating an intimidating, hostile, humiliating and sexually offensive educational environment.

## COUNT IV

## DISCRIMINATION IN PUBLIC SCHOOLS
### (M.G.L. c. 76, § 5)

51. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 50 of this Complaint.

52. Stephen was excluded from and discriminated against obtaining the advantages, privileges and courses of study at the Tewksbury Public Schools as a result of sexual harassment.

53. Defendants failed to establish and/or utilize effective policies and procedures and/or to implement monitoring and evaluation practices to insure that sexual harassment was eliminated.

54. Sexual harassment discrimination created an obstacle to equal access to Tewksbury school programs for Stephen.

55. Defendants failed to prevent harassment and discrimination and failed to respond promptly to such discrimination and harassment when they had knowledge of its occurrence.

56. Defendants failed to provide and/or utilize adequate in-service training regarding the prevention of discrimination and harassment and the appropriate methods for responding to such discrimination and harassment in a school setting.

## COUNT V

## TITLE II OF THE AMERICANS WITH DISABILITIES ACT

57. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 56 of this Complaint.

58. Stephen is a person with a disability. He has been diagnosed with Fetal Alcohol Syndrome and moderate mental retardation.

59. Stephen's disability has a substantial limitation on his major life activities.

60. Stephen was denied access to policies and procedures regarding protections against sexual harassment and sexual abuse that non-disabled students are afforded.

## COUNT VI

### DEPRIVATION OF RIGHTS
### (42 U.S.C. 1983)

61. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 60 of this Complaint.

62. At all times material to this Complaint, Defendants were acting under color of federal and state laws, statutes, ordinances, codes and regulations while depriving the Plaintiff of established legal rights, including but not limited to:

    a) the right to be free from sexual harassment and sexual abuse;
    b) the right to be free from discrimination on the basis of disability; and
    c) equal access to education.

## COUNT VII

### MASSACHUSETTS TORT CLAIMS ACT
### (M.G.L. c. 258, § 4)

**A. Negligence**

63. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 62 of this Complaint.

64. Plaintiffs have complied with the statutory prerequisites for filing a claim for negligence against the Town of Tewksbury.

65. The Town of Tewksbury was negligent in failing to provide a safe environment free from sexual harassment, physical, verbal and emotional abuse and discrimination.

66. As a direct and proximate result of the negligence of the Defendant, Stephen Porto suffered the injuries and damages described herein.

67. As a direct and proximate result of the negligence of the Defendant, Ann Marie Porto suffered the injuries and damages described herein.

68. The Town of Tewksbury is liable for the negligent acts of all school personnel acting within the scope of their employment while engaged in the conduct alleged in this Complaint.

9

## B. Negligent Infliction of Emotional Distress

69. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 68 of this Complaint.

70. The Town of Tewksbury negligently inflicted emotional distress upon Stephen by allowing repeated, foreseeable incidents of sexual harassment, abuse and discrimination against him.

71. Defendant's negligence caused the Plaintiff to suffer emotional distress.

72. Plaintiff's emotional distress was caused by sexual harassment, abuse and discrimination. Plaintiff's emotional distress also caused physical injury manifested by objective symptomatology supported by expert medical testimony.

73. Plaintiff's distress was reasonably foreseeable. Defendant was aware that Plaintiff's disability rendered him especially susceptible to emotional distress and a reasonable person would have suffered distress under the circumstances.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 73 of this Complaint.

75. Defendants knew or should have known that emotional distress was the likely result of the conduct described herein.

76. The sexual abuse, harassment and discrimination described herein is extreme and outrageous, is beyond all possible bounds of decency and is utterly intolerable in a civilized community.

77. The acts and omissions of the Defendants were the cause of the Plaintiff's distress.

78. The emotional distress sustained by the Plaintiff was severe and of a nature that no reasonable man could be expected to endure.

## COUNT VIII

## LOSS OF CONSORTIUM
### (M.G.L. c. 231, § 85X)

79. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 78 of this Complaint.

80. Ann Marie and Nicholas Porto suffered a loss of society and companionship with Stephen as described herein.

81. Stephen Porto suffered a loss of society and companionship with his parents as described herein.

## COUNT IX

## LOSS OF ENJOYMENT OF LIFE

82. Plaintiffs re-allege and incorporate herein the allegations contained in Paragraphs 1 through 81 of this Complaint.

83. As a result of Defendants' negligence, Stephen's ability to enjoy of life has been substantially diminished as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

1. Award compensatory damages against the Defendants;

2. Award punitive damages against the Defendants;

3. Award Plaintiff all reasonable costs, expenses and attorney's fees; and

3. Such other relief as the Court deems just and proper.

Plaintiffs demand a jury trial on all claims so triable.

PLAINTIFFS
By their Attorneys,

Lynn A. Leonard
Attorney-At-Law
527 Main Street, Suite 8
Melrose, MA 02176
(781) 662-6161
B.B.O. No. 561662

Anita B. Sullivan
Attorney-At-Law
458 Main Street
Wakefield, MA 01880
(781) 224-0701
B.B.O. No. 628873

Dated: January 5, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04-10003 PBS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of Stephen Colon, a Minor Person with a Disability,<br>                       Plaintiffs | ) ) ) ) ) |
| vs. | ) ) |
| Town of Tewksbury, Town of Tewksbury Public Schools, Town of Tewksbury School Committee, Christine L. McGrath, James McGuire, Kevin P. McArdle, Pauline King, Loreen R. Bradley, Michelina DeAngelis, Cheryl D. Porcaro, Carole A. Gallo, Jennifer A. Fiore, Julie F. Bossdorf-Paras, Eleanor Edelstein, Robed Ware, Sharon J. Moser, William X. Traveis, Kara M. Buckley and Allison Dixon,<br>                       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) |

## PLAINTIFFS' ANSWERS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their attorneys, hereby respond to Defendants' First Set of Interrogatories as follows. Plaintiffs reserve the right to supplement their responses.

## GENERAL OBJECTIONS

(Applicable to All Interrogatories)

Plaintiffs make the following general objections to the Complainant's interrogatories. Each response made below is made subject to and without waiving these general objections and each of the general objections is incorporated by reference into each of Plaintiffs' responses without restating the general objection in each response.

1. The following responses are made without waiver of, and with preservation of the following: (a) all objections as to competency, relevancy, materiality, privilege and

1

admissibility of each answer and the subject matter thereof; (b) the right to object on any grounds to the use of any such answer in any further proceedings in this action (including trial thereof) and in any other action; (c) the right to object on any grounds at any time to any demand or request for further interrogatories or other discovery proceedings involving or relating to the subject matter of any of the interrogatories; and (d) the right at any time to revise, supplement, amend or clarify any of the responses made herein, whether by means of additional responses or otherwise.

2. Plaintiffs object to each interrogatory to the extent that it seeks to impose discovery obligations that exceed those set forth in the regulations of the Massachusetts Commission Against Discrimination.

3. Plaintiffs object to each interrogatory to the extent that it is overly broad, vague and/or ambiguous or seeks information that is not relevant to the subject matter of this proceeding.

4. Plaintiffs object generally to the interrogatories in each and every instance in which they request information protected from discovery because it: (a) is subject to the attorney-client privilege; (b) constitutes attorney work product; or (c) is information otherwise protected from discovery. The specific responses set forth below do not include information which is subject to the attorney-client privilege or which constitute attorney work product.

5. Plaintiffs hereby incorporate each of the preceding general objections into each of the specific responses set forth below.

6. As discovery is ongoing, Plaintiffs reserve the right to supplement their responses to these interrogatories.


## INTERROGATORY NO.1

Please describe in detail all communications oral or written that you or Nicholas Porto had with any of the defendants in which you claim that you informed them of the sexual harassment and assault you allege occurred in your Complaint from 1994 to February 2002, including in your answer, the date of all such communications, to whom the communications were made, witnesses to any such communications, whether the communications were documented, the content of the communication and the response.


To the best of my recollection at this time, I made the following complaints:

In the 1994-1995 school year, I notified Carol Mason and Richard Collins' mother that Richard was using profanity and telling sexually explicit stories at school. This complaint was not documented.

In the 1995-1996 school year, I notified Carole Gallo that Stephen continued to complain that Richard was using profanity and telling stories about sexual activity. I also requested that Mrs. Gallo supervise Stephen on the playground during recess because he was being verbally and physically abused during recess. This complaint was not documented.

In the 1996-1997 school year, I found out through reading Stephen's diary that there were ongoing problems that I had never been notified of. I confronted Mrs. Gallo with the diary. Stephen's diary indicated that Richard was also exposing his penis to Stephen at school. Stephen also wrote in the diary that Richard forced him to lick urine off the ground in the schoolyard. Mrs. Gallo acknowledged the ongoing problems and reassured me that the matters had been addressed. At this time, I requested a teacher's aid to monitor Stephen at all times. This complaint was not documented.

In the 1997-1998 school year, I made several complaints to Jennifer Fiore. I reported that Stephen was coming home upset and bruised and that he was still being physically, emotionally and verbally abused on the playground. Mrs. Fiore indicated that she was aware of the situation and would speak to the children. This complaint was not documented.

On May 29, 1998, I complained to Ms. Fiore at Stephen's special education team meeting. This complaint was not documented.

Stephen's complaints escalated during 1997-1998. Stephen complained of being physically and verbally abused on the school bus as well. I reported this conduct to Vice Principal King and to Principal McArdle. Mr. McArdle re-assigned Stephen to a seat behind the school bus driver. Nevertheless, the abuse continued. This complaint was not documented.

In the 1998-1999 school year, Stephen continued to report that he was verbally and physically abused in the schoolyard. I reported this conduct to Julie E. Bossdorf-Paras, Stephen's fifth grade teacher. I also reported this conduct to the school headmaster. This complaint was not documented.

While in the fifth grade, Stephen disclosed that Richard performed oral sex on him while on the special education transportation vehicle. Stephen also reported that Richard touched and penetrated his buttocks with his fingers. I notified Mrs. Bossdorf-Paras and Principal Bradley. At this time, Mrs. Porto threatened to call the police. This complaint was not documented.

Mrs. Bossdorf-Paras acknowledged that she witnessed inappropriate touching between the children in the classroom. Principal Bradley promised to monitor the children in the classroom and to provide separate transportation. Thereafter, Stephen again reported that Richard grabbed him and tried to stick his fingers in his buttocks through his pants while in school. I reported this conduct to Principal Bradley and threatened to call the police. Principal Bradley stated that she would notify Richard's mother, but that there was nothing she could do because it was the last day of school. This complaint was not documented.

On June 4, 1999, I complained to the special education team including Julie Bossdorf, Stella Sullivan and Michelle Pastore and requested additional supervision. I was told this request did

not need to be in the Individualized Education Plan ("IEP") and that Stephen was appropriately supervised. This complaint was not documented.

In the 1999-2000 school year, I requested one-to-one supervision of Stephen in the sixth grade based on reports from Stephen of continued inappropriate contact between Stephen and Richard. I also addressed this request at the sixth grade special education team meeting. The team assured me that Stephen was supervised and monitored at all times by the classroom teacher as well as other classroom personnel. This complaint was not documented.

In the 2000-2001, I asked Eleanor Edelstein, Stephen's seventh grade teacher, at the beginning of the school year to ensure that Stephen was supervised at all times. At a special education team meeting, Adjustment Counselor William X. Traveis and Special Education Classroom Aide Allison Dixon assured me that Stephen would be monitored at all times. This complaint was not documented.

Upon information and belief, Sharon Moser, Christine L. McGrath, James McGuire, Kevin P. McArdle, Loreen R. Bradley, Michelina DeAngelis and Cheryl D. Porcaro were aware via participation in educational team meetings and in their administrative capacity of the ongoing discrimination, harassment and abuse of Stephen.


INTERROGATORY NO. 2

Please describe in detail any evidence that forms the basis of your allegation that each defendant had knowledge of the sexual harassment and abuse alleged in Count I and VI of your Complaint including in your answer, the knowledge you attribute to each defendant and the evidence that supports your claim that each individual defendant had the knowledge alleged.

See answer to Interrogatory No. 1. See also documents provided in response to Document Request No. 2 from the Department of Social Services wherein several Defendants admitted having prior knowledge of inappropriate conduct between Stephen Colon and Richard Collins.


INTERROGATORY NO. 3

Please specify in detail any and all damage you allege that Stephen Colon suffered as a result of the allegations contained in your Complaint including but not limited to any and all physical and/or emotional injury or illness claimed by Stephen Colon.

To the best of my knowledge at this time, Stephen has suffered damages as follows:

The harassment and abuse Stephen suffered at school has caused irreversible emotional trauma and psychiatric harm. Stephen has been hospitalized numerous times since the January 11, 2001 incident including: Charles River Hospital, Lowell Youth Treatment Center, New England Medical Center and the Bournewood Hospital. Stephen is unable to attend public school. From February 2002 to date, Stephen has resided in a residential therapeutic treatment program.

4

Numerous elements of Stephen's life have been compromised indefinitely including unrestricted access to the community and to his family and his ability to participate in independent gainful employment. Stephen has substantial damages as a result of years of sexual abuse and harassment including the following: He has received extensive psychological counseling, and it is expected that such counseling will be required for the indefinite future. Stephen resides in a full-time residential facility, which precludes regular daily contact with his family. He has lost the society and companionship of his guardians and his extended family.

## INTERROGATORY NO. 4

Please state each and every date on which Stephen Colon was examined or treated by any doctor, physician or medical or mental health care practitioner with respect to any injury or illness which you claim he sustained as a result of the allegations in your complaint setting forth in detail as to each such date of examination:

a.  the name and address of each such doctor, physician, medical or mental health care practitioner;
b.  the nature and extent of the examination or treatment received from each such doctor, physician, medical or mental health care practitioner;
c.  the diagnosis or prognosis by each doctor, physician, medical or mental health care practitioner
d.  an itemized list of each charge made to you or any other person or organization on your account by each doctor, physician, medical or mental health care practitioner.

To the best of my knowledge at this time, Stephen was seen by the physicians and at the medical facilities listed below. I have requested the complete medical record from all treatment providers. Please refer to those records, which have been provided in response to Document Request No. 1.

Massachusetts General Hospital
Fruit Street
Boston, MA  02108

Nancy Lundy, Psychologist
Steven Nickman, Psychologist
Eileen Oulette, Neurologist
Annah Abrams, Psychologist
Gretchen Timmel, Pychometrist
Susan L. Springer, Psychiatrist
Joan Stoler, MGH Genetics Clinic

Floating Hospital for Children
830 Washington Street
Boston, MA  02111

Phoebe Adams, ED.M
Charles Moore, Psychologist
Joel Herskowitz, Neurologist
Lori Goldberg, M.S., CCC/SLP

New England Medical Center
750 Washington Street
Boston, MA  02111

Bradford M. Smith, PH.D.
Three Militia Drive
Lexington, MA  02421-4707

Charles River Hospital
203 Grove Street
Wellesley, MA  02482

Bournewood Health Systems
300 South Street
Brookline, MA  02167

Normand Tanguay, M.D.
Wilmington Pediatrics
500 Salem Street, Rt. 62
Wilmington, MA  01887

Lowell Youth Treatment Center
391 Varnum Avenue
Lowell, MA  01854

Arbour Counseling
10 Bridge Street
The Simpson Block
Lowell, MA  01852

Center for Family Development
45 Merrimack Street
Lowell, MA  01852

Patricia Doherty
Eagleton School
446 Monterrey Road
Great Barrington, MA  01230

Alexandria M. Weida
Clinical and Forensic Psychologist
Andover, MA

INTERROGATORY NO. 5

6

Please specify any and all doctors, physicians or medical or mental health practitioners, including all psychiatrists, psychologists and social workers that Stephen Colon has treated with from 1991 to the present.

To the best of my knowledge at this time, Stephen was seen by the physicians and at the medical facilities listed below. I do not recall the names of all treating physicians for every institution listed. The complete records from those institutions have been requested. Please refer to those records, which have provided in response to Document Request No. 1.

Children's Hospital

Frank Hopkins Duffy, Neurologist

Massachusetts General Hospital

Steven Nickman, Psychologist
Eileen Oulette, Neurologist
Annah Abrams, Psychologist
Gretchen Timmel, Pychometrist
Susan L. Springer, Psychiatrist
Joan Stoler, MGH Genetics Clinic
Nancy Lundy, Psychologist

Tufts New England Medical Center/
Floating Hospital for Children

Charles Moore, Psychologist
Joel Herskowitz, Neurologist
Lori Goldberg, M.S., CCC/SLP
Phoebe Adams, ED.M

Occupational Therapy Associates
Cay Reilly, OT

Rhonda Fogle, M.D.

Bradford M. Smith, Psychologist
Normand Tanguay, M.D.

Lowell Youth Treatment Center

Charles River Hospital

Bournewood Health Systems

Arbour Counseling

Center for Family Development

Beth Israel Hospital

Medical Care Center for
Beth Israel and Children's Hospital

East Boston Neighborhood Health Center

Whidden Memorial Hospital

## INTERROGATORY NO. 6

Please identify each person you expect to call as an expert witness at the trial of this matter and
for each expert please state the subject matter on which each expert is expected to testify, the
substance of all the facts to which each expert is expected to testify, the substance of the opinions
to which each expert is expected to testify and a summary of the grounds for each such opinion.

Brad Smith
Alexandra Weida
Patricia Doherty

There will be additional expert witnesses. I will supplement this answer at the time additional
expert witnesses are identified.

## INTERROGATORY NO. 7

Please describe in detail any evidence that supports your claim that you lost your ability to
provide specialized foster care as alleged in paragraph 42 of your Complaint including in your
answer all foster children that you have had in your home, the dates that such foster children
have been placed in your home, why each foster child has been removed from your home, all
applications filed by you to have foster children placed in your home that were denied, and all
applications filed by you for adoption of children that were denied and the reason for their
denial.

On February 7, 2001, two children were removed from my home. My family was bonded with
both children. I had intended to adopt them, and my family suffered emotional distress as a
result of their removal.

I have had foster children in my home for 16 years. I am only allowed a maximum of six
children. Nicole (23), Melissa (22), Nicholas (18) are my biological children. I always had the
maximum number of children that were allowed, except in the last year because I am in the
process of adopting a child. I receive $1,500 per month to care for each child.

8

I have had the following foster children in my home.

Stephen - May 1988
Alissa - September 1992
Melinda - September 1992
Christian - Removed in February 2001
Shanya - Removed In February 2001
Joseph - November 2001
Anthony - December 2001

I also had other children on a short-term basis for respite.

## INTERROGATORY NO. 8

Please state each and every date on which you were examined or treated by any doctor, physician or medical or mental health care practitioner with respect to any injury or illness, including claims for emotional distress, which you claim you sustained as a result of the allegations in your complaint setting forth in detail as to each such date of examination:

a.  the name and address of each such doctor, physician, medical or mental health care practitioner;
b.  the nature and extent of the examination or treatment received from each such doctor, physician, medical or mental health care practitioner;
c.  the diagnosis or prognosis by each, doctor, physician, medical or mental health care practitioner;
d.  an itemized list of each charge made to you or any other person or organization on your account by each doctor, physician, medical or mental health care practitioner.

Rosemary Bill, Nurse Practitioner
Curtis Bowman, M.D.
North Suburban Cardiology Associates P.C.
3 Woodland Road, Suite 422
Stoneham, MA  02180
I treated from 1999 to present for depression, gastroenteritis, reflux, ulcers, high blood pressure, diabetes.

Janet Brown
Concord-Assabet Family & Adolescent Service, Inc.
380 Massachusetts Avenue
Acton, MA  01720

I attended family therapy from 1995-2000 with my children to deal with my daughter Melissa being sexually abused by Stephen.

Dr. Thor Bergersen
Beatrice Guilbault, Counselor
Center for Family Development
45 Merrimack Street
Lowell, MA  01852

I treated with CFD for depression from February 2001 through early 2004 as a consequence of Stephen's abuse by Richard. My treatment included the use of Prozac, Wellbutrin, Celexa, Effexor, Zoloft and Paxil.

Reggie
Tri City Mental Health
173 Chelsea Street
Everett, MA  02149

I attended counseling as a consequence of Stephen's abuse by Richard and its impact on my family and marriage.

Dr. Beverly Boker
Woburn Medical Center

Dr. Boker has been my primary care physician from 1994-1998.


INTERROGATORY NO. 9

Please specify any and all doctors, physicians or medical or mental health care practitioners, including all psychiatrists, psychologists and social workers that you have treated with from 1994 to the present.

See answer to Interrogatory No. 8.


INTERROGATORY NO. 10

Please describe in detail the exact date on which you were given custody of Stephen Colon, the Court and docket number for the case(s) concerning legal custody and guardianship of Stephen Colon, the reason(s) that Stephen Colon's natural birth parents did not retain custody and any and subsequent Court orders modifying the original custody and/or guardianship order.

Temporary custody of Stephen was initially given to Ellen White, through Probate Court, via a temporary Guardianship (Docket No. 87P1265). Stephen was placed with us on May 17, 1988. DSS has custody through the Suffolk Juvenile Court (Docket No. 87127N)  A Guardianship was filed in the Suffolk Probate Court (Docket Nos. 87P1265 and 89A0043) and a Guardianship Agreement was completed on January 16, 1991. The Permanent Guardianship was finalized in

March 1991. Stephen's biological parents were unable to parent Stephen and therefore agreed to the Guardianship.

INTERROGATORY NO. 11

Please describe in detail all occasions on which it has been alleged that Stephen Colon has engaged in inappropriate sexual behavior with anyone, including in your answer, the date on which the alleged behavior occurred, the nature of the alleged behavior, the individual(s) with whom the alleged inappropriate behavior occurred, how you learned of the inappropriate behavior alleged, and the government agency(s) to which the alleged inappropriate behavior was reported.

To the best of my knowledge at this time, Stephen engaged in inappropriate sexual conduct as follows:

In March of 1999, I became aware that Stephen inappropriately touched my adopted daughter Melinda while playing doctor. Specifically, he pointed to her vagina with a drumstick. My daughter Melissa witnessed this incident. She was 11 years old at the time. She reported this incident to my mother, who then informed me. I took Melinda and Stephen immediately to their pediatricians. I was advised by my pediatrician to bring Stephen to New England Medical Center and was referred to Dr. Brad Smith. I also reported this incident to the Department of Social Services.

From 1994 - 2001, there were several incidents while Stephen attended the Tewksbury Public Schools that he and Richard Collins were engaged in inappropriate sexual conduct. Stephen reported these incidents to me. I reported this conduct to DSS. These incidents include the following:

In the 1994 -1995 school year at the Heath Brook Elementary School, I notified Stephen's first grade teacher, Carole Mason, that Richard was using profanity and telling Stephen sexually explicit stories at school.

In approximately the 1995 - 1996 time frame, Stephen reported that Richard touched him inappropriately during a sleep over at Richard's home.

In the 1995-1996 school year when Stephen was in the second grade, Stephen continued to complain to me that Richard was using profanity and telling stories about sexual activity. Stephen stated that while at school, Richard touched his (Stephen's) penis and that Richard provided graphic descriptions of oral sex and sexual positions. Richard also discussed his sister's sexual activity with Stephen.

In March of 1999, the children engaged in oral sex on the school bus.

In the 1996-1997 school year, Stephen's third grade teacher was again Mrs. Gallo. During the third grade, I found out through reading Stephen's diary that there were ongoing problems that I

11

had never been notified of. I confronted Mrs. Gallo with the diary. Stephen's diary indicated that Richard was also exposing his penis to Stephen at school.

In the 1998-1999 school year while Stephen was in the fifth grade, he disclosed that Richard performed oral sex on him while on the special education transportation vehicle. Stephen also reported that Richard touched and penetrated his buttocks with his fingers. The classroom teacher, Julie Bossdorf-Paras, acknowledged to me that she witnessed inappropriate touching between the children in the classroom.

In the 1999-2000 school year, Stephen continued to report physical touching by Richard. Stephen reported to me that on December 21st and 22nd of 2000 and on January 4th and 5th of 2001, he and Richard Collins engaged in sexual conduct in the boy's bathroom at school. He also reported inappropriate sexual conduct on multiple occasions in the locker room bathroom.

On January 11, 2001, Stephen and Richard were discovered in the boy's bathroom engaged in inappropriate sexual conduct.


INTERROGATORY NO. 12

Please describe in detail the basis for your allegations contained in paragraph 42 of your Complaint that restrictions were placed on the family activities as a result of the sexual abuse and harassment alleged and that said abuse has affected Stephen Colon's ability to join the family business in the future, including in your answer the nature of any such family business.

The family business is in HVAC. It was our hope that Stephen would be able to work in the business as an assistant. But since he was sexually abused and harassed, he is not allowed in the community unsupervised and this limits what opportunities he will be able to access. His relationship with his father has also deteriorated.

There are limitations on what our family is able to do because of the supervision that Stephen requires. He cannot be left alone with younger children. He cannot be unsupervised in the community or in everyday activities such as going to the mall or to the movies. Stephen cannot go on vacation with the family. Family outings have to be arranged to be sure that Stephen is supervised at all times. Even though he is seventeen years old, he cannot be left alone with younger children. His relationship with his siblings (in our home) has suffered. Over the years, Stephen has had behavioral problems caused by sexual harassment and abuse that make him a potential threat to the family.
Stephen is moody, angry and upset about the restrictions and his lack of freedom. Stephen suffers from low self-esteem, self-respect, self-confidence and depression because he is unable to live with the family. He has difficulty with social situations and peer relationships. He has no friends in the community.

12

INTERROGATORY NO. 13

Please describe in detail the basis for your allegation contained in Count V of your Complaint that Stephen Colon was discriminated against on the basis of his disability including in your answer the policies and procedures that you claim Stephen Colon was denied access to while non-disabled students were afforded access and any evidence to support your claim that reason [sic] that access to that policy was allegedly denied to Stephen Colon was because of his disability.

To the best of my knowledge at this time, Stephen was denied access to policies and procedures including the following:

The opportunity to file a formal sexual harassment complaint and a subsequent investigation;
The opportunity to access materials modified to his appropriate cognitive level so that he could understand the sexual harassment policies and procedures;

In addition, the school failed to take the following action as required by law:

Remedial steps to stop sexual harassment and abuse
Implement appropriate disciplinary policies
Provide adequate notice to parents
Provide access to appropriately trained and certified professionals
Make reasonable effort to keep Stephen and Richard separate and apart

Continuous harassment over a six-year period supports that Stephen did not have reasonable access to Defendants' sexual harassment policies and procedures. As a result of the hostile environment and disparate access to sexual harassment policies, Stephen was denied a full and equal education. He suffered emotional upset, decreased self-esteem and difficulty establishing peer relationships. His emotional distress caused stomachaches, and at times he refused to go to school.


INTERROGATORY NO. 14

Please describe in detail the factual basis for your claim of intentional infliction of emotional distress as alleged in Count VIII of your Complaint as against each of the individual defendants.

I do not have a claim for intentional infliction of emotional distress. I brought this claim in behalf of Stephen Colon.

13

Signed under the pains and penalties of perjury this 26th day of May 2004.


Ann Marie Porto


Objections by:


Lynn A. Leonard
Attorney-At-Law
527 Main Street, Suite 8
Melrose, MA  02176
(781) 662-6161
B.B.O. No. 561662

Anita B. Sullivan
Attorney-At-Law
458 Main Street
Wakefield, MA  01880
(781) 224-0701
B.B.O. No. 628873


Dated:  May 26, 2004

14