UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                    )
Ann Marie Porto and Nicholas Porto,                 )
Individually and on Behalf of SC,                        )
a Minor Person with a Disability                         )
                                                                    )  C.A. No. 04-CV10003-PBS
v.                                                                  )
                                                                    )
Town of Tewksbury                                          )
_____  )


**PLAINTIFFS' JURY INSTRUCTIONS**[1]

You have heard the evidence and the arguments in this case.  It is now my duty to instruct you on the law that you must follow and apply. When I have finished, you will begin your discussion with each other what we call your deliberations.

To help you understand and remember these instructions on the law, I will divide them into three parts:  First, the opening general instructions intended to guide you throughout your deliberations; Second, instructions about the claims and defenses, about questions you will be asked to answer (as stated in the verdict forms), and about the law you must apply in considering these questions; and third, some additional general instructions about procedures during your deliberations.

**PART I**

**OPENING GENERAL INSTRUCTIONS**

All of my instructions are about the law you must apply.  I do not mean any of my instructions to be understood by you as a comment by me on the facts or on the evidence

_____
[1] Cahill v. TIG Premier Insurance Co., C.A. No. 96-40147-NMG (D. Mass. June 29, 1998) (Instruction issued by N. Gorton).

1

in this case.  It is your function to determine the facts.  Although the law allows a trial judge in this court to comment on evidence, I deliberately do not do so and instead leave the fact finding entirely in your hands.  You are to be sole and exclusive judges of the facts.

Fortunately, you do not need to resolve every dispute of fact raised by the evidence.  In order to know which fact disputes are important, you need to know what rules of law to apply.

You must follow all of the rules as I explain them to you.  A single sentence or statement might not refer to an exception or qualification that I have stated elsewhere is these instructions, so you must consider all these instructions together, as a unit.

The lawyers were allowed to comment during the trial both on the evidence and on the rules of law in their openings and closings. But it what they have said about the evidence differs from your memory, let your collective memory control.  And if what they have said about the law seems to you to have a different meaning in any way from my instructions on the law, you must be guided only by my instructions.

Even if you disagree with one or more of the rules of law I tell you about or don t understand the reason for some of the rules, you are bound to follow them. This rule that you must follow the law as stated to you by the trial judge is a fundamental part of our system of government by law rather than by the individual views of the judge and jury who have the responsibility for deciding this case.  If I make any mistake in instructing you about the law, fair and evenhanded application of the law to this and other cases is nevertheless assured, because any mistake I make on the law can be corrected on appeal.

In contrast, your decision on disputed facts is final. That is, your findings of material disputed facts are not subject to appeal. You are the final and exclusive judges of the facts.

In your fact finding, of course, you are not to be swayed by bias, prejudice, sympathy or antagonism. It is your function to find the facts fairly and impartially, on the basis of the evidence. The evidence in this case consists of all exhibits received in evidence and all facts that have been admitted or stipulated. Statements, arguments and questions of counsel are not evidence in the case, unless made as an admission or stipulation of fact.

Any evidence ordered stricken by the court must also be disregarded. The evidence, of course, also includes all of the sworn testimony of the witnesses. Statements and arguments of counsel are not evidence in the case. Anything you may have seen or heard outside the courtroom is not evidence and you must disregard it entirely. Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions.

Also, from the facts proved, you may draw reasonable inferences about additional facts. An inference is a deduction or conclusion. An inference is an additional finding that your experience, reason, and common sense lead you to draw from facts that you find are proved by evidence.

Two more phrases often used in discussions about evidence received in a trial are "direct evidence" and "circumstantial evidence."

Testimony of a witness showing first-hand observation of a fact by that witness is direct evidence. For example, the testimony of an eyewitness just about what he or she

saw is direct evidence.  If the witness is permitted to go beyond stating what he or she

saw and is permitted to state a conclusion or inference, or opinion, that part of the answer

is not direct evidence.  Instead, it is one kind of circumstantial evidence.

Circumstantial evidence is proof of some facts -- including events and

circumstances -- on the basis of which the jury may infer the existence or nonexistence of

additional facts.

For example, let's suppose that you have been in this courtroom for a few hours

and you have not been able to look outside.  A man comes into this courtroom wearing a

wet raincoat and carrying a dripping umbrella.  You may draw the inference from those

circumstances that it is raining outside.  That is what we call circumstantial evidence as

opposed to direct evidence which would be the testimony of the man in the wet raincoat

taking the stand and telling you that it is raining outside.

Direct and circumstantial evidence have equal standing in law.  That is, with

respect to what weight shall be given to evidence before you, the law makes no

distinction between direct and circumstantial evidence.  Also, no greater degree of

certainty is required of circumstantial evidence than of direct evidence.  You are to

consider all the evidence in the case and give each item of evidence the weight you

believe it deserves.

At times during the trial you heard lawyers object to questions asked by the other

lawyer, and to answers by witnesses.  It is a proper function of lawyers to object.  In

objecting, a lawyer is requesting that I make a decision on a question of law.  Do not

draw from such objections, or from my rulings on the objections, any inferences about

facts.  The objections and my rulings related only to legal questions that I had to

determine. They should not influence your thinking about the facts.  When I sustained an objection to a question, the witness was not allowed to answer.  Do not attempt to guess what the answer might have been. And, if you heard an answer to the question before my ruling, you are to disregard it.  In your deliberations, do not consider or talk about any question to which I sustained an objection or any answer or other statement that I excluded, or struck, or told you not to consider.

## **CREDIBILITY**

An important part of your job as jurors will be deciding whether you believe what each witness had to say, and how important that testimony was.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  In making that decision, I suggest that you ask yourself a few questions:  Did the person seem honest? Did he or she have some reason not to tell the truth?  Did the witness say something to gain or lose in the outcome of this case?  Did he or she permit any bias or interest to color his or her testimony?  Did the witness seem to have a good memory? Did the witness have the opportunity and was the witness able to observe accurately the things he or she testified about.  Did he or she understand and directly respond to the questions?  Did the witness testimony differ from his or her earlier testimony or from testimony of other witnesses?  Was the witness' testimony different on cross and direct examination?  What was the witness' manner while testifying?  These are some, but of course not all, of the kinds of things that will help you decide how such weight to give to what each witness said.  In this case, you must take into consideration plaintiff's cognitive limitations when considering the credibility of his testimony.

The mere number of witnesses or exhibits or the length of the testimony has no bearing on what weight you give to evidence, or on whether you find that the burden of proof has been met. Weight does not mean the amount of the evidence. Weight means your judgment about the credibility and importance of the evidence.

You may consider inconsistencies or differences as you weigh evidence, but you do not have to discredit testimony merely because any inconsistencies or differences exist. Two or more witnesses may see or hear things differently. Innocent misrecollection, like failure of recollection, is a common experience. In weighing the effect of any inconsistency or difference, consider whether it concerns a matter of importance or an unimportant detail, and whether it results from innocent error or intentional falsehood.

On the other hand, you are not required to accept testimony, merely because it is uncontradicted. You may decide, because of the witness' bearing and demeanor, or because of inherent improbability, or for whatever reasons, that testimony is not worthy of belief. You may accept all of a witness' testimony or you may reject all of it, or you may accept part and reject another part.

## PRIOR INCONSISTENT STATEMENT

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with the witness's trial testimony. Evidence of a prior inconsistent statement is not to be considered as affirmative evidence in determining credibility. Rather, it was placed before you for the more limited purpose of helping you decide whether, or how much, if any, of that witness's trial testimony to believe.

In making this determination, you may consider whether the witness purposely made a false statement or made an innocent mistake; whether the inconsistency concerns an important fact or a small detail; whether the witness had an explanation for the inconsistency, and if so, whether it appeals to your common sense.

## EXPERT WITNESSES

During the trial, you heard the testimony of witnesses who answered questions put to them as persons having specialized skill or knowledge. Such a witness is often referred to as an "expert witness." The mere fact that a witness is allowed to testify as an "expert" (or, more precisely speaking, as one having specialized knowledge or experience) does not indicate that you must believe that testimony. Nor should you substitute the expert's testimony for your own reasonable judgment and common sense. The credibility of each witness is for you to determine.

The law allows a person having a specialized knowledge or experience to state an opinion in court about matters in that person's particular field. The fact that such a witness has expressed an opinion does not mean, however, that you must accept that opinion. It is for you to decide whether the opinions expressed were mere speculation or guesses, which you should disregard, or were instead based on sound reasons, judgment and facts.

If you find that part or all of the opinion testimony was based on stated or unstated assumptions, and you further find that those assumptions are contrary to what you find on the evidence before you, then you will disregard any part of the opinion testimony that was based on assumptions contrary to your fact findings.

Also, your decision whether or not to rely upon opinion testimony will depend on your judgment about whether the witness's training and experience is sufficient for him or her to give the opinion that you heard. It is up to you, bearing all these considerations in mind, to decide whether you believe and choose to rely on the testimony of a witness having specialized knowledge or experience. You may accept all of it, part of it, or none of it, as you find appropriate.

In order for an expert witness's opinion to have any probative value, it must be stated in terms of probabilities, not possibilities. An expert opinion, stated in terms of possibilities, does not satisfy the plaintiff's burden of proof, namely, to establish every element of their claims by a preponderance of the evidence.

## **BURDEN OF PROOF**

The plaintiff has the burden of proving every disputed element of a claim by a preponderance of the evidence. If you conclude that the plaintiff has failed to establish a claim by a preponderance of the evidence, you must decide against it on that issue.

To "establish by a preponderance of the evidence" means to prove that something is more likely true than not true. It means that such evidence, when considered and compared with that opposed to it, has more convincing force and produces in your mind the belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in this case, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who

may have produced them. The burden of proof has not been carried if, after considering all the evidence, you find that you must speculate, guess, or imagine that one or more of the necessary facts is true.

Although, on each issue, the burden is on the plaintiff to prove its contention on that issue by a preponderance of the evidence in the case, this rule does not, of course, require proof to an absolute certainty. Nor is proof beyond a reasonable doubt or by clear and convincing evidence required. As to all of the issues in this case, the standard for defining the burden of proof is the "preponderance of the evidence" standard.

## PART II

In this case, I will submit specific questions to you in a verdict form. I will summarize the claims and explain to you how to apply the law to each of those claims, so that you can answer the specific questions. SC has made nine claims for your consideration: (1) sexual harassment under Title IX; (2) sexual harassment under M.G.L. ch. 214 §1 (C); (3) sexual harassment under M.G.L. ch. 76 § 5; (4) civil rights violations under 42 U.S.C. § 1983; (5) disability discrimination under Title II; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) negligent failure to supervise; and (9) loss of enjoyment of life. SC's legal guardians, Ann Marie and Nicholas Porto, have also made claims in this case. Ann Marie Porto has made two claims for your consideration: (1) negligent failure to supervise and (2) loss of consortium. Nicholas Porto has made one claim for loss of consortium.

## SEXUAL HARASSMENT

A school can be liable for damages for student on-student sexual harassment that in effect deprives an individual of educational opportunities. In particular, student-on-

student sexual harassment may constitute discrimination on the basis of sex that is prohibited by Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 (a)); M.G.L. c. 214 § 1 (C); and M.G.L. c. 76 § 5.

## TITLE IX

The Town of Tewksbury ("Tewksbury") is liable for SC's claim for damages for sexual harassment under Title IX, if SC proves, by a preponderance of the evidence, that:

Tewksbury had (1) actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived him of access to the educational benefits or opportunities provided by the school.[2]

### INSTRUCTION NO. 1

Sexual harassment includes sexual advances, requests for sexual favors and/or other verbal or physical conduct of a sexual nature.[3]

### INSTRUCTION NO. 2

A school has "actual knowledge" of student-on-student sexual harassment if it knows the underlying facts indicating sufficiently substantial danger to students, and was therefore aware of the danger.  The school only needs to possess enough knowledge that it could have responded with remedial measures to address the kind of harassment upon which plaintiff's claim is based.

Actual knowledge can also be based on notice of a different type of harassment than that claimed by the plaintiff, as long as it provides an appropriate school official

---

[2] See <u>Franklin v. Gwinnett Cty. Pub. Schs.</u>, 503 U.S. 60, 75 (1992); <u>Davis</u>, 526 U.S. at 646-50; <u>Murrell v. School District No. 1</u>, 186 F.3d 1238, 1246 (10 Cir. 1999).

[3] See <u>Riske v. King Soopers</u>, Civil Action No. 00-RB01959 (OES) (D. Colo July 15, 2002) (instruction issued by J. Blackburn) (MODIFIED).

with actual knowledge of a substantial risk or likelihood of harassment in a particular

program.  The school may also have actual notice of harassment based on offensive

sexual behavior that might not alone rise to the level of harassment for which an

institution can be liable in damages.[4]

INSTRUCTION NO. 3

A school has actual knowledge of harassment when the knowledge is obtained by

an "appropriate official"; that is, a school official who has the authority to take corrective

action.  School officials with such authority are not restricted to the Principal or other

high-ranking officers of the educational institution.  Whether a school official has

sufficient authority to take corrective action depends on the facts of the particular case.

Tewksbury has a range of officials, from the specialized staff and counselors to

the teachers, principals and superintendent.  Any school official you find has the "control

necessary to take corrective action to end the discrimination" may be considered an

appropriate official whose knowledge of student-on-student sexual harassment is

sufficient to find that defendant had "actual knowledge" of the harassment.[5]

INSTRUCTION NO. 4

---

[4] See FEDERAL JURY PRACTICE AND INSTRUCTIONS-CIVIL, Vol. 3C, § 177.36 (MODIFIED); Davis, 526 U.S. at 643; Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998); Morse v. Board of Regents of the Univ. of Colo., 154 F.3d 124, 1128-29 (10th Cir. 1998); Murrell, 186 F.3d at 1247-48; Doe A. v. Green, 298 F. Supp. 2d 1025, 1033-34 (D. Nev. 2004); Crandell, 87 F.Supp. 2d at 320; Wills v. Brown Univ. 184 F.3d 20, 26-27 (1st Cir. 1999); Doe v. Sch. Admin. Dist. No. 19, 66 F.Supp 2d 57, 63 (D. Me. 1999); Massey v. Akron Town Bd. Of Educ., 82 F.Supp.2d 735, 745 (N.D. Ohio 2000); Ericson v. Syracuse Univ., 35 F.Supp. 2d 326, 328 (S.D.N.Y. 1999); Morrison v. Northernn Essex Comm. Coll., 780 N.E. 2d 132, 144 (Mass. App. 2002); Johnson v. Galen Health Inst., 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003); Folkes v. NYCOM, 214 F.Supp. 2d 273 (E.D.N.Y. 2002); Hart v. Paint Valley Local Sch. Dist., 2002 WL 31951264 *6.7 (S.D. Ohio 2002).

[5] Davis vs. Monroe Bd. Of Edu. 526 U.S. 629, 643 (1999); Murrell, 186 F.3d at 1247-48; Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998); Morse v. Bd. Of Regents of the Univ. of Colo., 154 F.3d 124, 1128-29 (10th Cir. 1998).

"Deliberate indifference" means that a school's response to notice of acts of student-on-student harassment or its lack of response was clearly unreasonable in light of all the known circumstances.  Under this standard, a school is held responsible for its failure to take reasonable action in response to known sexual harassment.  The school need not actually cause the student-on-student harassment.

School officials are deliberately indifferent to sexual harassment and liable for damages if they do not take action that is reasonably designed to end the harassment. School officials also act with deliberate indifference if they permit a hostile environment or do nothing to address a known hostile environment or to prevent the harassment of the plaintiffs or victims other than the plaintiffs.  When a school knows that any remedial action is inadequate or ineffective, it is deliberately indifferent if it does not take reasonable action in light of those circumstances to eliminate the harassment.

The existence of sexual harassment policies is not, by itself, sufficient to avoid a finding of deliberate indifference.  The school must make meaningful efforts to monitor the conduct of individuals covered by that policy, must take good faith steps to enforce the sexual harassment policy and to correct any sexually harassing behavior, and must train its officials and employees regarding their rights and responsibilities under the anti-harassment policy.

A school can act with deliberate indifference both before and after the alleged sexual harassment that is the basis of plaintiff's claim.  In other words, a school may act with deliberate indifference by failing to take action to remedy a hostile environment that it knew existed before the incident that forms the basis of the plaintiff's complaint.  It can

also act with deliberate indifference by failing to take action in response to that specific

incident after it learns about it or by continuing to permit the hostile environment.[6]

INSTRUCTION NO. 5

A School is liable for student-on-student sexual harassment that is severe,

pervasive and objectively offensive. This determination is not a mathematically precise

test. Instead, severe, pervasive and objectively offensive harassment is determined based

upon the specific facts and circumstances and requires consideration of the surrounding

circumstances, expectations and relationships.

"Severe, pervasive and objectively offensive" sexual harassment may result from

a hostile educational environment or specific acts of harassment. A single, specific act of

sexual assault or sexual harassment can constitute severe and objectively offensive

student-on-student harassment for which an institution can be liable under Title IX.[7]

INSTRUCTION NO. 6

To establish severe and pervasive harassment by showing a hostile or abusive

environment, a plaintiff must prove by a preponderance of the evidence that the

environment was permeated by harassment, discriminatory intimidation, ridicule, or

insult that it effectively deprived plaintiff of equal access to the educational opportunities

or benefits provided by the Tewksbury.

In determining whether an environment is "hostile" or "abusive," you must look at all

the circumstances including:

---

[6] See Morse, 154 F.3d at 1128; Bryant, 334 F.3d at 928, 933; Gebser, 524 U.S. at 290; Murrell, 186 F.3d at 1248; Ericson, 35 F. Supp. 2d at 328; Kolstad v. American Dental Assoc., 527 U.S. 526, 546 (1999); Riske v. King Soopers, Civil Action No. 00-RB-1959 (D. Colo. July 15, 2002) (Instruction given by J. Blackburn) (MODIFIED); Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376, 385 (2d Cir. 2001).

[7] Davis, 526 U.S. at 650-53; Hayut v. State Univ. of New York, 352 F.3d 733 (2nd Cir. 2003); Vance v. Spencer Co. Sch. Dist., 231 F.3d 253, 259 (6th Cir. 2000).

1. The total physical environment;

2. The degree and type of obscenity that filled the environment before and after the plaintiff arrived;

3. The frequency of the offensive conduct;

4. The nature of the unwelcome sexual acts or words;

5. The severity of the conduct;

6. Whether the conduct was physically threatening or humiliating;

7. Whether it was merely an offensive utterance; and

8. Whether it unreasonably interfered with plaintiff's equal access to the educational opportunities or benefits provided by Tewksbury.

The effect on plaintiff's mental and emotional well being is also relevant to determining whether Plaintiff actually found the environment to be hostile or abusive; but while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

In determining whether conduct was hostile, you should consider the following:

1. Whether the conduct was verbal, physical or both;

2. Whether the conduct occurred one time or repeatedly;

3. Whether the conduct was plainly offensive;

4. The ages of the alleged harassers and plaintiffs; and

5. The number of individuals involved.[8]

INSTRUCTION NO. 7

Consent or welcomeness is an improper consideration to be made in sexual

harassment cases involving sexual discrimination of minor school children and children

---

[8] See FEDERAL JURY PRACTICE AND INSTRUCTIONS-CIVIL, Vol. 3C, § 177.33 (MODIFIED); Brown v. Hot, Sexy and Safer Productions, Inc., 68 F.3d 525, 540 (lst Cir. 1995).

with cognitive disabilities. This is because a minor and/or disabled child cannot be said to appreciate the full risk and consequences of sexual conduct and may not even understand that they are being harassed. Thus, even if you find that SC participated in sexual conduct, you must find that he was nevertheless subject to sexual harassment.[9]

INSTRUCTION NO. 8

"Children are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment." This is particularly true for children with cognitive disabilities and speech and language disabilities.[10]

INSTRUCTION NO. 9

Sexual harassment deprives a plaintiff of access to educational opportunities when it has a "concrete, negative effect" on the plaintiff's education. For example, harassment that leads to dropping grades, withdrawal from classes or withdrawal from the school are ways that harassment that has a negative effect on education.[11]

The inability to fully access an education is inherent in a school environment permeated by severe and pervasive sexual harassment. "A non-discriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing [his] full intellectual potential and receiving the most from the academic program."[12]

INSTRUCTION NO. 10

---

[9] Mary M., et al v. North Lawrence Community School Corp., 131 F.3d 1220 (7th Cir. 1997)

[10] Gabrielle M. v. Park Forest-Chicago Heights, et al., 315 F.3d 817 (7th Cir. 2003).

[11] See Davis, 526 U.S. at 645, 650-52, 654; Murrell, 186 F.3d at 1248-49; Vance, 231 F.3d at 259; Gabriel M. v. Park Forest-Chicago Heights, Illinois Sch. Dist. 163, 315 F.3d 817, 823, (7th Cir. 2003).

[12] Davis, 74 F.3d at 1193 (11th Cir. 1996).

If you find that plaintiff has established his claim for sexual harassment in violation of Title IX, then you must determine an amount that is fair compensation for the plaintiff's damages. You may award compensatory damages for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation -- no more and no less. You may award damages for the loss of access to education that the plaintiff suffered as a result of any sexual harassment and assaults that you find that he suffered.

You may also award damages for any pain, suffering or mental anguish that either one or both of the plaintiffs experienced as a consequence of the defendant's conduct. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

You may also award punitive damages for a violation of Title IX. Punitive damages are appropriate where the defendant's conduct warrants condemnation and deterrence. If you find that the Tewksbury should he punished in order to deter it from continuing to act in a discriminatory manner, you may award punitive damages. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate SC for the harm he has suffered, the purpose of punitive damages is to punish Tewksbury for conduct that is outrageous because of its reckless indifference to SC.

Reckless indifference exists when the actor realizes, or from facts that he knows, should realize, that there is a strong possibility that harm may result, even though he hopes or even expects that his conduct will prove harmless.

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason, and you may consider the following:

1. The character and nature of Tewksbury's conduct;

2. Tewksbury's wealth, in order to determine what amount of money is needed to punish Tewksbury's conduct and to deter any future acts of discrimination;

3. The actual harm suffered by SC; and

4. The magnitude of any potential harm to other victims if similar future behavior is not deterred.[13]

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation or guess work. On the other hand, the law does not require that plaintiff demonstrate his damages with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.[14]


## M.G.L. ch. 214 §1(C)

Tewksbury is liable for SC's claim for damages for student-on-student sexual harassment under M.G.L. ch. 214 §1(c) if plaintiff proves, by a preponderance of the

---

[13] See, Comment b to Restatement (Second) of Torts, § 908; Dartt v. Browning-Ferris Indus. Inc., 427 Mass. 1, 16-17 (1998); Bain v. Town of Springfield, 424 Mass. 758, 767-68 (1997); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); Contardo v. Merrill Lynch, Pierce, Fenner and Smith, 753 F.Supp 406 (D.Mass. 1990); McNight v. G.M. 49 FEP Cases 14 (D. Wisc. 1989); M.G.L. c. 151B, § 9; Rowlett v. Anheuser-Busch, 832 F.2d 194, 206-207.
[14] See FEDERAL JURY PRACTICE AND INSTRUCTIONS-CIVIL, Vol. 3C, § 177.70 (MODIFIED).

evidence, that Tewksbury (1) either knew or should have known of (2) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived him of access to the educational benefits or opportunities provided by the school.[15]

### INSTRUCTION NO. 11

The term "sexual harassment" is defined to include any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."[16]

### INSTRUCTION NO. 12

In determining whether the defendant's conduct was severe or pervasive, you should consider the totality of the circumstances including the frequency of the conduct as well as its severity and offensiveness.[17]  The more severe and offensive the conduct, the less frequent it has to be to create a hostile work environment.  "A single, unusually severe incident of harassment may be sufficient to constitute a violation.  This is particularly true when the harassment is physical.[18]  Likewise, less severe and offensive conduct can constitute a hostile environment if it is repetitious.  The type of conduct that

---

[15]College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-167 (1987); Comeau v. Idea Lube, Inc., 22 MDLR 5, 7 (2000); Messina v. Araserve, Inc., 906 F.Supp. 34, 38 (1995); Battenfield v. Harvad University, 1993 WL 818920 at *4 (Mass. Super. Ct. Aug. 31, 1993); White v. N.H. Dep't of Corrections, 221 F.3d 254, 261 (1st Cir. 2000).

[16] Joleen Morrison & another vs. Northern Essex Community College, 56 Mass.App.Ct. 784 (2002); G.L. c. 151C, § 2(g).

[17] Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  See also, Dept. of Ed., Office for Civil Rights, Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students or Third Parties 62 Fed. Reg. 12034 (1997).

[18] Barrett v. Omaha National Bank, 584, F. Supp. 22, 35 Feb Cases 585 (D. Neb. 1983), aff'd, 726 F.2d 424, 33 EPD ¶ 34, 132 (8th Cir. 1984) (One incident constituted actionable sexual harassment.); Equal Employment Opportunity Commission Policy Guidance on Current Issues of Sexual Harassment (1990).

may give rise to a hostile work environment includes, but is not limited to, unwelcome physical touching, sexual jokes, derogatory gender references or sexual propositions. When examining whether the conduct was hostile, intimidating, or humiliating, it must be viewed in the light of a reasonable person in the plaintiff's position.[19]  In this case, that is, a child with cognitive limitations.

## INSTRUCTION NO. 13

Consent or welcomeness is an improper consideration to be made in sexual harassment cases involving minor school children and children with cognitive disabilities.  This is because a minor and/or disabled child cannot be said to appreciate the full risk and consequences of sexual conduct and may not even understand that they are being harassed.  There may also be limits on a minor or disabled child's ability to adequately communicate.  Thus, even if you find that SC participated in sexual conduct, you must find that he was nevertheless subject to sexual harassment.[20]

## INSTRUCTION NO. 14

"Children are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment."[21]  This is particularly true for children with cognitive limitations and speech and language disabilities.

## INSTRUCTION NO. 15

Sexual harassment deprives a plaintiff of access to educational opportunities when it has a "concrete, negative effect" on the plaintiff's education.  For example, harassment

---

[19] College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-167 (1987);  White v. N.H. Dep't of Corrections, 221 F.3d 254, 261 (1st Cir. 2000); Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673. 677-79 (1993); Gnerre v. MCAD, 402 Mass. 502, 507-508 (1988); Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1036 n.28, 1038-39 nn. 34-35 (D.Mass. 1995); See also King v. Board of Regents of the Univ. of Wis. Sys., 898 F.2d 533, 537 (7th Cit. 1990) (single act can be sufficient for finding of sexual harassment).
[20]  Mary M., et al v. North Lawrence Community School Corp., 131 F.3d 1220 (7th Cir. 1997)
[21]  Gabrielle M. v. Park Forest-Chicago Heights, et al., 315 F.3d 817 (7th Cir. 2003).

that leads to dropping grades, withdrawal from classes or withdrawal from the school is harassment that has a negative effect on education.[22]

The inability to fully access an education is inherent in a school environment permeated by severe and pervasive sexual harassment. "A non-discriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing [his] full intellectual potential and receiving the most from the academic program."[23]

INSTRUCTION NO. 16

If you find that plaintiff has established his claim for sexual harassment in violation of G.L. 214 1(C), then you must determine an amount that is fair compensation for the plaintiff's damages. You may award compensatory damages only for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation -- no more and no less. You may award damages for the loss of access to education that the plaintiff suffered as a result of any sexual harassment and assaults that you find that he suffered.

You may also award damages for any pain, suffering or mental anguish that SC experienced as a consequence of the defendant's conduct. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements

---

[22] See Davis, 526 U.S. at 645, 650-52, 654; Murrell, 186 F.3d at 1248-49; Vance, 231 F.3d at 259; Gabriel M. v. Park Forest-Chicago Heights, Illinois Sch. Dist. 163, 315 F.3d 817, 823, (7th Cir. 2003).
[23] Davis, 74 F.3d at 1193 (11th Cir. 1996).

of damage.  Any award you make should be fair in light of the evidence presented at the trial.

You may also award punitive damages.  Punitive damages are appropriate where the defendant's conduct warrants condemnation and deterrence.  If you find that the Tewksbury should he punished in order to deter it from continuing to act in a discriminatory manner, you may award punitive damages.  Punitive damages are different from compensatory damages.  Unlike compensatory damages, which compensate SC for the harm he has suffered, the purpose of punitive damages is to punish Tewksbury for conduct that is outrageous because of its reckless indifference to SC.

Reckless indifference exists when the actor realizes, or from facts that he knows, should realize, that there is a strong possibility that harm may result, even though he hopes or even expects that his conduct will prove harmless.

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason, and you may consider the following:

1. The character and nature of Tewksbury's conduct;

2. Tewksbury's wealth, in order to determine what amount of money is needed to punish Tewksbury's conduct and to deter any future acts of discrimination;

3. The actual harm suffered by SC; and

4 The magnitude of any potential harm to other victims if similar future behavior is not deterred.[24]

---

[24] See, Comment b to Restatement (Second) of Torts, § 908; Dartt v. Browning-Ferris Indus. Inc., 427 Mass. 1, 16-17 (1998); Bain v. Town of Springfield, 424 Mass. 758, 767-68 (1997); Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194 (1st Cir. 1987); Contardo v. Merrill Lynch, Pierce, Fenner and Smith, 753 F.Supp 406 (D.Mass. 1990); McNight v. G.M. 49 FEP Cases 14 (D. Wisc. 1989); M.G.L. c. 151B, § 9; Rowlett v. Anheuser-Busch, 832 F.2d 194, 206-207.

In determining the amount of any damages that you decide to award, you should be guided by common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation or guess work.  On the other hand, the law does not require that plaintiff demonstrate his damages with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.[25]

## **M.G.L. ch. 76 §5**

M.G.L. c.76, §5 provides, in pertinent part:

> "No person shall be excluded from or discriminated against . . . in obtaining the advantages, privileges and courses of study of . . . public school on account of . . . sex . . . ."

Sexual harassment is discrimination on account of sex.  Tewksbury is liable for SC's claim for damages for student-on-student sexual harassment under M.G.L. ch. 76 §5 if plaintiff proves, by a preponderance of the evidence, that Tewksbury (1) either knew or should have known of (2) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived him of access to the educational benefits or opportunities provided by the school.[26]

INSTRUCTION NO. 17

The term "sexual harassment" is defined to include any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with

---

[25] See FEDERAL JURY PRACTICE AND INSTRUCTIONS-CIVIL, Vol. 3C, § 177.70 (MODIFIED).

[26] College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-167 (1987);  White v. N.H. Dep't of Corrections, 221 F.3d 254, 261 (1st Cir. 2000).

an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."[27]

### INSTRUCTION NO. 18

In determining whether the defendant's conduct was severe or pervasive, you should consider the totality of the circumstances including the frequency of the conduct as well as its severity and offensiveness.[28]  The more severe and offensive the conduct, the less frequent it has to be to create a hostile work environment.  "A single, unusually severe incident of harassment may be sufficient to constitute a violation.  This is particularly true when the harassment is physical.[29]  Likewise, less severe and offensive conduct can constitute a hostile environment if it is repetitious.  The type of conduct that may give rise to a hostile work environment includes, but is not limited to, unwelcome physical touching, sexual jokes, derogatory gender references or sexual propositions.  When examining whether the conduct was hostile, intimidating, or humiliating, it must be viewed in the light of a reasonable person in the plaintiff's position.[30]  In this case, that is, a child with cognitive limitations.

### INSTRUCTION NO. 19

---

[27] Joleen Morrison & another vs. Northern Essex Community College, 56 Mass.App.Ct. 784 (2002); G.L. c. 151C, § 2(g).

[28] Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  See also, Dept. of Ed., Office for Civil Rights, Sexual Harassment Guidance:  Harassment of Students by School Employees, Other Students or Third Parties 62 Fed. Reg. 12034 (1997).

[29] Barrett v. Omaha National Bank, 584, F. Supp. 22, 35 Feb Cases 585 (D. Neb. 1983), aff'd, 726 F.2d 424, 33 EPD ¶ 34, 132 (8th Cir. 1984) (One incident constituted actionable sexual harassment.); Equal Employment Opportunity Commission Policy Guidance on Current Issues of Sexual Harassment (1990).

[30] College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-167 (1987);  White v. N.H. Dep't of Corrections, 221 F.3d 254, 261 (1st Cir. 2000); Ramsdell v. Western Mass. Bus Lines, Inc., 415 Mass. 673. 677-79 (1993); Gnerre v. MCAD. 402 Mass. 502, 507-508 (1988); Ruffino v. State St. Bank & Trust Co., 908 F.Supp. 1019, 1036 n.28, 1038-39 nn. 34-35 (D.Mass. 1995); See also King v. Board of Regents of the Univ. of Wis. Sys., 898 F.2d 533, 537 (7th Cit. 1990) (single act can be sufficient for finding of sexual harassment).

Consent or welcomeness is an improper consideration to be made in sexual harassment cases involving minor school children and children with cognitive disabilities. This is because a minor and/or disabled child cannot be said to appreciate the full risk and consequences of sexual conduct and may not even understand that they are being harassed. There may also be limits on a minor or disabled child's ability to adequately communicate. Thus, even if you find that SC participated in sexual conduct, you must find that he was nevertheless subject to sexual harassment.[31]

INSTRUCTION NO. 20

"Children are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment."[32] This is particularly true for children with cognitive limitations and speech and language disabilities.

INSTRUCTION NO. 21

Sexual harassment deprives a plaintiff of access to educational opportunities when it has a "concrete, negative effect" on the plaintiff's education. For example, harassment that leads to dropping grades, withdrawal from classes or withdrawal from the school is harassment that has a negative effect on education.[33]

The inability to fully access an education is inherent in a school environment permeated by severe and pervasive sexual harassment. "A non-discriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that student receives. A sexually abusive environment

---

[31] Mary M., et al v. North Lawrence Community School Corp., 131 F.3d 1220 (7th Cir. 1997)
[32] Gabrielle M. v. Park Forest-Chicago Heights, et al., 315 F.3d 817 (7th Cir. 2003).
[33] See Davis, 526 U.S. at 645, 650-52, 654; Murrell, 186 F.3d at 1248-49; Vance, 231 F.3d at 259; Gabriel M. v. Park Forest-Chicago Heights, Illinois Sch. Dist. 163, 315 F.3d 817, 823, (7th Cir. 2003).

inhibits, if not prevents, the harassed student from developing [his] full intellectual potential and receiving the most from the academic program."[34]

### INSTRUCTION NO. 22

Tewksbury has an obligation to:  Establish and/or utilize effective policies and procedures and/or to implement monitoring and evaluation practices to insure that sexual harassment is eliminated; to prevent harassment and discrimination and to respond promptly to such discrimination and harassment when they had knowledge of its occurrence; and to provide and/or utilize adequate in-service training regarding the prevention of discrimination and harassment and the appropriate methods for responding to such discrimination and harassment in a school setting.  Failure to fulfill these obligations constitutes evidence of sexual harassment.[35]

### INSTRUCTION NO. 23

If you find that plaintiff has established his claim for sexual harassment in violation of G.L. ch. 76 § 5, then you must determine an amount that is fair compensation for the plaintiff's damages.  You may award compensatory damages only for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation -- no more and no less. You may award damages for the loss of access to education that the plaintiff suffered as a result of any sexual harassment and assaults that you find that he suffered.

---

[34] Davis, 74 F.3d at 1193 (11th Cir. 1996).
[35] 603 C.M.R. 26.00 (2); 603 C.M.R. 26.07 (3) (The subsections of the regulations clearly identify the specific steps public schools are required to take to address discrimination and affirmatively obligate schools to do so under subsections entitled "Purpose", "Active Efforts" and "Complaint and Notification Procedure."  The use of the word "shall" makes implementation of the regulations mandatory.  Hashimi v. Kalil, 388 Mass. 607, 609 (1983).

You may also award damages for any pain, suffering or mental anguish that plaintiff experienced as a consequence of the defendant's conduct.  No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award you make should be fair in light of the evidence presented at the trial.

## **42. U.S.C. § 1983**

This case involves a federal civil rights law, 42 U.S.C. § 1983, which provides a remedy for individuals who have been deprived of constitutional or statutory rights by a person or entity acting under color of state law.

This civil rights statute states in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." [36]

In order to prevail on a Section 1983 claim, the plaintiff must prove by a preponderance of evidence each of the following elements:

1. that the defendant was acting under color of law; and

2. that the defendant's conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States[37]

INSTRUCTION NO. 24

---

[36] 42 U.S.C. §1983.  See also, 526 U.S. 286, 290 (1999); Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).

[37] Guiterrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989).

SC alleges that Tewksbury was acting under color of law when it deprived him of the legal right to be free from sexual harassment.  In this case, Tewksbury is a municipality subject to suit brought under Section 1983.[38]  The Town of Tewksbury -- the employer of the teachers, principals and other school personnel responsible for keeping SC safe at school -- is the defendant.

## INSTRUCTION NO. 25

The first element of the plaintiff's claim is that the defendant acted under color of state law.  In this context, the term "state law" means any statute, ordinance, regulation, or custom.  The word "state" means a state or any political subdivision, such as a county or town, and also means any agency of a state, county or town.  Tewksbury acted under color of law if you find that it was clothed with the authority of the state or exercised power possessed by virtue of law.  Action under color of law includes even the misuse of power possessed by virtue of state law and made possible only because the defendant was clothed with the authority of state law.  Thus, even if you find that the defendant acted in violation of state law, you may find that it acted under color of state law.[39]

## INSTRUCTION NO. 26

Under the second element, SC must prove that Tewksbury deprived him of rights secured and protected by the Constitution and laws of the United States.  To do so, plaintiff must prove by a preponderance of the evidence that Tewksbury's actions were done in accordance with a custom or policy and that those actions caused the deprivation

---

[38] <u>Monell v. City of New York Dep't of Soc. Servs</u>, 436 U.S. 658 (1978).
[39] <u>Adickes v. S.H. Kress & Co</u>., 398 U.S. 144, 152 (1970); <u>Monroe v. Pape</u>, 365 U.S. 167, 184 (1961); <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).  See <u>Zambrana-Marrero v. Suarez-Cruz</u>, 172 F.3d 122, 125-26 (1st Cir. 1999).

of the plaintiff's rights.  Put another way, the plaintiff must demonstrate that, through its

deliberate conduct, the municipality was the moving force behind the injury alleged.[40]

Thus, the plaintiff must prove that Tewksbury caused the constitutional violation

by showing the existence of a policy or custom and by showing a causal link between that

policy or custom and the constitutional violation.[41]

INSTRUCTION NO. 27

The phrase "custom or usage" appearing in Section 1983 means practices of

Tewksbury officials or employees that are permanent and well settled, that is, the way

things are done.[42]

In order to find that Tewksbury is liable based upon custom or usage, you must

find by a preponderance of the evidence that:

1.  the practice of Tewksbury employees was so well settled and widespread that the
    policymaking officials of the town either knew or should have known of it, but
    did nothing to end the practice and thereby implicitly authorized, approved of, or
    acquiesced to the practice; and

2.  the custom or practice must have been the cause of and the moving force behind
    the deprivation of the plaintiff's civil rights.[43]

INSTRUCTION NO. 28

In order to find that Tewksbury is liable to the plaintiff, you must find that the

Town had a policy that was sanctioned, or a custom that was condoned, by a Town

---

[40] Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382 (1997); Bordanaro v.
McLeod, 871 F.2d 1151, 1155 (1st Cir.), cert. denied sub nom. Everett v. Bordanaro, 493 U.S. 820 (1989);
Kibbe v Town of Springfield, 777 F.2d 801, 810 (1st Cir. 1985), cert. denied as improvidently granted, 480
U.S. 257 (1987).  See also Fletcher v. Town of Clinton 196 F.3d 41, 55 (1st Cir. 1999); Martineau v.
Kurland, 36 F.Supp.2d 39, 42 (D.Mass. 1999); Tedeschi v. Reardon, 5 F.Supp.2d 40, 47 (D.Mass. 1998).
[41] City of Canton, Ohio v. Harris, 489 U.S. 378 (1989); Santiago vs. Fenton, 891 F.2d 373, 381 (1989).  See
also Town of Fletcher v Clinton, 196 F.3d 41, 55 (1st Cir. 1999).
[42] Monell v. City of New York Dep't of Soc. Servs, 436 U.S. 658 (1978); Roma Constr. Co. v. Russo, 96
F.3d 566, 575 (1st Cir. 1996); Kibbe supra; Tedeschi, supra.
[43] Roma Constr Co., 96 F.3d at 575; Bordanaro v. McLeod, 871 F.2d I 151, 1157 (1st Cir.), cert. denied sub
nom. Everett v. Bordanaro, 493 U.S. 820 (1989); Kibbe, 777 F.2d at 810.

official or officials who were the final policymaking authority for the Town in the particular area of the Town's business that led to the actions the plaintiff alleges deprived him of his secured rights.[44]

## INSTRUCTION NO. 29

In this case, SC alleges that Tewksbury had two policies that deprived SC of his legal rights.  First, Tewksbury had an ineffective sexual harassment policy for its students.  Second, Tewksbury failed to adequately train its employees in the area of preventing sexual harassment.

In order to find Tewksbury responsible based upon its failure to train school personnel, you must find that the failure to train was a deliberate or conscious choice by Tewksbury; that is, it was a policy of the Town.[45]

In order for you to find that Tewksbury's failure to train school personnel was a deliberate or conscious choice, that is, a policy, you must find that the need for sexual harassment training in order to avoid the conduct that caused the plaintiff's injury was obvious, and that the failure to provide such training was so likely to result in the conduct that caused the injury that Tewksbury policymakers were deliberately indifferent to the need for training.[46]

## INSTRUCTION NO. 30

You may find that Tewksbury failed to train its employees adequately, even if you find that the conduct of school personnel that demonstrated failure of training occurred in

---

[44] <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123-27 (1988)
[45] <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989); <u>Town of Fletcher v Clinton</u>, 196 F.3d 41, 55 (1st Cir. 1999).
[46] <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989).

a single event, if you find evidence of the policy other than the event and if you find concerted action by more than one employee.[47]

If you find that the Tewksbury's actions were taken pursuant to a decision by someone who had policymaking authority for the Tewksbury, then you may find that the actions were taken pursuant to a policy of the Town even though the decision was a single and discrete event.[48]  In order to find the defendant liable, however, you also must find that the decision was made with deliberate indifference to a known or obvious risk that a violation of a particular constitutional or statutory right would follow the decision, and that there was a direct causal link to the violation alleged in this case.[49]

### INSTRUCTION NO. 31

You may not consider the good faith of the school personnel involved when you consider the liability of the governmental entity such as Tewksbury.[50]

### INSTRUCTION NO. 32

You may also award compensatory damages for any pain, suffering or mental anguish that SC experienced as a consequence of the defendant's conduct.  No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award you make should be fair in light of the evidence presented at the trial.

### INSTRUCTION NO. 33

---

[47] Bordanaro v. McLeod, 871 F.2d I 151, 1157 (1st Cir.), cert. denied sub nom. Everett v. Bordanaro, 493 U.S. 820 (1989)

[48] Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986).

[49] Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382 (1997).

[50] Owen v. City of Independence, 445 U.S. 622, 638 (1980); Walker v. Waltham Hous. Auth., 44 F.3d 1042, 1047 (1st Cir. 1995).

If you find that plaintiff has met his burden under Section 1983, then you must determine an amount that is fair compensation for the plaintiff's damages. You may award compensatory damages only for injuries that plaintiff proves were caused by defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation -- no more and no less. You may award damages for any pain, suffering or mental anguish that plaintiff experienced as a consequence of the defendant's conduct. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

INSTRUCTION NO. 34

If the plaintiff was deprived by the defendant of a right secured or protected by the Constitution or laws of the United States, and if the defendant was acting under color of law when the deprivation occurred, and if you also determine that the plaintiff did not sustain actual damages, then you may return a verdict in the nominal amount of one dollar in order to recognize that the deprivation did occur.[51]

**TITLE II**

INSTRUCTION NO. 35

SC claims that he was denied access to policies and procedures regarding protections against sexual harassment and sexual abuse that non-disabled students were afforded in violation of Title II of the American With Disabilities Act ("ADA"). The

---

[51] <u>Davet v. Maccarone</u>, 973 F.2d 22, 27 (1st Cir. 1992).

ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[52]

INSTRUCTION NO. 36

Disability means:

A mental or physical impairment that substantially limits one or more of an individual's major life activities;

A record of having such an impairment; or

Being regarded as having such an impairment.[53]

INSTRUCTION NO. 37

Whether a person has a disability under the ADA is an individualized inquiry.[54] The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.[55] The determination of whether an individual is substantially limited in a major life activity must be made on a case-by-case basis.[56]

INSTRUCTION NO. 38

The physical or mental impairment must limit one or more of the "major life activities" of the individual in order to be considered a "disability."[57] The term life activities includes functions such as caring for one's self, speaking and learning.[58]

INSTRUCTION NO. 39

---

[52] 42 U.S.C. § 12132.
[53] 42 U.S.C.A. § 12102(2).
[54] Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999).
[55] Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).
[56] Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566 (1999).
[57] Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999)
[58] 29 C.F.R. § 1614.203(a)(3); 28 C.F.R. § 41.3(b)(2).

In determining whether an individual with an impairment is "disabled" within the meaning of the ADA, it is necessary to examine whether the limitations an individual with an impairment actually faces are in fact substantially limiting:  a person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits a major life activity, whereas an individual who is substantially limited in a major life activity notwithstanding the use of a corrective device has a disability within the meaning of the ADA.[59]

INSTRUCTION NO. 40

In a claim for disparate treatment, SC must establish that (1) he is disabled and (2) that he was treated differently because of his disability.  Disparate treatment can be shown by direct evidence or by inferential proof.  Direct evidence usually consists of slurs or disability-based comments.[60]  Such direct evidence will, without more, ordinarily be sufficient to show that an adverse condition or limitation on an opportunity was imposed because of the plaintiff's disability.[61]  Inferential proof of discrimination may be found where there is suspicious timing, ambiguous statements or other behavior, or statistical or anecdotal evidence.[62]

**NEGLIGENCE**

INSTRUCTION NO. 41

SC and his legal guardian Ann Marie Porto seek damages for Tewksbury's negligent failure to supervise SC and to provide SC with a safe environment free from

---

[59] 42 U.S.C.A. § 12101(2).
[60] Lewis & Norman, Litigating Civil Rights and Employment Discrimination Cases § 15.23.
[61] Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989).
[62] Troupe v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994).

sexual harassment, physical, verbal and emotional abuse and discrimination.  In addition, SC seeks damages for negligent infliction of emotional distress which Tewksbury allowed by repeated, foreseeable incidents of sexual harassment, abuse and discrimination against him.

INSTRUCTION NO. 42

In order to recover for negligence, plaintiffs SC and Ann Marie Porto have the burden of proving by a preponderance of the evidence four elements:  (1) that the defendant owed each of them a duty of care; (2) that the defendant breached that duty of care; (3) that the plaintiffs suffered injury or harm or in other words was negligent; and (4) that the defendant's breach of the duty was the proximate cause of the plaintiffs' injuries or harm.[63]

INSTRUCTION NO. 43

The duty owed by Tewksbury was the duty to use reasonable care under all the circumstances to avoid harm or injury.[64]

INSTRUCTION NO. 44

Negligence is failing to do something that a reasonably prudent person would do, or doing something that a reasonably prudent person would not do, when prompted by considerations that ordinarily regulate the conduct of human affairs.  Therefore, the term "reasonable and ordinary care" means the degree of care which an ordinary, careful and prudent person would exercise under the same or similar circumstances or conditions.

The law does not say how a reasonably prudent person would act under the circumstances.  That is for you, the jury, to decide.  In a negligence action, the focus of your

---

[63] Mounsey v. Ellard, 363 Mass. 693 (1973).
[64] Poirier v. Town of Plymouth, 371 Mass. 206 (1978); Mounsey v. Ellard, 363 Mass. 693 (1973)

inquiry will be the defendant's conduct; that is, whether the defendant acted reasonably and with due care under the circumstances.[65]

## INSTRUCTION NO. 45

Negligence . . . in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances.[66]

## INSTRUCTION NO. 46

If you decide that the defendant was negligent, you must then consider whether the defendant's negligent conduct caused the plaintiffs' injuries. Even if you find that the defendant was negligent, Tewksbury is not liable to the plaintiffs unless that negligence caused the plaintiffs' harm. To meet this burden, the plaintiffs need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause.

## INSTRUCTION NO. 47

The defendant's conduct was the legal cause of the plaintiffs' injury if it was a substantial factor in bringing it about and without which the harm would not have occurred. In other words, if the harm would have occurred anyway, the defendants are not liable.

## INSTRUCTION NO. 48

It does not matter whether other concurrent causes contributed to the plaintiffs' injuries so long as you find that the defendant's conduct was a substantial factor. "Substantial" is used here in its ordinary sense which requires no further elaboration.

---

[65] Carroll v. Bouley, 338 Mass. 625 (1959); Beaver v. Costin, 352 Mass. 624 (1967)
[66] Altman v. Aronson, 231 Mass. 588, 591 (1919).

INSTRUCTION NO. 49

Furthermore, to establish causation, the plaintiffs must show that the harm was reasonably foreseeable to a person in the defendant's position at the time of the defendant's negligence. The plaintiff does not have to establish that the defendants foresaw, or should have foreseen the exact manner in which the harm occurred; but they must show that this harm was a natural and probable consequence of the defendants' negligence.

INSTRUCTION NO. 50

If you should find that the plaintiffs are entitled to a verdict, you will award a sum which will compensate each of them reasonably for any mental anguish suffered by them and proximately resulting from the injury in question. The objection of compensation is to award the equivalent in money to the plaintiffs for their actual losses. You are free to use any reasonable method to determine the amount of his loss.

INSTRUCTION NO. 51

In determining the amount of damages you find are necessary to compensate SC and Ann Marie Porto for the injuries that they sustained, you should consider what you feel is required to make each plaintiff whole. The law leaves the amount of damages to be fixed by you as your discretion dictates, and as under all the circumstances and under the evidence may be just and proper.

It is not necessary, therefore, that any witness should have expressed an opinion as to the amount of damages, if any, but it is for you, the jury, to determine the amount of such damage. This finding, if made, should be based on all of the facts and circumstances revealed by the evidence, the consideration of them in connection with your own knowledge

and experience in the affairs of life, in order to fairly compensate the plaintiffs for their loss and damages.

INSTRUCTION NO. 52

In determining the amount of damages necessary to compensate the plaintiffs, you should consider the full, fair and reasonable value of the emotional suffering incurred by the plaintiffs. Mental pain and suffering includes all nervous shock, anxiety, embarrassment, humiliation or mental anguish resulting from the injury.

You may consider the extent to which the plaintiffs' injuries caused them the loss of pleasure which they otherwise would have had in the form of work, play, family life, or whatever. The plaintiffs are entitled to full compensation for any reduction in the enjoyment of life which you conclude has resulted from their injuries.

INSTRUCTION NO. 53

If you find that Ann Marie Porto is entitled to recover, you also determine whether the injury impaired or reduced her ability or capacity to earn a living. If you decide that the injury has reduced her capacity to earn a living, you should include in your award of damages a reasonable amount to compensate her for that reduction in earning capacity.

## LOSS OF CONSORTIUM

The minor plaintiff's parents Ann Marie and Nicholas Porto have a claim to recover for the damages for loss of society and companionship they have suffered as a result of the defendant's negligence.[67] This type of claim allows recovery to the parents of a physically injured child caused by the negligence of a third person.[68]

---

[67] G.L. c. 231, §85X
[68] Mouradian v. Gen Elec. Co., 23 Mass.App.Ct. 538, 544, (1987).

INSTRUCTION NO. 54

Loss of consortium is a right which grows out of the relationship between parent and child.  It is a right to enjoy the society and companionship and the affection as a part of the parent-child relationship.[69]  Therefore, if you find that as a result of the defendant's act or omission the minor plaintiff's parents have suffered a loss of society and companionship, you should fairly and reasonably compensate them for the loss.  On this question of the loss of companionship and society, you may consider:

1.  loss of comfort, solace, or moral support;

2.  any restrictions on social or recreational life; and

3.  basically any deprivation of the full enjoyment of the parent-child relationship.[70]

You must make your determination as to whether there was a loss of consortium, and, if so, the amount, based on your own common sense, good judgment, experience, and conscience.  There is no special formula or rule to measure a fair amount for loss of consortium.  You must not, however, allow any overlapping of damages with those to the plaintiff.[71]

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In this case, the plaintiff SC is claiming that Tewksbury intentionally or recklessly caused infliction of emotional distress when it failed to protect him from sexual harassment, failed to properly investigate SC complaints of sexual harassment, and failed to take sufficient remedial action to prevent future sexual victimization.  Tewksbury's

---

[69] Diaz v. Eli Lilly & Co., 364 Mass. 153, 160 (1973).
[70] Rodgers v. Boynton, 315 Mass. 279, 281 (1943)
[71] Morgan v. Lalumiere, 22 Mass.App.Ct. 262, 271 (1986).

ineffective sexual harassment policies resulted in SC's escalating emotional trauma and

harm.

INSTRUCTION NO. 55

In order to recover, the plaintiff must prove by a preponderance of the evidence

that:

1. the defendant intended to inflict emotional distress or that the defendant knew or should have known that emotional distress was likely to result from its conduct;

2. the defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community;

3. the defendant's conduct caused the plaintiff's emotional distress; and

4. the emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.[72]

INSTRUCTION NO. 56

It is not necessary for the plaintiff to prove that physical injury resulted from the

severe emotional distress.[73]

INSTRUCTION NO. 57

In order to prove intentional infliction of severe emotional distress, the plaintiff

must prove that the defendant acted either with the desire or knowledge that emotional

distress would result from its conduct or that it should have known that its conduct would

cause the plaintiff to suffer emotional distress.[74]

INSTRUCTION NO. 58

---

[72] Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456 (1997); Foley v. Polaroid Corp., 400 Mass. 82, 99-100 (1987).
[73] Agis v. Howard Johnson Co. 371 Mass. 140, 144 (1976)
[74] Tertault, 425 Mass. at 465-66.

"Extreme and outrageous" conduct is more than just workaday insults, hurt feelings from bad manners, annoyances, or petty oppressions. "Outrageousness" means a high order of recklessness, ruthlessness or deliberate malevolence.[75]

What is extreme and outrageous is for you to consider, given all the facts. For instance, outrageous behavior may be found by a repeated series of incidents, even if those incidents, when taken individually, might not be sufficiently extreme. Also, conduct otherwise reasonable may give rise to liability when it is directed at a person known to the defendant to be particularly susceptible to emotional distress because of some physical or emotional vulnerability.[76]

### INSTRUCTION NO. 59

If you find that the plaintiff has satisfied each and every element of his claim for intentional' infliction of emotional' distress, you must consider the issue of damages. The rule of damages is a practical instrumentality for the administration of justice, Its object is to afford the equivalent in money for the actual loss caused by the wrong of another. You must consider what amount of money would be full, fair and reasonable based on all the evidence, The amount of damages should be based on just and reasonable inferences, even though there may he an element of uncertainty in your determination.[77]

Respectfully submitted,

Plaintiffs
By their Attorneys,

---

[75] Tetrault, 425 Mass. at 465-66.
[76] Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 282-83 (1999).

[77] Rombola v. Cosindas, 351 Mass. 382, 385, 220 (1966); Agoos Leather Co. Inc. v. American & Foreign Ins. Co., 342 Mass. 603, 608 (1962); Daniels v. Celeste, 303 Mass. 148, 150 (1939); Sullivan Old Colony St. Ry. Co., 197 Mass. 512, 516 (1908).

/s/  Lynn A. Leonard                              /s/  Anita B. Sullivan

_____           _____

Lynn A. Leonard                                  Anita B. Sullivan
Attorney-At-Law                                  Attorney-At-Law
527 Main Street, Suite 8                     458 Main Street
Melrose, MA  02176                           Wakefield, MA  01880
(781) 662-6161                                   (781) 224-0701
B.B.O. No. 561662                             B.B.O. No. 628873

Dated:  September 12, 2005