UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

Ann Marie Porto and Nicholas Porto, )
Individually and on Behalf of S.C., a )
Minor Person with a Disability, )
)
         Plaintiffs )
)
)
vs. )
)
)
Town of Tewksbury )
)
         Defendants )

### JOINT PRE-TRIAL MEMORANDUM

**A.**  **Concise Summary of Evidence**

    **1.**  **Plaintiffs' Concise Summary of the Evidence**

Plaintiffs will offer evidence to establish that SC, a cognitively impaired minor child, was subject to severe and pervasive sexual harassment; that defendant had actual notice of sexual harassment; that defendant acted with deliberate indifference to sexual harassment; and that SC was consequently denied equal access to education. Plaintiff will offer further evidence that defendant failed to supervise SC and treated SC differently than non-disabled students. Lastly, SC and his legal guardians will offer evidence that they suffered damages as a result of defendant's conduct.

SC attended the Tewksbury Public Schools from grade one to grade seven. SC will testify that in grade one, RC, a classmate, told him about sexual conduct at home; specifically, that "his sister rubbed [a] little boy's private parts and that he (RC) was feeling the girl's butt and vagina." Mrs. Porto will testify that SC told her that RC used profanity and told sexually explicit stories about his sister having oral sex with a male

1

foster child who lived in RC's home. She reported this information to SC's first grade teacher, Mrs. Mason.

According to Mrs. Porto, RC continued telling sexually charged stories in grade two. Mrs. Porto will testify that SC complained that RC used profanity, talked about his sister having sex with a male foster child at home, and told stories about sexual acts involving tying a girl to a tree, taking her clothes off and placing sticks inside her private parts. She reported this information to SC's second/third grade teacher, Ms. Gallo. SC will testify that RC told him that he took a girl into the woods behind his house, "took her shirt off, touched her big boobs and fingered her." SC and Ms. Gallo will testify that RC coerced SC to lick up urine. Mrs. Porto will testify that RC pulled down his pants and exposed his penis to SC on the playground in the second grade. Mrs. Porto reported these incidents to Ms. Gallo and to Principal McArdle.

Mrs. Porto will further testify that in the third grade, SC reported that RC touched his (SC's) penis, described a movie involving a man and woman having oral sex and anal sex, and talked about his sister having sex with different boys. SC will testify that RC "was touching my ass" and that "a lot of times I got detention for fighting RC off when he tried to touch me." Mrs. Porto will testify that she reported this information to Ms. Gallo, to Principal McArdle and to the special education team, after SC disclosed the incidents to her. The third grade team meeting notes confirm that: "Guardian discussed incidents on the playground and bus where SC and other children exhibit inappropriate behavior (sexual issues) and other behaviors."

During the fourth grade year, SC reported to Mrs. Porto that RC was having sex with a younger cousin and classroom talk about "grabbing butts." Mrs. Porto again notified the school authority, Ms. Fiore.

According to SC, RC touched his private parts during the fifth grade year behind a poster board in the class. This occurred in the plain view of Mrs. Paris, his classroom teacher. Dr. Bradford Smith and Mrs. Porto will testify that SC disclosed that RC performed oral sex on him while in the school van. Mrs. Porto will further testify that RC touched and penetrated SC's buttocks with his fingers and described a movie involving naked women wrestling. Mrs. Porto notified Mrs. Paris and Principal Bradley. SC again reported to Mrs. Porto that RC tried to stick his fingers in his buttocks through his pants, this time during school. Mrs. Porto reported this conduct to Mrs. Paris, to Principal Bradley a second time and threatened to call the police. Mrs. Porto will testify that: SC disclosed that RC was playing doctor and touching girls in his house; that RC stuck a butter knife in the girl's vagina; and that she reported this to Mrs. Paris.

SC will testify to the following additional incidents of sexual harassment in grade five: RC grabbed his ass during recess; RC touched his private parts at a computer station in the view of the classroom teacher; RC described touching his cousin's private parts and having sex with his cousin, specifically, RC was "touching her ass" and "she touched his penis;" RC described pornographic movies in which girls touched themselves in the crotch and ripped off their clothes; and that SC learned from RC that "the breasts are on top, the vagina is on the bottom, and that a girl has three holes: the ass, crotch (vagina hole) and mouth. Mrs. Porto will testify that she reported SC's disclosures regarding oral sex on the school bus to Mrs. Paris. Mrs. Paris will testify that she reported conduct of a sexual nature to Principal Bradley. Further, Tewksbury filed a child abuse and neglect report as a result of this incident evidencing known sexual behaviors.

SC will testify that RC touched him at least once a week in grade six, placing his foot on SC's crotch area. According to SC, Mrs. Paris observed this sexual conduct when

3

it occurred and immediately moved RC's seat. SC also will testify that at the Ryan School, RC would follow him to the bathroom. In the bathroom, RC told him to turn around, and RC put his penis in his buttocks. This also happened at the Ryan School and the Wynn School.

There is documentary evidence that in seventh grade, three classroom aides reported three separate incidents of sexual touching to Robert Ware, the school's behavior specialist. Mr. Ware documented that RC placed his hands on SC's thigh when sitting at a working table; that RC moved closer to put his hands on SC; that during gym class, RC was sitting behind Steven and had his hands under SC on the bleachers. There is also a notation that "SC claims RC fondled him."

It is documented that in grade seven, Mr. Ware also discovered the boys in the bathroom with their pants down. Mr. Ware will testify that the boys reported to him that they were touching each other's private parts underneath their pants. Tewksbury filed a child abuse and neglect report as a result of this incident. SC will testify that sexual touching happened in the bathroom between five and ten times at the Wynn School. Several school teachers will testify that they were aware of the boys' sexual proclivity by history and observation at school.

In March of 1999, Principal Bradley issued a directive for heightened supervision of the boys, stating: "They are never to travel alone in or outside the building." However, sexual touching continued through grade seven. In October 2000, the boys were observed engaged in sexual touching during class on three separate occasions by classroom aides.

Mr. Traveis will testify that he was responsible for counseling and educating the boys as a result of the October 2000 incidents. He will further testify that: He was aware of a history of sexual behavior. He has no educational background in sexual abuse and

only attended one training in sexual harassment. He did not inquire about the significance of the touching, but his advice was to keep the boys separate. After only one brief discussion with the boys, he never addressed the subject again. He never addressed any specifics regarding the incidents. He never asked the boys what they were doing or explained to them why the behavior was inappropriate. He assumed they understood and were remorseful.

Mr. Traveis will testify further that: He never told Mrs. Porto about the behaviors or that he had spoken to SC specifically about an incident of inappropriate touching. At the November 2000 team meeting when Mrs. Porto again requested supervision, he assured her the youngsters were being supervised, but never told her about the sexual touching. Ms. Moser will testify that she disagreed with Mr. Traveis' decision not to call the boys' parents. She will also testify that "she was upset with Mr. Traveis because of his hesitancy on the whole issue."

The boys were still left unsupervised while at school, even after the October 2000 incident. According to DSS records, the boys traveled to and attended gym class without an aide present. They used the bathroom during gym unsupervised. The lack of monitoring left SC vulnerable to continued sexual harassment. SC will testify that RC had anal sex with him in the bathroom five to ten times including the gym and cafeteria bathrooms prior to the January 2001 incident. Dr. Smith will testify that SC reported that he and RC were involved in sexual activity in the bathrooms at school an estimated ten times.

Testimony from Assistant Superintendent Loreen Bradley and an audit by the Department of Education will support that Tewksbury provided limited, if any, information about sexual harassment to students. There was no student handbook or sexual harassment policy while SC attended the Heathbrook, Dewing and Ryan Schools.

The Wynn Middle School handbook contained a brief statement that unwanted verbal or physical advances of a sexual nature were unacceptable, but provided no complaint or grievance process. Mrs. Porto will testify that no one ever informed of the right to file a complaint.

The evidence will show that SC lost his excitement for school and suffered physically and emotionally from the hostile learning environment. SC and Mrs. Porto will testify that SC complained of leg pain, headaches, stomachaches and chest pain. Mrs. Porto will testify that SC feigned sick at times because he didn't want to go to school anymore. During school, he often went to the nurse with complaints seeking to be dismissed. SC was unable to focus while he was at school. He will testify that he would "throw books around because [he] was upset and "sometimes not even do [his] schoolwork because [he] was too distracted."

The impact of sexual harassment on SC's ability to focus also manifested through staring spells. Medical records will demonstrate that SC was examined by Dr. Joel Herskowitz at the New England Medical Center in September and December of 1999 as result of staring spells. Dr. Herskowitz noted in the Addendum to his report: "Ms. Porto is extremely frustrated that SC remains in the class with a boy who allegedly molested SC sexually. This appears to be an ongoing stressor for SC and, in my view, will account for some of the staring spells that have been observed."

After January 2001, SC never returned to the Tewksbury Public Schools. Academic records will show that for three months, he received no educational services. From April 2001 through mid August 2001, SC received approximately 11 hours of tutoring per week. Medical records will show that in September 2001, SC was hospitalized at the Charles River Hospital for suicidal ideation and depression associated with incidents of sexual harassment at school. In November 2001, he was

6

admitted to the Bournewood Hospital day program for one month while awaiting placement in a residential school. He was also hospitalized at the Lowell Youth Treatment Center.

In February 2002, SC was admitted to the Eagleton School, a residential program for boys with cognitive, emotional and behavioral disabilities. SC remains at Eagleton to date. Eagleton is a highly structured residential facility, and SC's freedom is significantly restricted. The impact of a hostile learning environment on SC's intellectual growth is apparent from SC's academic testing. Academic records will prove that since leaving Tewksbury, SC's reading level increased from Grade 1 level to Grade 10 level; his spelling increased form a Grade 1 level to a Grade 7.8 level; and his math increased from a Grade 2 to a Grade 5.6 level.

### 2. Defendants' Concise Summary of the Evidence

This matter arises from an incident that occurred on January 11, 2001, when S.C. and a classmate were found in the bathroom of the Wynn Middle School engaged in mutual sexual behavior. The Plaintiffs claim that S.C. was the subject of sexual harassment by this classmate R.C. culminating with this incident. The crux of all nine counts contained in the Plaintiffs' Complaint is that the Defendants knew about the sexual harassment alleged and were deliberately indifferent in responding.

The evidence at trial will clearly show however, that the Plaintiff S.C. was not sexually harassed by his classmate R.C., but rather, engaged in mutual sexual behavior with R.C. that was not so severe and pervasive as to deprive S.C. of an education. Certainly the two incidents of suspected mutual sexual behavior between the boys that the Defendant was notified of prior to January 11, 2001 are not sufficient for the Plaintiff to prove severe and pervasive sexual harassment. Furthermore, the Defendant responded to those suspicions in a reasonable manner.

7

As there were no witnesses to the mutual sexual behavior alleged other than the suspicions that arose in October 2000 when the boys were touching each other on the thighs over their clothing and sitting on one another's hands, S.C. will be the only witness to testify at trial as to what occurred between the two boys and more importantly, as to what he told others about the sexual behavior between the boys prior to the January 11, 2001 incident. The evidence is clear that in 1999 when the boys were in the fifth grade, Ms. Porto notified the Defendant that she was told that there was inappropriate sexual behavior between the boys on the school bus, although the only witnesses to the behavior alleged were the two boys. There were never any allegation in 1999 that the sexual behavior was not mutual or that the sexual behavior included oral sex. The Defendant placed the boys on separate vans. No issues were raised and no one witnessed any sexual behavior between the two boys in the sixth grade.

In October 2000 when the boys were in the seventh grade, the aides in the classroom suspected that the boys were touching each other's thighs under the desks over their clothing and that they were sitting on each other's hands while in the gym. The aides reported their suspicions to the administrators and it was determined that the boys should be counseled by the school adjustment counselor who they saw on a regular basis, about the suspected sexual behavior. The school adjustment counselor met with the boys who acknowledged that the behavior had occurred, apologized and told him that they would not do it again. After October, no one witnessed any inappropriate behavior between the two boys until they were found in the bathroom together on January 11, 2001. At that time, the boys admitted that they had been mutually touching one another.

The Defendant contacted the police department as well as the boys' parents. The District Attorney's office investigated the matter and all determined that the matter

8

should be treated therapeutically. The Plaintiffs refused to allow S.C. to return to school and initially refused the tutoring offered by the Defendant to S.C. The Defendant recommended that S.C. be placed in a day program close to his home if the Plaintiffs did not want S.C. to return to Tewksbury schools; however, Mr. and Mrs. Porto refused to allow S.C. to live at home. They chose to have him placed in a residential educational setting at the Eagleton School in Berkshire County. The Portos still refuse to allow S.C. to live at their home or to stay there overnight during his visits home.

The Plaintiffs will not be able to prove that the mutual sexual behavior that occurred between S.C. and R.C. caused S.C. emotional distress or any damage. Rather, what is apparent from the records received in this case is that the Plaintiffs had many other family issues that caused any of the emotional distress and loss of consortium alleged.

**B.   Facts Established by Pleadings or by Stipulation or Admissions**

    1.    The parties stipulate that SC has been diagnosed with fetal alcohol syndrome.

    2.    The parties stipulate that Tewksbury is a recipient of federal funding for purposes of Title IX.

    3.    The parties stipulate to the authenticity of the guardianship documentation regarding SC and that Ann Marie and Nicholas Porto are the legal guardians of SC.

    4.    The parties stipulate to the authenticity only of the following records: New England Medical Center; Bournewood Hospital; Wilmington Pediatrics; Center for Family Development; Dare Family Services; Department of Social Services; Tewksbury Public Safety; Tewksbury School Department.

5. The parties stipulate that if certified medical records from the Charles River Hospital become available prior to trial, the Plaintiffs do not have to call the Keeper of the Records for purposes of authenticity.

C. **Contested Issues of Fact**

**Plaintiffs' Contested Issues of Fact**

Plaintiff's contest that Tewksbury took effective steps in response to years of reported sexual harassment. Plaintiff's further contest that the sexual conduct was limited to two incidents. Rather, the sexual harassment continued for a period of years. Plaintiffs further contest that the sexual conduct was merely "suspected." Rather, Tewksbury had notice of several incidents of sexual behavior.

**Defendants' Contested Issues of Fact**

The Defendant contests that S.C. was sexually harassed by R.C. or that he was "serially molested" as the Plaintiffs claim while he attended Tewksbury schools. The Defendant further contests that the two incidents that they had notice of suspected sexual behavior between the two boys were severe and pervasive so as to deny S.C. an education. Further the Defendant contests that they were deliberately indifferent on the two occasions that they were told that the boys were suspected of engaging in mutual sexual behavior.

D. **Jurisdictional Questions**

The Parties are aware of no jurisdictional questions.

E. **Any Questions Raised By Pending Motions**

1. Whether Defendant and its witnesses and counsel shall be precluded from any direct or indirect reference which in any way characterizes the plaintiff SC as a sexual offender or perpetrator

10

2. Whether Defendant shall be precluded from introducing evidence regarding SC's alleged consent to sexual conduct

3. Whether the following records are subject to the limitations set forth in Fed.R.Evid 412 and 802: Eagleton Clinical ISP Reviews/Psychiatric Updates; Report of Daniel M. Pilachowski; Center For Family Development; Bournewood Hospital; New England Medical Center; Wilmington Pediatrics; and the (5) Report of Dr. Alexandria Weida.

4. Whether the following records are protected under the psychotherapist privilege, M.G.L. ch. 233 §20B, and/or the Licensed Independent Social Worker Privilege, M.G.L. ch. 112 §135B: Eagleton Clinical ISP Reviews/Psychiatric Updates; the Report of Daniel M. Pilachowski; and records from the Center For Family Development.

5. Plaintiff's Request for Reasonable Accommodation

6. Plaintiff's Motion for Order to Examine Tewksbury Witnesses as Adverse Parties

The Defendants have filed one Motion in Limine which is pending before the Court.

In addition, the Court only addressed the Plaintiffs' Title IX claim in the Court's Order on the Defendant's Motion For Summary Judgment. The Defendant had moved to dismiss the additional eight counts contained in the Plaintiffs' Complaint. Those Counts included claims brought pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258. The Defendant moved to dismiss all of the tort claims contained in the Plaintiffs' Complaint on the grounds that the Plaintiffs did not make presentment as required pursuant to M.G.L. c, 258, §4. Whether presentment was made is a legal matter to be determined by the Court, not a jury. Likewise, the Plaintiffs have a claim for the

11

Intentional Infliction of Emotional Distress. Now that the individual defendants have been dismissed, that claim should be dismissed as well, as a claim for the <u>intentional</u> infliction of emotional distress may only be brought against an individual, not a Town. Further, the Plaintiffs have brought claims pursuant to M.G.L, chapters 151B and 151C as well as M.G.L. c. 214 for sexual harassment. As the Massachusetts Commission Against Discrimination does not have jurisdiction over claims brought for student on student sexual harassment, those claims should be dismissed as well. All of the legal arguments in support of the Defendant's request that the claims be dismissed, are contained in the Defendants' Memorandum of Law in Support of The Defendants' Motion For Summary Judgment previously filed with this Court.

F.     <u>Issues of Law</u>

   **Plaintiffs' Issues of Law**

Pursuant to Title IX, M.G.L. ch. 214 § 1 ( C ) and M.G.L. ch. 76 § 5:

1. Whether SC was subject to verbal and/or physical conduct of a sexual nature that unreasonably interfered with his education by creating an intimidate, hostile, humiliating and sexually offensive educational environment.
2. Whether sexual harassment was severe and pervasive
3. Whether Tewksbury had actual notice of sexual harassment
4. Whether Tewksbury knew or should have known of harassment
5. Whether Tewksbury was deliberately indifferent to sexual harassment
6. Whether SC was denied educational benefits as a result of sexual harassment
7. Whether Tewksbury utilized effective policies and procedures and/or monitoring and evaluation practices to insure that sexual harassment was eliminated

8. Whether Tewksbury provided and/or utilized adequate in-service training regarding the prevention of discrimination and harassment and the appropriate methods for responding to such discrimination and harassment in a school setting

Pursuant to Title II of the American with Disabilities Act

9. Whether SC was denied access to policies and procedures regarding protections against sexual harassment and sexual abuse that non-disabled students were afforded

10. Whether Tewksbury's policies and procedures regarding protections against sexual harassment and sexual abuse had an adverse impact on disabled students.

Pursuant to 42. U.S.C. 1983

11. Whether Tewksbury, acting under color of law, deprived SC of established legal rights, including the right to be free from sexual harassment and discrimination on the basis of disability

Negligence

12. Whether Tewksbury was negligent in failing to provide a safe environment free from sexual harassment, physical, verbal and emotional abuse and discrimination.

13. Whether Tewksbury is immune from liability for negligence

14. Whether Tewksbury pleaded its presentment defense with the particularity, as required by law

15. Whether plaintiffs satisfied the presentment requirement

Negligent Infliction of Emotional Distress

16. Whether defendant negligently inflicted emotional distress upon SC by allowing repeated, foreseeable incidents of sexual harassment and discrimination against him.

Intentional Infliction of Emotional Distress

17. Whether defendant knew or should have known that emotional distress was likely to result from its conduct

18. Whether defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community

19. Whether defendant's conduct caused the plaintiff's emotional distress

20. Whether emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it

M.G.L. c. 231, § 85X

21. Whether, as a result of the defendant's act or omission, SC's guardians have suffered a loss of society and companionship

**Defendants' Issues of Law**

The issues of law raised have been addressed by the Plaintiffs' Motion in Limine that have been opposed by the Defendant. In addition, legal issues are contained in the Defendants' Motion For Summary Judgment and supporting Memorandum of Law as set forth in section (5) above.

**G.    Requested Amendments to Pleadings**

None

**H.    Additional Matters**

None

**I.    Probable Length of Trial**

15-20 half days

J.   **Witness List**

   **Plaintiff's Witnesses**

   1. Dr. Christine McGrath
      Superintendent
      One Ashland Place
      Gloucester, MA  01930

   2. Loreen Bradley
      Assistant Superintendent
      6 Barry Drive
      No. Chelmsford, MA  01863

   3. Robert Ware
      Behavior Specialist
      5 Bennetts Crossing
      Ayer, MA  01432
      (978) 772-6308

   4. Julie Paris
      225 Stonybrook Road
      Fitchburg, MA  01420
      (978) 342-2686

   5. Eleanor Edelstein
      24 Meadowbrook Road
      Bedford, MA  01730

      James McGuire
      Principal Wynn Middle School
      6 Golfview Road
      Windham, NH  03087
      (603) 434-9945

   6. Michelina DeAngelis
      255 Lexington Street
      Woburn, MA  01801
   7. William Traveis
      40 Susan Drive
      Reading, MA  01867
      (781) 781-944-5666

   8. Allison Dixon
      40 Temi Road
      Sandown, NH

   9. Ann Marie Porto
      30 Donna Drive

15

   Tewksbury, MA 01876
   (978) 851-7926

10. Nicholas Porto
    30 Donna Drive
    Tewksbury, MA 01876
    (978) 851-7926

11. SC
    Eagleton School
    446 Monterrey Road
    Great Barrington, MA 01230
    (413) 528-4385

12. Elizabeth Stasio-Englehart
    6 Arnold Lane
    York, ME 03909
    (207) 363-6917

13. Norman Tanguay, M.D.
    Wilmington Pediatrics
    500 Salem Street, Rt. 62
    Wilmington, MA 01887
    (978) 988-6200

14. Edward F. Dragan, Ed.D.
    24 Arnett Avenue, Suite 102
    Lambertville, NJ 08530
    (609) 397-8989

15. Alexandria M. Weida, Ed.D
    3 Skopelos Circle
    Andover, MA 01810
    (978) 474-9977

16. Bradford M. Smith, Ph.D.
    Fifteen Muzzey Street
    Lexington, MA 02421
    (781) 862-0555

17. Joel Herskowitz, M.D.
    Floating Hospital For Children
    Department of Pediatrics
    750 Washington Street
    Boston, MA 02111
    (617) 636-8375

18. Kara Buckley
    663 Chandler Street

Tewksbury, MA 01876

19. Sharon Moser
    13 Orchard Lane
    Chelmsford, MA 01824
    (978) 250-4732

20. Martina Laska, M.Ed./David Hastings, M.Ed.
    Directors of Education
    Eagleton School
    446 Monterrey Road
    Great Barrington, MA 01230
    (413) 528-4385

21. David Keeler, Team Leader
    Program Quality Assurance Unit
    Department of Education
    350 Main Street
    Malden, MA 02148
    (781) 338-3411

**Defendant's Witness List**

The only witness in addition to those listed by the Plaintiffs that the Defendant intends to call at trial is the following:

    1.    Cheryl Porcaro – Systemwide Team Chairperson

        Tewksbury Public Schools

        139 Pleasant Street

        Tewksbury, Massachusetts

The Defendant reserves the right to call those witnesses listed by the Plaintiff if necessary.

**K.**    **Proposed Exhibits**

**Plaintiff's Exhibits**

1. Tewksbury Public School student records for SC including: Individual Education Plans from grades 2 through 11 including team meeting notes; Psychoeducational Evaluations and Educational Assessments for the years 1998, 2001 and 2004.

2. Tewksbury Public School administrative documents entitled School Policies, Mission Statement, Building Procedures and Wynn Middle School Handbook.

3. Memorandum from James McGuire to Dr. Christine McGrath to dated January 12, 2001

4. Handwritten Interview Notes of Robert Ware

5. Handwritten note of Allison Dixon dated October 23, 2001

6. Eagleton School IEPs, Psychoeduational Evaluations, Educational Assessments and Academic Testing for the years 2001 to date.

7. Tewksbury Public Safety Report dated January 12, 2001

8. Department of Social Services Records as follows: Child Abuse/Neglect Report dated March 18, 1999; Child Abuse/Neglect Report dated January 11, 2001; Child Abuse/Neglect Investigation dated January 12, 2001

9. Evaluation of SC by Dr. Alexandria Weida

10. Medical Records from New England Medical Center/Floating Hospital For Children

11. Medical Records from Bournewood Hospital

12. Medical Records from Wilmington Pediatrics

13. Records from Dare Family Services, Inc., regarding Ann Marie Porto as follows: Mentor-Supervisor Service Log, Placement Log, Certificates of Training for Ann Marie Porto, Substitute Parenting Agreements, Letter dated February 9, 2001 regarding loss of compensation and removal of foster children from the home.

14. Massachusetts Department of Education Compliance Report dated June 19, 2002

15. Memorandum from Loreen R. Bradley to Dr. Christine L. McGrath dated March 10, 1999[1]

16. Report of Edward F. Dragan, Ed.D.

17. Curriculum Vitae of Edward F. Dragan, Ed.D.

18. Curriculum Vitae of Alexandria M. Weida

19. Schematic of Wynn Middle School

20. Tewksbury Public School student records for RC

---

[1] Plaintiffs intend to use an enlarged copy of the Memorandum as a demonstrative aid.

**Defendants' Exhibits**

The Defendants do not anticipate that they will be introducing any exhibits into evidence at this time. If necessary, the Defendants may use the following documents and/or introduce the following exhibits into evidence at trial:

1. Evaluation Team Meeting Notes contained in S.C. education file from 1st grade through the present;

2. S.C. Individual Education Plans from 1st grade through the present;

3. Memorandum dated March 10, 1999 to Dr. McGrath from Loreen R. Bradley;

4. Handwritten note by Allison Dixon dated October 23, 2000;

5. Memorandum dated January 12, 2001 to Dr. McGrath from Mr. McGuire;

6. Handwritten note by Robert Ware dated January 12, 2001;

7. Letter dated June 12, 1997 to Mrs. Porto from Mariellen Nastasi, School Psychologist;

8. Report of Daniel M. Pilackowski, LICSW dated February 26, 2004;

9. Letter dated February 26, 2001 to Mr. and Mrs. Porto from, Cheryl Porcaro;

10. Letter dated February 21, 2001 to Mr. and Mrs. Porto from Cheryl Porcaro;

11. Board of Special Education Appeals Mediation Agreement dated March 19, 2001;

12. Eagleton School Clinical ISP Reviews and Psychiatric Updates;

13. Ann Marie Porto's records from the Center For Family Development;

14. S.C. records from the Center For Family Development

L. **Objections to Evidence Contained in Pretrial Disclosures**

In addition to pending objections, plaintiffs further object to the Report Daniel M. Pilachowski to the extent that it has not been authenticated as required by law.

The Court has not yet ruled on any of the objections raised by the parties in the pretrial disclosures or raised by the Plaintiffs in their motions in limine. Accordingly, all of the objections remain the same.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| The Plaintiffs, | The Defendants, |
| By their Attorneys, | By their Attorneys, |
| | |
| /s/ Lynn A. Leonard | /s/ Leonard H. Kesten |
| Lynn A. Leonard, BBO# 561662 | Leonard H. Kesten, BBO# 542042 |
| Anita B. Sullivan, BBO# 628873 | Deborah I. Ecker, BBO # 554623 |
| 527 Main Street, Suite 8 | Brody, Hardoon, Perkins & Kesten, LLP |
| Melrose, MA 02176 | One Exeter Plaza |
| (781) 662-6161 | Boston, MA 02116 |
| (781) 224-0701 | (617) 880-7100 |

DATED: September 16, 2005