UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of SC, a Minor Person with a Disability <br><br> v. <br><br> Town of Tewksbury | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 04-CV10003-PBS <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' TRIAL MEMORANDUM

### I. Introduction

This case arises from the deliberate indifference of the Tewksbury Public Schools to repeated incidents of sexual and disability harassment against a mentally retarded student SC. The Plaintiffs, SC and his legal guardians, Ann Marie and Nicholas Porto claim that schoolteachers and administrators had actual notice of the harassment, but failed to take appropriate remedial or protective measures. Consequently, the harassment continued and escalated such that SC was denied equal opportunities and benefits of education. Plaintiffs claim that the school had lower expectations for SC because of his disability and therefore minimized and disregarded recurring violations of his civil rights. Further, Plaintiffs claim that Tewksbury negligently supervised SC and that the failure to supervise resulted in damages to SC as well as Ann Marie and Nicholas Porto.

### II. Plaintiffs' Anticipated Facts

Plaintiffs incorporate by reference the Plaintiffs' Concise Statement of Evidence set forth in the Pre-Trial Memorandum.

1

**III. Plaintiffs' Anticipated Issues of Law**

    **A. Sexual Harassment - Counts I-IV**

        **1. State Law Issues Arising under M.G.L. ch. 214 § 1C and 76 § 5**

There are two Massachusetts statutes which apply to discrimination based on sex in public schools, M.G.L. ch. 214 § 1C and 76 § 5. The Massachusetts superior court has taken jurisdiction of sexual harassment claims in education pursuant to M.G.L. ch. 214 § 1C, and damages are available under this statute including actual damages, punitive damages and attorney fees. Joleen Morrison & another v. Northern Essex Community College, 56 Mass.App.Ct. 784 (2002); M.G.L. ch. 214 § 1C; M.G.L. ch. 151B § 9. A private right of action under ch. 76 § 5 is implied. However, all cases invoking this statute to date have been limited to declaratory and injunctive relief. Barry v. Lee, 337 F.Supp. 934 (1971); Attorney General v. Massachusetts Interscholastic Athletic Ass'n, Inc. 378 Mass. 342 (1979); Leonard v. School Committee of Attleboro, 349 Mass. 704 (1965).

M.G.L. ch. 214 §1C states that "A person shall have the right to be free from sexual harassment, as defined in Chapter 151B and 151C. The superior court shall have the jurisdiction in equity to enforce this right and to award damages." M.G.L. ch. 151C, §2 (g) states that it is an unfair educational practice "[t]o sexually harass students in any program or course of study in any educational institution," as defined by M.G.L. ch. 151C. Section 1(e) of Chapter 151C defines sexual harassment, in relevant part, as follows:

> "Any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."

In Green v. Wyman-Gordon Company, 422 Mass. 551, 557 (1996), the court held

that "Chapter 214, Section 1C ensures that all employees are protected against sexual harassment . . . whether or not their employers fit within the definition in ch. 151B . . . "[T]he statute provides exclusive jurisdiction in the superior court for any sexual harassment claim that is brought in the courts because . . . the employer is not covered by Chapter 151B." Plaintiffs argue by analogy that their claim for sexual harassment is likewise actionable under M.G.L. ch. 214 § 1C, given that the Massachusetts Commission Against Discrimination ("MCAD") declined jurisdiction under Chapter 151C.

The MCAD dismissed Plaintiff's claim for lack of jurisdiction stating that the Town of Tewksbury is not an educational institution as defined by M.G.L. ch. 151C § 1 (b).[1] The MCAD has also held that the agency lacks jurisdiction to hear a student's claim of discrimination because that statute "prohibits discrimination in *admissions* to educational institutions, not discrimination in treatment of students." Oliver v. Holyoke Community College, 23 MDLR 291 (2001) (emphasis added).

In Oliver v. Holyoke Community College, the MCAD noted that "while General Laws ch. 151C and 272 do not offer redress before this Commission, M.G.L. ch. 76 and the Massachusetts Department of Education regulations at 603 CMR 26 (Access to Equal Educational Opportunities) prohibit discriminatory treatment both in admission to school and in obtaining the advantages, privileges and courses of study of such public school on account of . . . sex." Oliver, 23 MDLR at 23, FN 2. However, Chapter 76 does not allow damages for sexual

---

[1] Defendants argue that Plaintiff's claim under M.G.L. ch. 214 § 1C must be dismissed because it was not timely filed with the MCAD. Given that Plaintiff's MCAD complaint was dismissed solely on jurisdictional grounds, the statute of limitations is irrelevant. Pursuant to M.G.L. ch. 214 § 1C, the statute of limitations for filing a sexual harassment claim in superior court is set forth in M.G.L. ch. 151B § 9. Section 9 states that a complaint may be filed "not later than three years after the alleged unlawful practice occurred. Plaintiff's claim was timely filed on January 7, 2004.

3

harassment in education. Therefore, Massachusetts courts have taken jurisdiction under M.G.L. ch. 214 § 1C for sexual harassment in education, recognizing that Chapter 151C, § 3 (a) expressly limits the filing of a complaint to "[a]ny person seeking admission as a student to any educational institution, or enrolled as a student in a vocation training institution" (emphasis supplied). Joleen Morrison & another vs. Northern Essex Community College, 56 Mass.App.Ct. 784, 787, FN. 6 (2002).

Defendants argue that peer-on-peer sexual harassment is not recognized under state law. In 1996, the MCAD rejected a claim of peer sexual harassment, again, for the lack of jurisdiction. Buschini v. Town of Newburyport Public Schools, 18 MDLR 216 (1996). Notably, the Commission's decision cited federal law regarding peer harassment that has since been overruled by the Supreme Court's decision in Davis v. Monroe County Board of Education, 526 U.S. 629 (1999). The Davis Court established a cause of action for peer sexual harassment under Title IX.

Tewksbury is liable for SC's claim for damages for student-on-student sexual harassment under state law if plaintiff proves, by a preponderance of the evidence, that Tewksbury (1) either knew or should have known of (2) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived him of access to the educational benefits or opportunities provided by the school. College-Town, Div. of Interco, Inc. v. MCAD, 400 Mass. 156, 165-167 (1987); White v. N.H. Dep't of Corrections, 221 F.3d 254, 261 (1st Cir. 2000).

SC is entitled to actual and punitive damages for violation of G.L. ch. 214 § 1C. Section 1C states that "The superior court shall have the jurisdiction to . . . award the damages . . . provided in the third paragraph of Section 9 of Chapter 151B." Chapter 151B § 9 states that "the court may award the petitioner actual and punitive damages . . . reasonable attorney's fees and

costs . . ." M.G.L. ch. 151B § 9. Moreover, the express provisions of M.G.L. ch. 151B § 9 waive sovereign immunity with respect to claims for actual and punitive damages arising from sex discrimination. Bain v. City of Springfield, 424 Mass. 758, 762-764 (1997).

Punitive damages are appropriate "where a defendant's conduct warrants condemnation and deterrence. Bain, 424 Mass. at 767. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's . . . reckless indifference to the rights of others." Dartt v. Browning-Ferris Industries, Inc. 427 Mass. 1, 17 (1998), quoting The Restatement (Second) of Torts § 908 (2) (1979).

### 2. Federal Law Issues Arising Under Title IX of the Educational Amendments of 1972

Title IX of the Education Amendments of 1972 provides in pertinent part:

"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.SC §1681(a)

To establish liability under Title IX, the Plaintiff will demonstrate that:

(a) Tewskbury had actual knowledge of the harassment;

(b) Tewksbury was deliberately indifferent to the harassment; and the harassment was "so severe, pervasive and objectively offensive" that

(c) it deprived the SC of equal access to "an educational program or activity" or "the educational benefits or opportunities provided by the school." Davis, 526 U.S. at 625.

#### i. The School had Actual Knowledge

In Davis, the Supreme Court suggested that both the parent and the student had satisfied the actual notice standard where they had made repeated harassment complaints to the teacher and principal. See also Murrell v. Sch. Dist No. 1, Denver, Colo., 186 F.3d 1238 (10th Cir.

1999). In Murrell, the court stated that "[I]t is possible that these teachers would also meet the definition of appropriate persons for the purposes of Title IX liability if they exercised control over the harasser and the context in which the harassment occurred." Id. at 1248.

### ii.  SC Was Subject To Severe, Pervasive and Objectively Offensive Sexual Harassment to Which Tewksbury was Indifferent

Sexual harassment includes sexual advances, requests for sexual favors and/or other verbal or physical conduct of a sexual nature. Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 63 (1992). Hostile environment harassment covers acts of sexual harassment sufficiently severe, pervasive and objectively offensive to compromise or interfere with educational opportunities normally available to students. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002); Davis, 526 U.S. at 651. Courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).[2] A single, specific act of sexual assault or sexual harassment can constitute severe and objectively offensive student-on-student harassment for which an institution can be liable under Title IX. Davis, 526 U.S. at 650-53; Hayut v. State Univ. of New York, 352 F.3d 733 (2nd Cir. 2003); Vance v. Spencer Co. Sch. Dist., 231 F.3d 253, 259 (6th Cir. 2000).

The Supreme Court describes deliberate indifference as a "clearly unreasonable response in light of the known circumstances." Davis, 526 U.S. at 648. "[D]eliberate indifference must, at a minimum, cause [students] to undergo harassment or make them . . . vulnerable to it. McGowen, 231 F.3d 253 (6th Cir. 2000), quoting Davis, 526 U.S. at 645. Moreover, "[w]here a School district has actual knowledge that its efforts to remediate are ineffective, and it continues

6

to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances." Id. at 261.

### iii. SC Was Denied Equal Educational Opportunities and Benefits

A Plaintiff must establish that sexual harassment so undermines and detracts from the victim's educational experience, that the student is effectively denied equal access to an institution's resources and opportunities. Davis, 526 U.S. at 652. The behavior must be serious enough to have a systemic effect of denying the victim equal access to an educational program or activity. Davis at 652.

The inability to fully access an education is inherent in a school environment permeated by severe and pervasive sexual harassment. "A non-discriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing [his] full intellectual potential and receiving the most from the academic program." Davis, 74 F.3d at 1193 (11th Cir. 1996). "Children are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment." Gabrielle M. v. Park Forest-Chicago Heights, et al., 315 F.3d 817 (7th Cir. 2003). This is particularly true for SC, given his expressive language delays.

Plaintiffs are also entitled to actual and punitive damages under Title IX. Canty v. Old Rochester Regional School District, 54 F.2d 66, 69 (D.Mass. 1999).

### B. Title II of the Americans With Disabilities Act - Count V

Pursuant to the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

---

[2] See also, Dept. of Ed., Office for Civil Rights, Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students or Third Parties 62 Fed. Reg. 12034 (1997).

benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.SC §12132.

SC's ADA claim is inextricably intertwined with his Title IX claim; SC was denied access to policies and services for protection against sexual harassment that non-disabled students were afforded. Moreover, Tewksbury's policy has a discriminatory disparate impact on students who are unable to understand the nature of sexual conduct because of their disability. Plaintiff can recover compensatory damages under Title II. 42 U.S.C. §12133; 29 U.S.C. §981a(b)(1).

### C. 42 U.S.C. 1983 - Count VI

Defendants were acting under color of federal and state laws, statutes, ordinances, codes and regulations while depriving the Plaintiff of the following established legal rights:

  i)  the right to be free from sexual harassment and sexual abuse;
  ii) the right to be free from discrimination on the basis of disability; and
  iii) equal access to education.

Tewksbury's actions were done in accordance with a custom or policy and those actions caused the deprivation of the Plaintiff's rights. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989); See also Town of Fletcher v Clinton, 196 F.3d 41, 55 (1st Cir. 1999). Action under color of law includes even the misuse of power possessed by virtue of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

In order to find that Tewksbury is liable based upon custom or usage, Plaintiff must demonstrate that:

  a. the practice of Tewksbury employees was so well settled and widespread that the policymaking officials of the town either knew or should have known of it, but did nothing to end the practice and thereby implicitly authorized, approved of, or acquiesced to the practice; and

  b. the custom or practice must have been the cause of and the moving force behind the deprivation of the Plaintiff's civil rights.

Roma Constr Co., 96 F.3d at 575; Bordanaro v. McLeod, 871 F.2d I 151, 1157 (1st Cir.), cert. denied sub nom. Everett v. Bordanaro, 493 U.S. 820 (1989); Kibbe, 777 F.2d at 810.

### D. Massachusetts Torts Claims Act (M.G.L. ch. 258 § 4) - Count VII Negligent Failure to Supervise and Negligent Infliction of Emotional Distress

The Plaintiffs, SC and Ann Marie and Nicholas Porto have the burden of proving by a preponderance of the evidence four elements: (1) that the defendant owed each of them a duty of care; (2) that the defendant breached that duty of care, in other words, was negligent; (3) that the plaintiffs suffered injury or harm; and (4) that the defendant's breach of the duty was the proximate cause of the plaintiffs' injury or harm. Mounsey v. Ellard, 363 Mass. 693 (1973).

Tewksbury contends that the Plaintiffs made no presentment, thus, the claim must fail. Plaintiffs have satisfied the presentment requirement set forth in M.G.L. ch. 258 § 4. Tewksbury is under an obligation to deny with specificity and particularity such performance, pursuant to Mass. R. Civ. P. 9 (c). Failure to do so results in a waiver of the defective presentment defense. Vasys v. Metro District Comm'n, 387 Mass.51, 55-56, 438 N.E.2d 836, 849 (1982).

Paintiffs' Complaint falls within the exceptions which bar immunity under M.G.L. ch. 258 § 10 (j), the statutory duty rule, and § 10(b), discretionary function. Under M.G.L. ch. 258 10 (j) (1), immunity does not apply to "a claim made upon specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or had been undertaken, made to the direct victim or a member of his family . . . provided that the injury resulted in part from reliance on those assurances. A . . . report of findings of an investigation or inspection shall not constitute such assurances of safety or assistance. In Kent v. Commonwealth, 437 Mass. 312, 771 N.E. 2d 770 (2002), the Court clarified this standard and

held that there is liability when a public employer creates an affirmative act and such act materially contributes to creating the condition or situation that resulted in the harm. Kent, 437 Mass. at 319.

Plaintiffs contend that the School's actions regarding supervision of SC were not discretionary and, therefore, actionable as an exception to M.G.L. ch. 258 §10 (b). The exception requires a two-step analysis to determine whether the conduct should be immunized from liability. The first inquiry is whether the governmental actor had discretion regarding the course of conduct she chose to follow or, alternatively, whether the conduct was prescribed by statute, regulation or established agency practice, whether the actor had discretion and whether such discretion rose to the level of policymaking or planning meant for protection under M.G.L. 258 10 (b). If a School acts in a non-discretionary manner, rather than relying on policy or plans, then the act is deemed non-discretionary. Alake v. City of Boston, 49 Mass. App. Ct. 610, 66 N.E. 2d 1022 (1996). (Failure to implement procedures designed to meet the needs of special ed students held not discretionary.) McLaughlin v. City of Lowell, 8 Mass. L. Reporter 343 (Middlesex Superior Ct. 1998).

### E. Intentional Infliction of Emotional Distress – Count VII

Plaintiffs must satisfy four elements under the standards for intentional infliction of emotional distress: (1) that the individual intended to inflict the emotional distress or that he knew or should have known emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the Defendant were the cause of the Plaintiff's distress and (4) that the emotional distress sustained by the Plaintiff was severe and of a nature that no reasonable man could be expected to endure it. Agis v. Howard Johnson Co.,

355 NE.2d 315, 318-319 (1976).  This action lies outside the Massachusetts Torts Claims Act.

The facts "reasonably could lead the trier of fact to conclude that Defendants' conduct was extreme and outrageous, having a severe and traumatic effect on Plaintiff's emotional tranquility."  Agis v. Howard Johnson Co., 355 NE 2d 315,319 citing Alcorn v. Anbro Engineer Inc., 2 Cal.3d 493, 498, 86 Cal. Rptr. 88, 90, 468 P.2d 216, 218 (1970).

In order to make a plausible cause of outrage, the conduct must approach the abuse of ordinary decencies.  Richey v. AAA Inc., 380 Mass 835, 839.

### F. Loss of Consortium – Count VIII

Pursuant to M.G.L. ch. 231 § 85X (1990), "The parents of a child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury."  As a general rule, a claim for loss of consortium requires proof of a tortious act that caused [spousal] personal injury.  Diaz v. Eli Lilly and Co., 364 Mass 153, 161-168 (1973).  See also Prosser & R.E. Keeton Torts, Section 125 at 934 (5th ed. 1984).

Respectfully submitted,
PLAINTIFFS

By their Attorneys,

/s/ Lynn A. Leonard                              /s/ Anita B. Sullivan

_____         _____
Lynn A. Leonard                                    Anita B. Sullivan
Attorney-At-Law                                    Attorney-At-Law
527 Main Street, Suite 8                        458 Main Street
Melrose, MA  02176                              Wakefield, MA  01880
(781) 662-6161                                      (781) 224-0701
B.B.O. No. 561662                                B.B.O. No. 628873

Dated: September 19, 2005

11