UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of S.C., a Minor Person with a Disability,<br><br>Plaintiffs<br><br>vs.<br><br>Town of Tewksbury<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE REGARDING THE
INTRODUCION OF EVIDENCE ABOUT S.C.'S SEXUAL BEHAVIOR,
FEDERAL RULES OF EVIDENCE 412 AND 802**

This Court has asked the defendants to submit a memorandum addressing the relevance of the fact that S.C. had inappropriate sexual contact with his foster sister at his home in 1999. This topic is wholly relevant to many aspects of this case for the following reasons.

The plaintiff's theory in the instant case is that the employees of the Tewksbury school system were deliberately indifferent to the alleged sexual harassment of S.C. by his classmate R.C. The plaintiff claims that this alleged harassment resulted in severe emotional distress to S.C., which was exacerbated when he was forced to leave the Porto home for a residential facility in 2001 as a result, the plaintiff alleges, his sexual conduct with R.C. However, there is substantial evidence that S.C.'s sexual experimentation with, inter alia, his foster sister(s) and others in his home was actually the primary reason for his departure from the Porto home.

In February of 1999, S.C. was a fifth grader in the Tewksbury schools and was living with Mr. And Mrs. Porto at their home. Also residing at that residence were the

Porto's three biological children as well as two adopted sisters ages 7 and 9. Mrs. Porto has testified at her deposition that during the February vacation the older sister observed S.C. inserting objects into the vagina of the 7 year old girl in their shared bedroom. Mrs. Porto claims that when she looked into this event she learned for the first time that S.C. claimed that he was engaged in sexual contact with R.C. on their school bus. On March 5, Mrs. Porto reported the school bus contact to the Tewksbury schools.

In January of 2001, while S.C. and R.C. were both in the seventh grade, they were discovered with their pants down and genitals exposed in the boys bathroom in the middle school. This incident precipitated an investigation by the Tewksbury police and D.S.S. This also precipitated the removal of S.C. from the school system and, eventually, his home with the Portos. He was placed in a residential facility in western Massachusetts where he resides today.

There is ample evidence in this case that S.C. was removed from the Porto home after the January 2001 incident in the boys bathroom in large part because of his inappropriate sexual behavior towards his foster sisters and others. Indeed, in an evaluation of S.C. completed in March of 2001 at the Massachusetts General Hospital, the evaluator wrote that Mrs. Porto "is concerned about the future risk of sexual behaviors provoked by [S.C.] on his foster sisters, now ages 11 and 9. At present she 'tries to keep them apart' and supervise [S.C.] at all times, but there was a recent incident with a female playmate who was visiting whom [S.C.] touched provocatively several times. Mrs. Porto is saddened because she had to give up a baby who had been placed with her for foster care because of [S.C.'s] behavior. She feels that [S.C.] needs treatment in a residential facility to separate him from his peer with whom he has

engaged in sexual acts, to separate him from the foster sisters with whom he is initiating sexual activity, and to train him in basic life skills ..." There are numerous other records which document the profound effect of S.C.'s sexual conduct with his foster sister and other children besides R.C. on his emotional state.

It is eminently clear that the evidence of S.C.'s sexual behavior in his home is important evidence which is relevant both to his and the Porto's damages as well as to the question of whether his sexual activity in the school setting could have been prevented by the Tewksbury schools. Thus, the probative value of this evidence far outweighs the alleged prejudice. Indeed, when this plaintiff's damages claim is examined, the central damage claim is that he had to leave the Porto home. Thus, the reasons this happened are central to the damages claim. Additionally, since the plaintiffs will present evidence suggesting that the Tewksbury schools did not do enough to prevent the sexual contact between S.C. and R.C., the defendant should be allowed to introduce evidence of the Portos inability to prevent sexual contact between S.C. and his foster sisters and others at the Porto home.

Wherefore, the defendants ask this court to allow the introduction of evidence of S.C.'s sexual behavior in the Porto home with his friends and relatives.

        Respectfully submitted,
        The Defendants,
        Town of Tewksbury,
        By their attorney,

        /s/ Leonard H. Kesten
        Leonard H. Kesten, BBO# 542042
        Deborah I. Ecker, BBO # 554623
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        One Exeter Plaza
        Boston, MA 02116

Dated: September 28, 2005        617-880-7100