UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of SC, a Minor Person with a Disability<br><br>v.<br><br>Town of Tewksbury | )<br>)<br>)<br>)<br>) C.A. No. 04-CV10003-PBS<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDA OF LAW REGARDING
TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

Title II of the Americans With Disabilities Act ("ADA") prohibits public schools from denying qualified persons with disabilities the right to participate in or benefit from the services, programs, or activities that they provide, and from subjecting such individuals to discrimination if the exclusion or discrimination is due to the person having a disability. 42 U.S.C. § 12132.

SC's ADA claim is that he was denied access to policies and practices to ensure protection against sexual harassment that were afforded to non-disabled students. The right to be free from sexual harassment is a right that all children are afforded, whether or not they are entitled to special education services. Defendant's attempt to characterize this dispute into one over education as opposed to civil rights is misplaced.[1]

---

[1] Since SC's claim is not predicated on a violation of the Individuals With Disabilities Education act ("IDEA"), administrative exhaustion before the Board of Special Education Appeals ("BSEA") is not required. Moreover, the BSEA has no jurisdiction over discrimination in public schools. "[C]laims that [are] not related to "a free, appropriate public education," such as violations of Title IX based on alleged sexual harassment . . . are treated separately and [are] not subject to the IDEA. Frazier, 122 F.Supp.2d at 111.

1

SC has been diagnosed with Fetal Alcohol Syndrome and mild mental retardation, which has a substantial limitation on his major life activities including the ability to learn. "To be qualified, an individual with a disability must meet the essential eligibility requirements for receipt of services or participation in a public entity's programs, activities or services without or without reasonable modifications to a public entity's rules, policies or practices . . . ." 28 CFR 35.104.

SC was denied access to sexual harassment policies and procedures on the basis of his disability. There are no specific eligibility requirements for access to sexual harassment policies and services. Rather, this is a requirement of Title IX, M.G.L. c. 214 § 1C, c. 76, § 5 and related regulations. SC is otherwise qualified in that he was eligible for such services with an accommodation that would allow SC individually or through his legal guardian access to a sexual harassment policy and services to ensure prompt and effective remedial action.

A disparate impact theory of discrimination under Title II examines whether the similar treatment of all students has a different outcome for school children with disabilities. Tewksbury's student sexual harassment policy states that "unwanted" verbal or physical advances of a sexual nature are unacceptable. (Wynn Middle School Handbook). The policy is neutral on its face, but has a discriminatory disparate impact on students who are unable to understand the nature of sexual conduct because of their disability.

Principal McGuire testified that SC was not sexually harassed because the conduct in question was "welcome." (McGuire Depo, p. 118). At the same time, he acknowledged that SC did not understand right from wrong in the context of inappropriate sexual behavior. (McGuire Depo, p. 123-124). Mr. McGuire's testimony is conflicting and emphasizes that the Wynn Middle School sexual harassment policy does not protect cognitively impaired children such as SC. Moreover, children like SC with speech and language disabilities are far less able to articulate the fact and extent of their injuries and may manifest an array of different reactions to the harassment.

SC was also subject to disparate treatment in the application of Tewksbury's anti-harassment polices and services. Although Tewksbury maintains that it distributed a student handbook to middle school students stating that unwanted verbal or physical advances of a sexual nature were unacceptable, both SC and Mrs. Porto never received a student handbook during the time that SC attended the Tewksbury Public Schools. In addition, Julie Paris testified regarding the elementary school handbook that the children in her classroom did not always get everything that the general population did. (Paris depo, p. 119). There is also comparative evidence that non-disabled children are afforded a complaint and grievance process that neither SC nor his legal guardians were afforded. Robert Ware testified at trial that his protocol for investigating complaints of sexual harassment includes interviewing the complaining student, but that he did not interview SC in October 2000 after several incidents of sexual touching were reported, including that SC was fondled.

Furthermore, in January 2004, KW, a non-disabled student reported to the school officials that her breasts and crotch had been fondled by several boys on a school bus

3

during a school sponsored ski trip chaperoned by school teachers.[2]  In response to this complaint, a meeting was held at the school with the parent, student and administrators.  This is not the process afforded SC in response to the March 1999 school bus incident or the three incidents of fondling which occurred in October 2000 involving SC and a peer.  In March 1999, school officials failed to interview SC or to inform Mrs. Porto about its investigation.  In October 2000, Tewksbury failed to notify SC's legal guardians or to interview SC.

Plaintiffs argue that but for SC's disability, there would have been a proactive, remedial response to ongoing complaints of sexual harassment.  For example, Principal McGuire testified that it was the school's practice to interview students and to "listen to both sides of the story" during an investigation of sexual harassment. (McGuire Depo, p. 86).  However, SC was never interviewed in an effort to substantiate reports of sexual touching.  Moreover, the school failed to provide supervision, education or discipline to keep SC safe from ongoing sexual harassment.  Despite the principal's directive for heightened supervision in March of 1999, none was implemented.

Mr. McGuire also testified that "incorporated into any [investigation] is an education as to what is sexual harassment." (McGuire Depo, p. 86).  However, the school never provided education and counseling to SC during the course of its alleged investigations in 1999 and 2000.  In  October 2000, Mr. McGuire recommended counseling for the boys.  However, the school counselor, Mr. Traveis, never addressed any specifics regarding the incidents; he never asked the boys what they were doing or explained to them why the behavior was inappropriate. (Traveis Depo, p. 65-67).  He

---

[2] Significantly, defendant failed to provide this comparative information requested by Plaintiffs in their first set of interrogatories.  Plaintiffs discovered this information during the course of their own investigation on October 6, 2005.

4

assumed they understood. (Traveis Depo, p. 65-67, 75). After the March 1999 and January 2001 incidents of sexual harassment, Mrs. Porto arranged outside counseling for SC, not the school.

Mr. McGuire also testified that if the offense is "important enough to contact the parent about, the parent would be contacted." (McGuire Depo, p. 63-64). Mr. McGuire was aware of the October 2000 incidents (Ware Depo, p. 68), but did not contact SC's parents after three incidents of sexual touching. Nor did he file a 51A or contact the police, as required by the school policy.

In addition, school officials failed to enforce the school code of conduct in response to incidents of sexual harassment. SC's IEP did not require modification to the disciplinary code of conduct. (IEP's for Grades 4, 5, 6 and 7). Therefore, the school's expectation should have been that the codes would be utilized for SC in the same manner that they were utilized for regular education students. Mr. McGuire testified that "there would be disciplinary consequences" for continuing sexual harassment. (McGuire Depo, p. 88). Despite Defendants' allegations that SC initiated and participated in sexual touching, school officials never disciplined SC.

Defendants' unequal sexual harassment policy, their substandard expectations for special education students and failure to remedy sexual harassment denied SC access to educational benefits and services in violation of Title II.

Respectfully submitted,

Plaintiffs
By their Attorneys,


| /s/  Lynn A. Leonard | /s/   Anita B. Sullivan |
|---|---|
| Lynn A. Leonard | Anita B. Sullivan |
| Attorney-At-Law | Attorney-At-Law |
| 527 Main Street, Suite 8 | 458 Main Street |
| Melrose, MA  02176 | Wakefield, MA  01880 |
| (781) 662-6161 | (781) 224-0701 |
| B.B.O. No. 561662 | B.B.O. No. 628873 |

Dated:  October 12, 2005