UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| Ann Marie Porto and Nicholas Porto, Individually and on Behalf of SC, a Minor Person with a Disability<br><br>v.<br><br>Town of Tewksbury | )<br>)<br>)<br>)<br>) C.A. No. 04-CV10003-PBS<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDA OF LAW REGARDING**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

Title II of the Americans With Disabilities Act ("ADA") prohibits public schools from denying qualified persons with disabilities the right to participate in or benefit from the services, programs, or activities that they provide, and from subjecting such individuals to discrimination if the exclusion or discrimination is due to the person having a disability. 42 U.S.C. § 12132. Harassment is a form of disability discrimination under the ADA.

To state a claim for hostile learning environment harassment under the ADA, plaintiff must allege that: He is a member of a protected class; that he has been subject to unwelcome harassment; that harassment is based on his disability; and that the harassment is sufficiently severe or pervasive that it alters the conditions of his education and creates an abusive educational environment. Guckenberger v. Boston University, 957 F.Supp 306 (D.Mass 1997).

As applied to disability harassment in public schools, schools face liability under Title II of the ADA for activity by student-peers, if the conduct is sufficiently severe and

the district meets an intent standard.  The dominant test for intent, and thus for damages liability, is the requirement of bad faith or gross misjudgment.  <u>William and Mary Law Review</u>, Vol. 43, No. 3, 1079, 1105 (February 2002) citing <u>McKellar v. Commonwealth of Pennsylvania Department of Education</u>, 1999 WL 124381 (E.D. Pa. Feb 23, 1999).  Intent may also be shown by direct evidence or an inferential showing of policy or custom, decision of an authoritative official to do or fail to do something, inadequate training that amounts to deliberate indifference, an official's deliberate indifference to known acts of harassment, bad faith conduct of officials or official's gross misjudgment.  <u>William and Mary Law Review</u>, Vol. 43 at 1106.

     SC has been diagnosed with Fetal Alcohol Syndrome and mental retardation, which has a substantial limitation on his major life activities including the ability to learn.  Since SC is a child with a disability, he has no ability to consent to harassment.  "Welcomeness is an improper inquiry to be made in Title IX cases involving . . . discrimination of elementary school children."  Welcomeness includes the ability to initiate or participate in sexual conduct.  In <u>Mary M., et al v. North Lawrence Community School Corp</u>., 131 F.3d 1220 (7th Cir. 1997).

     Disability harassment includes the failure to protect a disabled student against known risks of physical or psychological harm by other students.  Disability Harassment in Public Schools, <u>William and Mary Law Review</u>, Vol. 43, No. 3 (February 2002).  This is because students with disabilities are unable to protect themselves.  The school, acting *in loco parentis*, is vicariously liable for harassment SC suffered as a direct result of his disability.  SC's cognitive limitations made him exceptionally vulnerable and required heightened protection from known risks and subsequent damages.

Cases concerning the failure to supervise students who present a known danger to students with disabilities include cases arising from known incidents of sexual behaviors. Sexual harassment cases are clearly actionable in light of the Supreme Court's declaration in <u>Davis v. Munroe County Board of Education</u> that schools may be liable for deliberate indifferent to known acts of peer sexual harassment as school. 526 U.S. 629 (1999).

Plaintiff's contend Tewksbury failed to protect SC, a student with a disability, from known risks. In this case, the risk happens to be sexual harassment. Plaintiff's further contend the school used gross misjudgment in responding to the complaints of a student with a disability to protect him from a hostile environment. In March 1999, it was reported that SC had been involved in oral sex with an age mate on the school bus. In response to this report, Tewksbury failed to implement a plan to supervise SC and to keep him separated from RC.

Rather, Tewksbury downplayed a known incident of oral sex on the school bus, characterizing it as mere "sexual experimentation." Teachers and administrators then failed to protect SC by providing services such as a functional behavioral assessment or by implementing a behavior intervention plan which would have provided SC with an educational opportunity to learn about appropriate and inappropriate touching behavior.[1] The sexually charged environment coupled with SC's known risk and the school's failure to provide any comprehensive assessment is gross misjudgment resulting in a violation of

---

[1] The right to be free from sexual harassment is a right afforded all children with disabilities, whether or not they are entitled to special education services. Defendant's attempt to characterize this dispute into one over education as opposed to civil rights is misplaced. SC's claim is not predicated on a violation of the Individuals With Disabilities Education act ("IDEA").

3

Title II.  See also, *Teaching Exceptional Children*, Vol. 36, No. 4 pp. 62-67.  Tewksbury similarly failed to act in October 2000.[2]

Furthermore, the school had no grievance procedure in its sexual harassment policy to protect SC from repeated sexual touching, as required by the Massachusetts Department of Education.  School officials also failed to publish the school Code of Conduct, which prohibits sexual harassment.  SC's IEP did not require modification to the disciplinary Code of Conduct.  (IEP's for Grades 4, 5, 6 and 7).  Despite allegations that SC initiated and participated in sexual touching, school officials never disciplined SC nor did they utilize any other effective means to eliminate known risks and a hostile environment.

On the instant facts, gross misjudgment on behalf of the school includes failure to speak with SC or to refer SC to counseling, failure to complete a home assessment and failure to notify the family of any comprehensive steps taken to maintain SC's safety at school.

Disability harassment was sufficiently severe and pervasive that it altered the conditions of SC's education and created an abusive educational environment.  SC was subject to oral sex on the school bus in the fifth grade, continued touching of his crotch and buttocks in the sixth grade and several incidents of fondling and sexual intercourse in the school bathroom in seventh grade.  But for SC's disability, there would likely have been a proactive, remedial response to ongoing complaints of sexual harassment.  Nevertheless, the school's failure to provide supervision, education or discipline to keep

---

[2] By analogy to Title VII, an employer is liable for the harms of a hostile environment if it failed to take reasonable measures to prevent and correct the conduct.  Burlington Industries v. Ellerth, 524 U.S. 765.

4

SC safe from ongoing sexual harassment constitutes harassment on the basis of disability, which denied him educational benefits.

Specifically, the curriculum for special education students like SC is developed through an individual education plan designed to meet the specific needs of the student. In this case, it is clear that SC's educational needs included education regarding inappropriate touching and safety issues regarding sexual harassment.  Principal McGuire and other school officials acknowledged that SC did not understand right from wrong in the context of inappropriate sexual behavior.  (McGuire Depo, p. 123-124).  The school adjustment counselor also admitted he never addressed good or bad touching with SC. The failure to include services to protect SC from harassment effectively denied him the educational services he required given his special needs.

Based upon the foregoing, Tewksbury's failure to protect SC from ongoing sexual touching constitutes harassment on the basis of disability in violation of Title II of the ADA.


Respectfully submitted,

Plaintiffs
By their Attorneys,


/s/  Lynn A. Leonard                                          /s/  Anita B. Sullivan
_____                        _____
Lynn A. Leonard                                                  Anita B. Sullivan
Attorney-At-Law                                                  Attorney-At-Law
527 Main Street, Suite 8                                      458 Main Street
Melrose, MA  02176                                            Wakefield, MA  01880
(781) 662-6161                                                    (781) 224-0701
B.B.O. No. 561662                                              B.B.O. No. 628873

Dated: October 17, 2005