UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

Ann Marie Porto and Nicholas Porto, )
Individually and on Behalf of S.C., a )
Minor Person with a Disability, )
)
      Plaintiffs )
)
vs. )
)
Town of Tewksbury )
)
      Defendants )

### DEFENDANT'S MOTION SEEKING RECONSIDERATION OF THIS COURT'S RULING REGARDING ADMISSIBILITY OF STATEMENTS MADE BY S.C. TO DANIEL PILACHOWSKI

The defendant has offered into evidence a properly authenticated report of an evaluation conducted as part of S.C's psychiatric treatment. This court has made a ruling early in this trial excluding many statements of S.C. based on the plaintiff's objections that the statements were unduly prejudicial. Now that the plaintiff has been allowed to introduce hearsay statements from Mrs. Porto regarding sexual activity of S.C. and R.C., the defendant asks the court to reconsider it's decision.

The plaintiff's theory of the case has never been completely clear. However, as the case has evolved the plaintiff has now introduced evidence which appears to try to suggest that S.C. was "sexualized" by statements allegedly made by R.C. prior to 1999. There has been evidence introduced, by the plaintiff, that S.C. was observed inserting a plastic knife into the vagina of his seven year old "sister" in 1999. Mr. Porto has testified that this behavior had only occurred on one occasion and told the DSS worker that this activity was isolated and resulted in no trauma to his "sister".

Subsequently, in 2001 S.C. was discovered engaged in sexual activity with R.C. in the bathroom of the middle school. During the SAIN meeting, the school discovered

1

that S.C. had previously molested his sister. It was as a result of that discovery that S.C. was required to have a forensic evaluation to see if he posed a sexual danger to other children in the middle school which ultimately resulted in his placement in a residential facility. Further, it was as a result of the discovery of S.C.'s molestation of his sister and his sexual aggression with R.C. that the DARE program removed two foster children from the Porto household in February of 2001.

The plaintiff's claim for damages is based on the fact that S.C. was removed from the school system and from his home after his sexual antics were discovered after the bathroom incident. Accordingly, Mrs. Porto has minimized S.C.'s sexual contact with his "sister" and claims that it was an isolated incident of "playing doctor". Thus, she claims that the real problems that S.C. developed were only as a result of his sexual contacts with R.C., not his "one time" incident with his sister.

The Pilachowski report contains statements made by S.C. to a neutral clinician regarding his sexual conduct which is the gravaman of this action. The statements were made by Stephen outside the presence of Mrs. Porto to a disinterested party, a clinician hired by the Eagleton school. In those admissions, S.C. admits that he had sexual contact with his "sister" not once, but four or five times a week. He described putting his penis between the victim's buttocks 3-4 times a week. He also described putting a drumstick into his "sister's" vagina and putting it back despite her protests that it hurt. These statements are clearly relevant and directly contradict Mrs. Porto's testimony as to the nature of S.C.'s sexual contact with his sister.

This court has allowed Mrs. Porto to testify as to many incidents that S.C. supposedly described regarding alleged sexual activity of R.C. Indeed, we have heard in this courtroom "gory details" from Mrs. Porto about stories R.C. allegedly told to S.C., through Mrs. Porto, including one incident in which R.C. allegedly put a stick into

2

the vagina of a young girl. The Court also allowed into evidence explicit descriptions of R.C.'s alleged sexual activity made by Mrs. Porto to Dr. Smith.

In contrast, the statements made by S.C. and recorded by a disinterested clinician which have direct bearing on material facts in dispute have been excluded. This jury has to decide whether R.C. sexually harassed S.C. Also, it has to decide whether S.C. subsequent removal from the school and his home was as a result of his sexual contact with his "sister" or with R.C. The fact that S.C. admitted that his sexual contact with his "sister" was extensive and included behavior which he later "copied" with R.C. is extremely relevant. Mrs. Porto told DSS that the victim was not traumatized because she thought S.C.'s behavior was a game. Yet, S.C. told the clinician that in fact the victim cried after sex. S.C. told the clinician that he enjoyed touching his "sister's" vagina and enjoyed when she touched his penis. How can this information not be probative when the Porto's are allowed to testify that S.C.'s contact with his "sister" was only "playing doctor" and only occurred one time? They also argue that S.C. was learning his sexual behavior from R.C. Yet, in the report at issue S.C. describes behavior he engaged in with his sister which he later engaged in with R.C. This is certainly relevant to the question as to who was sexualizing whom.

The Portos and their attorneys have been allowed to suggest to this jury that S.C. "played doctor" with his "sister" only because R.C. told him about playing doctor. Further, Mrs. Porto has testified that the activity was minimal and only occurred once. Yet this court has excluded evidence from the mouth of S.C. of extensive sexual activity with his "sister" which provided sexual gratification to S.C. and traumatized his sister. This critical evidence could easily form the basis of the jury concluding that in fact S.C. was not the victim but the instigator of sexual activity with R.C., a key factual determination to be made by this jury.

3

The Court has indicated that part of its decision to exclude the statement by S.C. to the clinician regarding the frequency of his sexual activity with his "sister" was based on a subsequent letter from the clinician to a Pat Doherty of the Eagleton School. In that letter, Mr. Pilachowski indicates that "Eagleton staff" told him that it was reported to them that the client admits to putting his penis between the victim's buttocks three or four times in one day, not three or four times a week. It is not known who "reported" this information to "Eagleton staff". This statement in the report is, in fact, the <u>only</u> unreliable hearsay statement regarding the words of S.C. The fact that some unnamed staffer at the Eagleton school indicated to the clinician that someone said something different does not in any way make S.C.'s direct statement to the clinician less reliable. Any concerns regarding reliability that the court has could easily be remedied by allowing both statements into evidence. It is not fair to exclude the admission of a party opponent on the basis of a statement allegedly made by unnamed "Eagleton Staff".

The defendant suggests that it is manifestly unfair to the educators of the Tewksbury Schools in general, and to Dr. McGrath specifically, to allow one sided evidence of rank hearsay regarding unobserved sexual explicit sexual activity of R.C. and his relatives coming from the mouth of and interested party, and at the same time to exclude as "prejudicial" statements made by S.C. to a neutral party regarding key evidence of his sexual activity, the very subject of this lawsuit. Our judicial system is supposed to be a search for the truth. This search would be unfairly prejudiced if this courts current rulings regarding the admissibility of S.C.'s statements contained in the Pilachowski report are not reversed. The defendant simply asks for a fair opportunity to present relevant competent evidence, nothing more.

4

Respectfully submitted,
The Defendant,
**Town of Tewksbury**
By their attorney,


/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO # 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

DATED: October 19, 2005