UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
Ann Marie Porto and Nicholas Porto,         )
Individually and on Behalf of SC,           )
a Minor Person with a Disability            )
                                            ) C.A. No. 04-CV10003-PBS
v.                                          )
                                            )
Town of Tewksbury                           )
_____ )

## PLAINTIFF'S MOTION FOR APPLICATION OF THE CONTINUING VIOLATION DOCTRINE TO TITLE II

Plaintiff SC, through his legal guardians Ann Marie and Nicholas Porto, allege that the Town of Tewksbury failed to protect him from the known risk of sexual harassment in violation of Title II of the Americans with Disabilities Act. Plaintiff was subject to harassment that occurred before and after the statute of the three-year limitations period. Through the "continuing violation" doctrine, courts have recognized an exception to the rigid application of statutes of limitations. It applies to two different types of violations: systemic violations based on a discriminatory policy or practice and serial violations composed of a series of discriminatory acts. Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868-69 (1st Cir. 1997). If at least one incident in a pattern of related "serial" violations occurs within the limitations period, the court can grant relief for any of the related violations, regardless of whether the Plaintiff had notice of the violations prior to the limitations period. Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).

In this case, there is both a serial violation and a discriminatory policy or practice constituting a continuing violation. SC was subject to a sexually charged school environment beginning in 1997 and continuing through January 11, 2001. None of the violations should be subject to the statute of limitations because the violations before and after the limitations period represented a continuing violation of Title II of the Americans with Disabilities Act (ADA). In Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982), the Court held that:

> Statutes of limitations . . . are intended to keep stale claims out of the court. Where the challenged violation is a continuing one, the staleness concern disappears. Petitioners' wooden application of § 812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act. Havens at 380.

The purpose of the continuing violations doctrine is precisely to allow a Plaintiff to seek relief for violations prior to the limitations period, if those violations are part of a pattern of related violations that continue into the limitations period. In this regard, Martin v. Voinovich, 840 F. Supp. 1175 (S.D. Ohio 1993) is particularly instructive for cases involving ADA claims.

In Martin, plaintiffs represented a class of persons with mental retardation and developmental disabilities. The plaintiffs were routinely denied community placement by the state, in violation of their rights under the Constitution, Title II of the ADA, and other federal legislation. The defendants argued that the two-year statute of limitations barred those claims occurring more than two years before the filing of the complaint. The court rejected this argument.

First, the Martin court acknowledged that notice is ordinarily critical to determining the commencement of a statute of limitations.

> The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.

Id. at 1188 (quoting Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984)). The court specifically recognized that plaintiffs had notice of the violations before the limitations period:

> [s]ome of the violations alleged by plaintiffs occurred beyond the two year statute of limitations, and plaintiff knew or had reason to know of the alleged injury beyond the two year statute of limitations period. Id.

Second, the Martin court reviewed the Supreme Court's holding in Havens and concluded that each denial of community placement to a class member constituted an alleged violation. Id. at 1189. The court concluded that, because these acts were part of an ongoing and continuous pattern, the continuing violations doctrine permitted the plaintiffs to seek relief for violations outside the limitations period. Id.

> Each time a position becomes available in the community and a plaintiff or member of the plaintiff class is denied that position, there is an alleged violation. Therefore, the Court finds that the acts of discrimination alleged by plaintiffs are not based solely on isolated incidents. Instead the alleged discrimination is an ongoing and continuous violation manifested in a number of incidents, and at least one of the alleged discriminatory acts occurred within the two year statute of limitations.... Accordingly, because the alleged violations which occurred more than two years ago are part of a continuous pattern of alleged discrimination, they are not barred by the statute of limitations. Id. at 1189.

Similarly, each time the Town of Tewksbury allowed SC to be subject to the known risk of sexual touching, a violation of plaintiff's rights under Title II of the ADA occurs. Disability

3

harassment against SC is a serial violation manifested in repeated and related incidents both before and after the limitations period. The various incidents in the alleged "series" of discrimination are all similar in nature. Each episode of sexual conduct occurring outside the limitations period and the failure to remedy harassment is comparable in nature to the harassment and failures to remedy occurring within the limitations period. The ongoing harassment and inadequate response by the Defendant are plainly similar enough to constitute serial violations and are not barred by the statute of limitations. Marie Marcano-Rivera, et al v. Pueblo International, Inc., 99-1702, 99-1703 (1st Cir. October 25, 2000).

The Sixth Circuit also addressed the continuing violations doctrine in Tolbert v. State of Ohio Department of Transportation, No. 98-3299, 1999 WL 218722 (6th Cir. Apr. 16, 1999), by relying heavily on its opinion in Kuhnle Brothers, Inc. v. County of Geauga, 103 F.3d 516 (6th Cir. 1997). Both of these cases directly support the application of the continuing violations theory in this case.

In Kuhnle Brothers, a trucking company challenged the constitutionality of a county ordinance that restricted travel by trucks on certain county roads, including a road to a quarry serviced by the plaintiff. The ordinance was passed outside of the limitations period, but was enforced during the limitations period. The trucking company's complaint alleged several constitutional violations. First, the company alleged that the ordinance constituted a "taking" or a deprivation of property under the Due Process clause. The court held that these allegations were untimely because they constituted a "single harm, measurable and compensable when the statute was passed." Kuhnle Brothers, Inc., 103 F.3d at 521 (quoting Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 688 (9th Cir. 1993), cert. denied, 510 U.S. 1093 (1994)).

4

The trucking company's complaint, however, also alleged that the ordinance deprived it of liberty interests to intrastate travel.  The Court noted that, with respect to these interests, "each day that the invalid resolution remained in effect, it inflicted 'continuing and accumulating harm' on [the company]." Kuhnle Brothers, Inc., 103 F.3d at 522 (quoting Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n. 15 (1968)).  Looking to the Seventh Circuit's opinion in Baker v. F & F Investment Company, 489 F.2d 829 (7th Cir. 1973), the court noted that three key criteria were met: the defendants' wrongful conduct continued after the initial injury, the plaintiff's injuries continued to accrue after the initial injury, and further injury to the plaintiffs could have been avoided if the defendants ceased their wrongful conduct. Kuhnle Brothers, Inc., 103 F.3d at 522.

Plaintiff complaint satisfies each of the three standards articulated in Tolbert and Kuhnle Brothers, Inc.  Plaintiff alleges that he was sexually harassed both before and during the limitations period from 1997 through January 11, 2001.  Therefore, each time the Defendant allowed Plaintiff to be violated, the defendants engaged in another violation of Title II of the ADA.  Second, each of these violations constitutes a new injury to Plaintiff.  Third, further injury to Plaintiff could have been avoided if defendants refrained from further violations of the Title II standards.

A systemic violation "requires no identifiable act of discrimination in the limitations period and refers to general practices or policies such as training.  Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868-69 (1st Cir. 1997).  If the policy or practice itself continues into the limitations period, a plaintiff will be deemed to have filed a timely complaint under the systemic continuing violation theory.  Id.  See also, Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).

5

Defendant's discriminatory policies and procedures clearly continued into the limitations period. Tewksbury failed to provide teachers and administrators with sexual harassment training and failed to publish a sexual harassment grievance procedure in violation of the Massachusetts Department of Education regulations. Teachers and administrators also failed to provide educational services such as a behavioral assessment or behavior intervention plan, which would have provided SC with an educational opportunity to learn about appropriate and inappropriate touching behavior. Several administrators testified to the school policy that behavior related services are not part of a special education student's individual education plan. These established policies and procedures constitute systemic violations under the continuing violation theory.

The ADA is remedial legislation intended to "break down barriers to the integrated participation of people with disabilities in community life." H.R. Rep. No. 485 (III), 101st Cong., 2d Sess. 49-50 (1990), reprinted in 1990 U.S.C.C.A.N. 445,472-473. The important remedial purposes of Title II are inconsistent with requiring persons with disabilities to be continually violated by offensive sexual conduct and then bring suit for each related violation independently in order to satisfy a statute of limitations. As the Supreme Court and the Sixth Circuit have noted, the continuing violations doctrine preserves the remedial intent of Congress in advancing important federal goals. Havens, at 380; Roberts v. North American Rockwell Corp., 650 F.2d 823, 827 (6th Cir. 1981).

Where a defendant engages in discriminatory conduct that is manifested by a system policy or a series of continuing violations, an injured party can seek relief for all related incidents if at least one incident was within the limitations period. This "continuing violations" doctrine is

6

particularly important where it supports the most basic rights embodied in important remedial legislation, such as Title II of the ADA.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court allow consideration of all acts of disability harassment from 1997 through January 11, 2001.

Respectfully requested,

PLAINTIFFS
By their Attorneys,

| /s/ Lynn A. Leonard | /s/ Anita B. Sullivan |
|---|---|
| _____ | _____ |
| Lynn A. Leonard | Anita B. Sullivan |
| Attorney-At-Law | Attorney-At-Law |
| 527 Main Street, Suite 8 | 458 Main Street |
| Melrose, MA  02176 | Wakefield, MA  01880 |
| (781) 662-6161 | (781) 224-0701 |
| B.B.O. No. 561662 | B.B.O. No. 628873 |

Dated:  October 19, 2005

7