UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

Ann Marie Porto and Nicholas Porto,　　)
Individually and on Behalf of S.C., a　　)
Minor Person with a Disability,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiffs　　　)
　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Town of Tewksbury　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendants　　　)

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

### Introduction

The Plaintiffs brought this action against the Defendant Town of Tewksbury (hereinafter the "Town" or the "school") alleging that the minor plaintiff, SC, was subjected to severe and pervasive sexual harassment by his classmate RC, a fellow minor, while they were both students in the Tewksbury Public Schools. The Plaintiffs claimed that the Town violated Title IX because they alleged the School and its employees were aware that SC was being sexually harassed by his classmate and were deliberately indifferent in their response. The Plaintiffs further contended that the Town discriminated against SC on the basis of his disability in violation of Title II. After trial, a jury returned a verdict on October 21, 2005 against the Town on the Plaintiffs' Title IX claim and in favor of the Town on the plaintiff's Title II claim. The jury awarded the Plaintiffs $250,000 in compensatory damages and $1 in punitive damages. The Court entered judgment on November 10, 2005. The Town filed a Motion for Judgment Notwithstanding the Verdict on November 23, 2005. That Motion is currently pending before this Court.

1

The Plaintiffs have now filed a Motion for Attorneys Fees and Costs. The award of such attorneys fees is premature as the Defendant's Motion for Judgment Notwithstanding the Verdict is still pending. Should the Court not grant the Defendant's Motion For Judgment Notwithstanding the Verdict and the Defendant is not successful on its subsequent appeal, then the Defendant admits that for the purposes of their request for attorneys' fees, the Plaintiffs will be the prevailing party. The Plaintiffs are seeking $302,835.27 in attorneys fees and $43,535.69 in costs. For the reasons set forth below, the Defendant opposes the Plaintiffs' motion as the hours expended were not reasonable and the requested hourly rate is not the prevailing rate in the community for attorneys of reasonably comparable skills, experience and reputation as the Plaintiff's attorneys.

A.    **Calculating the Lodestar**

As the Court is well aware, the Plaintiffs as the prevailing party in this litigation are entitled to recover a fee award. The fact that they are the prevailing party however, does not mean that they can recover all of the time spent in this litigation. Guckenberger v. Boston University, 8 F.Supp.2d 91 (D. Massachusetts 1998), citing, Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94, 102 (1st Cir. 1988). "Instead, the Court calculates a reasonable fee award using the lodestar method, which 'is the strongly preferred method by which district courts should determine what fees to award prevailing parties…'". Id, quoting, Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997). "To arrive at an appropriate award, the Court 'must evaluate the data submitted by the fee-seeker, compute a loadstar, consider the totality of the adjustment factors approved by Congress and the [Supreme] Court, … and make specific, reasoned adjustments if it is to arrive at a reduced fee award.'". Id.

2

"The loadstar approach 'contemplates judicial ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' as the starting point in constructing a fee award.'". Id. at p. 99, quoting Coutin, 124 F.ed at 337 (quoting Hensley v. Eckerhart, 461 U.S. 424 (1983). The hours expended on this litigation as reflected in the Plaintiff's billing records was excessive and the rate they seek to charge is not reasonable or comparable for lawyers of their skills experience and reputation.

### 1. Reasonable Hours Expended

"Typically, a court proceeds to compute the loadstar amount by ascertaining the time counsel actually spent on the case 'and then subtract[ing] from that figure the hours which were duplicative, unproductive, excessive or otherwise unnecessary." Id, at p. 100, quoting Lipsett, 975 F.2d at 937 (quoting Grendel's Den, 749 F. 2d at 950). The Court here should make such reductions to the time the Plaintiffs' attorneys claim to have spent on this litigation as reflected in the time records submitted to this Court. The two attorneys each submitted what appear to be contemporaneous time records. Ms. Leonard's submitted bills reflect that she worked 692.1 hours on this litigation, while Ms. Sullivan's submitted bills reflect that she worked 694.05 hours on this litigation for a total of 1386.60 hours worked. The hours worked by the two Plaintiffs' attorneys on this litigation is approximately thirty three percent more than the hours worked by the two defense attorneys. Many of the hours worked by the Plaintiffs attorneys are either duplicative, unproductive excessive or not related to this litigation and should be subtracted from the time that Plaintiffs' counsel represent they spent working on this case.

### (a) Excessive Hours

3

The time records submitted by the Plaintiffs attorneys clearly reflect that excessive time was spent by them on this case on tasks that were unproductive, unnecessary, or duplicative.

The first obvious example of excessive hours is the fact that both Plaintiffs' attorneys attended all of the depositions in this case. Only one of them questioned the witness at the deposition. Having two attorneys at a deposition of witnesses is unnecessary. While the Plaintiffs' attorneys argue in their motion that multiple representation in this case was essential, it was not essential to have two attorneys present at any of the depositions. The Plaintiffs argue that it was necessary that Ms. Sullivan attend the depositions because of her special education background. However, other than the fact that the two students involved in this case were in the special education program, the depositions were not focused on what special education services were provided to the students, but rather the focus of the depositions was the policies the Defendants had in place to address sexual harassment in the schools, what the deponent knew about those policies, what the deponent knew about the inappropriate behavior between the boys, if anything, and what steps the deponent took to stop the behavior. The issues addressed were the same as those addressed in any civil rights case at deposition. While the Plaintiffs' attorneys might both have wanted to attend, the attendance of both was not necessary. It was certainly not necessary for both Plaintiffs' attorneys to attend the depositions of their clients as they merely were there to object as to the form of the questions asked.

Further, there was no need for the attorney not taking the deposition to prepare for the deposition. Both attorneys spent time preparing for the depositions as well as conferencing with one another prior to and subsequent to the depositions. Again, the depositions were not complex and did not require the preparation on the part of two

4

attorneys particularly the attorney not participating in the questioning of the witness.

The time the Court should subtract for this duplicative work is set forth below.

<u>ABS Time</u>

| | | |
|---|---|---|
| 7/13/04 | Deposition of Paris | 6.6 |
| 8/9/04 | Prepare for deposition | 2.0 |
| 8/10/04 | Deposition of client | 7.4 |
| 8/12/04 | Deposition of McGuire | 5.7 |
| 9/8/04 | Deposition of Bradley | 1.9 |
| 9/20/04 | Deposition of McGuire (day 2) and Traveis | 4.6 |
| 9/27/04 | Prepare for deposition | 2.3 |
| 9/28/04 | Depositions Ware and Dixon | 6.2 |
| 10/1/04 | Deposition Edelstein | 4.6 |
| 10/24/04 | Consult attny re: deposition | .6 |
| 10/25/04 | Moser Deposition | 3.9 |
| 10/27/04 | McGrath Deposition | 4.2 |
| 11/30/03 | McGrath Deposition (day 2) | 4.9 |
| 2/14/05 | Stephen Deposition | 6.1 |
| 4/25/05 | Meet w/ AM Porto (depo prep) | 2.4 |
| 4/26/05 | 2nd day AM Porto Deposition | 1.6[1] |
| 7/24/05 | Consult w/ Lynn re: AM Depo | .4 |
| 7/25/05 | 3rd day AM Porto Deposition | 2.7 |

<u>LAL Time</u>

| | | |
|---|---|---|
| 4/26/05 | 2nd day AM Porto Deposition | 2.1 (see footnote 1) |

Secondly, the defendant suggests that it was not necessary for both attorneys to attend the discovery conference in this case or the hearing on the Defendant's motion for summary judgment. The issues being argued did not relate to Ms. Sullivan's alleged specialty in special education, but rather related to the Plaintiffs' Title IX and other civil rights claims. Accordingly, the Court should subtract the following time from the Plaintiff's time records.

---

[1] Ms. Porto attended a second day of deposition on April 26, 2005. However after several questions, she informed the Defense attorney that she was too tired to answer her questions. Accordingly, the deposition was suspended and scheduled for another day. The Defendants should not have to pay for time spent by the Plaintiffs' attorney at a deposition of their client which was postponed by their client once she was there because she was to tired to answer the questions posed.

ABS Time

| 4/12/04 | Attend disc. Conf. Judge Saris | 1.4 |
| 1/19/05 | Travel to and attend SJ argument | 4.8 |

Third, in addition to the work not related to the litigation set forth in section (b)

below, the Court should subtract the extra hours incurred by the Plaintiff's attorneys

due to their inexperience in the litigation of federal civil rights claims and their lack of

experience appearing in the United States District Court or entering into fee

agreements with clients.  The time that the Court should subtract is listed below.

LAL Time

| 8/27/03 | Confer Fee Agreement | .4 |
| | Research standard BBO/ | .4 |
| | draft fee agreement | |
| 11/17/04 | Follow up adjuster re: interpretation | |
| | (insurance policy) | .5 |
| 9/30/05 | Document camera tutorial travel | .9 |
| | to Court | 1.0 |

ABS Time

| 7/8/03 | exchange client agreement w/ Lynn | .7 |
| 8/27/03 | confer w/ Lynn fee agreement | .4 |
| 11/8/04 | e-mail registration Fed Court | .3 |
| 4/1/04 | research standard for tracking orders | 4.0 |
| 7/6/04 | research admissions | 4.3 |
| 8/8/04 | research 11 Amendment immunity | 3.0 |
| 9/12/04 | research presentment required civil rights | |
| | action against town | .4 |
| 10/29/04 | research discovery limits FRCP | 1.6 |

Further, the defendant suggests that the Plaintiffs' attorney spent an excessive

amount of time drafting the complaint (33 hours). This is especially true because the

facts in the complaint are nearly identical to those contained in the MCAD Complaint.

Likewise, they spent an inordinate amount of time drafting discovery to propound on

6

the Defendants.[2]  The Defendants suggest that the time below be subtracted or

significantly reduced. Likewise, the Plaintiffs attorneys spent time researching issues

that an attorney experienced in the area of civil rights law would not have to have

done.  The Defendants should not have to pay for the Plaintiffs attorneys' inexperience.

The time records also reflect that some time spent on task was simply excessive on

unnecessary. That time is listed below.

LAL Time

11/14, 12/20, 12/30, 1/2, 1/3    Draft Complaint                8, 4.5, 3, 5, 1.5

Review of deposition transcripts[3]

| 12/2/04 | AnnMarie (279 pgs) | 6.0 |
| 12/6/04 | Julie Paris (133 pgs) | 2.9 |
| 12/7/04 | Ware (183 pgs) | 4.0 |
|  | Traveis (151 pgs) | 3.3 |
| 12/8/04 | Edelstein | 2.1 |
| 12/9/04 | Bradley | 2.0 |
| 12/12/04 | McGuire (231 pgs) | 5.1 |

ABS Time

| 7/10/03 | Ltr to Tewksbury and ltr to Eagleton school re: records | .9[4] |
| 8/6/03 | Ltr to Tewksbury police re: records | .4 |
| 11/14, 12/10, 12/30/03, 1/3/04 | Draft Complaint | 4.9, 1.9, 3.0, 1.6 |
| 2/14/04 | Review answer to complaint | .7 |
| 5/4/04 | File review | .8 |
| 12/10/04 | Meet with SC and AM Porto | 5.5 |
| 12/11/04 | Travel and Meet with SC Transcribe notes | |

---

[2] While there were initially sixteen individual defendants, the written discovery requests propounded on all sixteen were nearly identical.

[3] While the Defendants recognize the need to review deposition transcripts, Ms. Leonard spent an excessive amount of time in her review of the transcripts. Her review of the testimony, in some instances, took almost the same amount of time as the deposition itself. The Court should subtract from the hours billed for this task.

[4] This is an excessive amount of time to prepare two one page letters seeking documents related to this case.

|          |                                                          |        |
|----------|----------------------------------------------------------|--------|
|          | from interview w/SC                                      | 3.4    |
| 12/29/04 | Meet w/ AM Porto                                         | 2.0[5] |
| 3/1/05   | Copy and forward additional documents to expert         | 1.5    |
|          |                                                          |        |
| 5/3/04   | Review sample interrogatory & document requests         | 3.0    |
| 5/4/04   | File review                                             | .8     |
|          |                                                          |        |
| 5/14/04  | Develop discovery                                       | 3.5    |
| 5/26/04  | Finalize 1st request documents                          | 1.6    |
|          |                                                          |        |
| 8/10/05  | Consult w/ Lynn re: scheduling of witness interviews    | .6     |
|          |                                                          |        |
|          |                                                          |        |
| 12/10/04 | Meet with SC and AM Porto                               | 5.5    |
| 12/11/04 | Travel and Meet with SC                                 |        |
|          | Transcribe notes from interview w/SC                    | 3.4    |
| 12/29/04 | Meet w/ AM Porto                                        | 2.0[6] |
| 3/1/05   | Copy and forward additional documents to expert         | 1.5    |
| 8/10/05  | Consult w/ Lynn re: scheduling of witness interviews    | .6     |

The Court should subtract the hours spent by the attorneys in speaking with the prior attorney who handled the case while it was pending before the Massachusetts Commission Against Discrimination (MCAD) and hours allegedly spent drafting a brief appealing the MCAD's dismissal of the Plaintiffs' Complaint as the Plaintiffs withdrew the appeal prior to the appeals conference and the Defendants never received a copy of any such brief. Those hours are listed below.

<u>LAL Time</u>

| 6/3/, 6/10/03 | Ltr to Attorney Gosniak | .2, .5 |
|---------------|--------------------------|--------|
|               | Ltr to Jeff Turner[7]    |        |

---

[5] The Plaintiff's attorneys give no description as to the need for these lengthy meetings with their clients at this point in the litigation.

[6] The Plaintiffs' attorneys give no description as to the need for these lengthy meetings with their clients at this point in the litigation.

[7] The Defendants are not aware that a Mr. Jeff Turner was involved in this case.

| 6/12/03 | Review file from Gosniak | 1.5 |
| | Review file MCAD | 1.5 |
| 7/22, 7/23 | Call to Nancy[8] | .2 |
| | Call to OCT attorney Ruth Ricker[9] | .5 |
| | Review OCR file | 1.0 |
| | Review AG file | .5[10] |
| 7/30, 8/1/03 | Draft appeal brief MCAD | 5.0, 7.0 |
| 8/2/03 | Strategize with attorney Sullivan | |
| | withdrawal from MCAD | .9 |

### ABS Time

| 8/30/03 | Review records from attny Gosniak | 2.4 |

While the Defendants understand that co-counsel must have telephone conferences and meetings about case strategy, the Plaintiffs' attorney appear to have conferred at times unnecessarily. The Defendants have only highlighted those conferences between the attorneys that appear excessive or for which there is no description to be subtracted by the Court from the Plaintiffs time spent on this litigation.

### LAL Time

| 5/14 | Meet re: discovery (after 9.1 drafting discovery requests) | 3.5 |
| 7/12/04 | Confer w/ attorney Sullivan | .6 |
| 8/5/04 | Confer w/ Anita | .2 |
| 8/12/04 | Confer | .6 |
| 9/8/04 | Confer | .5 |
| 9/10/04 | Discuss discovery ltr from Ecker | .8 |

---

[8] Ms. Leonard fails to fully identify Nancy or her role in this case

[9] The Defendants are not aware of any involvement Ms. Ricker had in this case

[10] The Defendants are not aware of any involvement the OCR or the Attorney General's Office had in this case and if they were involved, the Plaintiffs never disclosed them as witnesses or as having any relevant documents.

| | | |
|---|---|---|
| 9/16/04 | Discuss discovery ltr Ecker | .3 |
| 9/19/04 | Discuss | .7 |
| 9/27/04 | Confer | .5 |
| 9/30/04 | Confer | .3 |
| 10/20/04 | Consult on depositions | .8 |
| 10/24/04 | consult re: depositions | .3 |
| 10/26/04 | follow up depositions | .2 |
| 11/09/04 | call from Sullivan re: records | .8 |
| 1/12/05 | call to Sullivan | .3 |
| 1/13/05 | call to Sullivan | .1 |
| 1/24/05 | Confer with Sullivan | |
| 2/10/05 | Confer w/ Sullivan re: SC depo | 1.6 |
| 6/13/05 | 2 calls from Sullivan | .2 |
| 7/1/05 | Scheduling update from Sullivan | .2 |
| 7/12/05 | confer with Sullivan | .9 |
| 7/13/05 | Confer with Sullivan | 1.4 |
| 7/14/05 | Confer with Sullivan | .5 |
| 8/5, 6, 7, 8, 9, 10, &16 | Confer re: pretrial-orders | .3, .6, 1.1, 1.2,.5,.6,.3 |

ABS Time

| | | |
|---|---|---|
| 7/29/03 | Case Conference re: MCAD Appeal | .6 |
| 8/2/03 | Case Conf re: w/drawal of MCAD Appeal | .9 |
| 4/5/04 | Consult Lynn | .7 |
| 7/12/04 | Consult w/ Lynn | .6 |
| 11/17/04 | Consult Lynn re: insurance policy | .5 |

| | | |
|---|---|---|
| 3/3/05 | Consult re: continuing trial date | 1.4 |
| 6/6/05 | R/r e-mail from Lynn | .4 |
| 6/13/05 | 2x call Lynn | .2 |
| 6/27/05 | Case conf Lynn trial prep | 5.0 |
| 7/4/05 | Consult Lynn r/r e-mail investigate Dr. Moore MGH | 1.17 |
| 7/11/04 | Case conf Lynn | 2.0 |
| 7/12/-5 | Consult w/ Lynn | .9 |
| 7/13/04 | Consult w/ Lynn | 1.4 |
| 7/14/05 | Consult w/ Lynn | .5 |
| 8/23/05 | review e-mail from Lynn | .3 |
| 9/4/05 | R/r e-mail from Lynn | .9 |
| 9/6/05 | R/r e-mail from Lynn | .3 |
| 9/7/05 | R/r email from Lynn | .2 |
| 9/8/05 | R/r e-mail from Lynn | .2 |
| 9/26/05 | R/r e-mail from Lynn | .6 |
| 9/27/05 | Call to Lynn | .7 |
| 9/28/05 | R/r e-mail from Lynn | .6 |
| 10/9/05 | R/r e-mail | .4 |

Finally, administrative tasks such as copying documents and hand-delivery of documents to the Court are not reimbursable to an attorney but are part of the overhead contained in the attorney's fee. The hours spent by the Plaintiffs in such administrative tasks are listed below.

LAL Time

| | | |
|---|---|---|
| 1/5/04 | Hand deliver file complaint Meet with constable deliver | 1.6 |

11

|          |                                                                 |       |
|----------|-----------------------------------------------------------------|-------|
|          | documents service                                               | .5    |
| 12/31/04 | Travel to court to hand deliver opp. S.J. court closed. Call attorney Sullivan | 1.0[11] .2 |
| 9/9/05   | Hand deliver impounded documents to the Court                   | 1.0   |
| 12/30/04 | Finalize merge brief and photocopy/assemble exhibits            | 7.5   |

### (b) Work not related to Litigation

The Plaintiffs' attorneys are only entitled to fees spent working on this litigation and not for fees spent on other matters related to the Plaintiffs services. Both attorneys in their time records bill for time spent on tasks related to developing SC's individualized education plans and meeting with the team at the Tewksbury Public Schools and Eagleton School to assist in the development of that plan. While the Plaintiffs' attorneys no doubt spent time developing SC's education plans and meeting with the team, that time is not related to the subject litigation, The following is the time the Defendants believe should be subtracted from the Plaintiffs' attorneys time as being unrelated to this litigation.

LAL Time

|                 |                                                                 |                 |
|-----------------|-----------------------------------------------------------------|-----------------|
| 2/27, 3/4/04    | Ltr to Dr. DeAngelis team meeting team meeting & roundtrip travel | .1, 2.0, .8, .6 |
| 12/7/04         | Call to Eagleton School                                         | .3              |
| 12/22/04        | Call to Eagleton School                                         | .3              |
| 2/15/05         | Call and e-mail Bernice Sandler                                 | .2              |
| 9/7/05          | Calls and e-mail D. Laissow Women's law center                 | .3[12]          |

---

[11] It is not clear why the Plaintiffs' attorney did not electronically file the opposition to the summary judgment motion. Regardless, the hand delivery by an attorney of a motion to the court is not necessary and purely administrative.

[12] The Defendants are not aware of any involvement that Bernice Sandler or Dina Laissow had in this litigation.

ABS Time

| Date | Description | | |
|---|---|---|---|
| 8/29/03 | Corresp. Dr. DeAngeles re: SPED | .4 | |
| 1/29/04 | Consult client service and Team meeting | | .3 |
| 2/3/04 | F/u Eagleton evaluations, f/u case manager | .6 | |
| 3/2/04 | F/u Eagleton School Pat Doherty re: updated evaluations | .7 | |
| 3/3/04 | Interview P. Doherty clinician re: services, current mental health | .4 | |
| 3/4/04 | Travel, consult attny and parent re: team meeting | 2.5 | |
| 6/3/04 | Call AM re: TEAM | .1 | |
| 11/5/04 | Travel to and review probate records re: correspondence & family | 1.7 | |
| 3/24/05 | prepare for meeting w/ SC | 1.3 | |
| 3/25/05 | Meet w/ SC conf. W/ attny | 4.9[13] | |

### (c ) Core versus Non-core

The Plaintiffs attorneys have not even attempted to distinguish between time
spent of "core" legal work and "non-core" legal work, a "well settled" practice. Id. at
p. 101, citing, McLaughlin v. Boston Sch. Comm., 976 F. Supp. 53, 62 (D. Mass. 1997).
Core work "includes legal research, writing of legal documents, court appearances,
negotiations with opposing counsel, monitoring and implementation of court orders."
Id. quoting, Brewster, 3 F.3d at 492 n.4. "Non-core work on the other hand, 'consists of
less demanding tasks, including letter writing and telephone conversations.'" Id.
Accordingly, the court should significantly reduce the plaintiffs' counsel hourly fee for
non core work and should order the plaintiffs' counsel to delineate in the fee petition
core versus non-core work.

### (d) Title II Claim

The Plaintiffs did not prevail on their claim brought pursuant to Title II. The
Court should subtract the amount of time spent by the attorney that is clearly set forth

---

[13] It does not appear that this meeting with SC was related to this litigation as SC's deposition
had already been taken by this time.

on the billing records submitted related to the Title II claim.  Those hours are set forth

below.

**LAL Time**

| | | |
|---|---|---|
| 10/17/05 | Research Title II Claim | 2.1 |
| | draft 2nd Title II brief | 1.2 |
| | response to Title II brief | .3 |
| 10/18/05 | Research punitive damage Title II | 6.0 |
| | Motion for application cont. | |
| | Violation Title II | |

**ABS Time**

| | | |
|---|---|---|
| 10/2/05 | Research ADA | 1.9 |
| 10/11/05 | Finalize ADA brief | 2.0 |
| 10/13/05 | Research ADA standards | 2.3 |
| 10/16/05 | Research ADA | .7 |

**B.     Reasonable Hourly Rates**

The second part of the calculation of the lodestar is the setting of an hourly rate

for each attorney.  The applicable rates are "those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience and reputation."

Guckenberger, 8 F.Supp. at p. 103, quoting, Grendel's Den, 749 F.2d at 955.  "As with

the tabulation of reasonable hours, the Court should not accept attorney submissions at

face value but rather should 'assign more realistic rates to time spent'".  Id., quoting,

Coutin, 124 F.3d at 337.

Here, the rates being requested by both attorneys are higher than those

prevailing for lawyers of reasonably comparable skill, experience and reputation.  The

Plaintiffs attach to their Motion for Fees and Costs, the affidavit of Nancy Shilepsky, a

seasoned employment attorney who sets forth the rates charged for attorneys in her

Boston law firm.  With all due respect to the Plaintiffs attorneys, their experience and

14

reputation is in no way comparable to that of Nancy Shilepsky who was a partner in a large Boston law firm and who has spent years focusing on employment litigation and has tried sexual harassment cases both in the state and federal courts. In addition, the Plaintiffs' attorneys' skill and experience is not even comparable to the associates in her firm. Further, the Plaintiffs' attorneys are solo practitioners located outside of Boston and their rate should be compared to solo practitioners of comparable experience and reputation located outside of Boston. Likewise, the Plaintiffs' attorneys reference cases in which the Court has awarded fees to attorneys in large Boston law firms to support their requested rate as well as a fee award to Harvey Schwartz in the amount of $350. Again the Plaintiffs' attorneys' experience does not remotely compare to a seasoned civil rights attorney such as Harvey Schwartz and their rates should not be compared to those awarded to attorneys practicing in large Boston law firms. Plaintiffs' counsel have informed the court that neither of them had ever tried a case in the Federal Court before this one. Likewise, it is apparent that they had very limited experience in trying cases of any kind. Therefore,  the Plaintiffs attorneys' fees should be compared to the fees earned by other attorneys who practice outside of Boston and who have had no prior trial experience and little if any experience prosecuting civil rights cases.

Further, while they claim to have experience in the area of civil rights, as reflected in their time records, the Plaintiffs attorneys spent hours researching issues that a seasoned civil rights attorney would know from years of practice. For example, the Plaintiffs' attorneys had to research whether presentment to the Town as required by the Massachusetts Tort Claims Act, M.G.L. c. 258, §4 was a prerequisite to filing a civil rights claim in the federal district court. This is not a task that an attorney who has even been involved in one or more civil rights cases would have to undertake.

15

Finally, the Plaintiffs' attempt to compare their fees to a survey of fees reported by Lawyers Weekly for the 100 largest law firms in Massachusetts is not relevant because again, the Plaintiffs' attorneys are not members of any of the 100 largest law firms. Rather, they are solo practitioners who practice outside of the Boston area and who had no previous trial experience and little if any experience prior to this case in the area of civil rights litigation. Accordingly, the Plaintiffs' attorneys requested fees of $250 for Ms. Leonard and $200 for Ms. Sullivan should be reduced. The defendant suggests that a more appropriate rate is one of for "core work" to $175 for Ms. Leonard and $150 for Ms. Sullivan.

Respectfully submitted,
The Defendants,
Town of Tewksbury,
By their attorney,

/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO # 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: December 9, 2005

16