UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 04 - 10003 PBS

| | |
|---|---|
| Ann Marie Porto and Nicholas Porto,<br>Individually and on Behalf of S.C., a<br>Minor Person with a Disability,<br><br>Plaintiffs<br><br>vs.<br><br>Town of Tewksbury<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

### Introduction

October 21, 2005 a jury returned a verdict in this action against the Defendant on the Plaintiffs' Title IX claim and for the Defendant on the Plaintiff's Title II claim. The Defendant filed a Motion For Judgment Notwithstanding the Verdict or in the Alternative For a New Trial on November 23, 2005. The Plaintiffs filed an Opposition to the Defendant's Motion on or about December 31, 2005.  A hearing was held on the Defendant's Motion on February 1, 2006.  At that hearing, the court indicated that the Plaintiff had not provided the Court with citations to non-hearsay evidence that could support a jury finding for the Plaintiff on the Title IX claim. Specifically, the Court indicated that the Plaintiff's allegations of sexual harassment prior to sexual activity in the bathroom of the Middle School did not rise to an actionable level. The court indicated that the Plaintiff's claims against the Defendants could only be valid if the Plaintiff introduced evidence from which a reasonable jury could find that Stephen was sexually harassed by Richard in the bathroom of the Wynn Middle School.

1

The Court gave the Plaintiff's counsel the opportunity to supplement their memorandum in opposition to the Defendant's Motion for Judgment Notwithstanding the Verdict, ordering that counsel set forth any <u>non-hearsay</u> evidence which could prove that Richard initiated the inappropriate sexual conduct in the bathroom at the Middle School. The introduction of such evidence was necessary in order for the Plaintiff's Title IX claim to survive. The Court gave the Defendant fourteen days after the filing by the Plaintiffs of their supplemental memorandum in which to respond.

As set forth below, there was absolutely no <u>non-hearsay</u> evidence introduced at trial to support the Plaintiffs' claim that Richard harassed Stephen during their sexual encounter(s) in the bathroom of the Middle School. Indeed, there is no competent evidence that Richard initiated the inappropriate sexual conduct in the bathroom between October 2000 and January 2001. Accordingly, the Defendant's Motion for Judgment Notwithstanding the Verdict must be allowed.

**Argument**

A.    <u>**There was absolutely no non-hearsay evidence introduced into evidence at trial to support the Plaintiffs' claim that Richard sexually harassed Stephen**</u>

The Plaintiffs are unable to respond to the court's request for non-hearsay evidence from which a jury could find that Stephen was sexually harassed by Richard in the Middle School bathroom because there was no such evidence introduced. When one reduces the case to the question as to what occurred in the bathroom, the only reasonable conclusion that a finder of fact could have made from the competent evidence was that Stephen initiated the conduct and coerced Richard into participating, or that that both boys were willing participants. There is no way that a reasonable conclusion could be drawn from the evidence that the sexual

2

contact in the bathroom resulted from "harassment" by Richard who overcame Stephen's will.

Defendant sets forth below the evidence introduced at trial that addresses the issue of which boy initiated the inappropriate sexual behavior in the bathroom in the middle school. A review of all of the evidence introduced at trial demonstrates that there was absolutely no non-hearsay evidence that Richard initiated the sexually inappropriate behavior in the bathroom.

**Evidence Introduced At Trial During the Plaintiffs' Case**

1.    **Testimony of Stephen**

The only true source of non-hearsay evidence regarding inappropriate sexual behavior in the Middle School bathroom is the testimony of Stephen. Stephen's testimony at trial regarding the incident in the bathroom in January 2001 was as follows:

Trial transcript Day 6 at pp. 17-18 (direct examination):

Q- So why don't you just tell me what happened in the bathroom at the Wynn School.

A – Me and Richard started touching each other in the bathroom, and then Miss Dixon came down to the bathroom and started knocking on the door and said, "Let's go boys."

Q – And what happened when Mr. Ware came in the bathroom?

A – Mr. Ware came in the bathroom, and he said, "You two come with me."

Q – Okay. How were you feeling at that point?

A- Embarrassed.

Q. – Embarrassed, okay. Were you scared?

3

A. – Yes

Q. – Okay. So where did you go with Mr. Ware?

A- We went to his office.

Q – Okay. And then what happened?

A – Uhm, we spoke . . . about what was going on in the bathroom.


Trial transcript Day 6 at p.28  (direct examination)

Q – At some point was there a problem in the gym bathroom?

A – Yes.

Q – And what was that?

A – We were touching each other and everything in the gym bathroom.


Trial Transcript Day 6 at p. 40 (cross-examination)

Q – Stephen, do you remember that you and Richard would always ask each other before you touched each other?

A – I heard you the first time.  I'm trying to remember.

Q – Oh, I'm Sorry.

    (witness pausing)

A- I believe so.


    The above-referenced testimony is the <u>only</u> testimony by Stephen describing the inappropriate sexual behavior in the bathroom at the Wynn Middle School in 2001.  It is also the only <u>non</u>-hearsay evidence introduced by the Plaintiffs to prove harassment. No reasonable jury could conclude from that testimony that Stephen participated in the sexual act(s) because he was being harassed by Richard.

In the Plaintiffs' Further Opposition to Motion for Judgment Notwithstanding the Verdict or In the Alternative, For a New Trial ("Second Opposition"), the Plaintiffs assert that Stephen testified at trial that he participated in the acts in the bathroom because he feared that "Richard would tell everyone he was gay or that Richard would beat him up". However, the record reveals no such testimony.

In the first portion of Stephen's trial testimony cited by the Plaintiffs, Stephen after a leading question, states as to Richard "me and him had problems. He would always try to touch me" Trial Transcript Day 6, at p. 11. However, Stephen then goes on to testify that this touching occurred in various bathrooms in various schools. Indeed, when he becomes specific, he testifies that, "we started touching each other's leg. And Miss Paris caught us, and she said, 'you two separate'". Trial Transcript Day 6, at p. 12 The Court must note that Miss Paris was Stephen's fifth and sixth grade teacher, she was not a teacher at the Middle School. Thus, the events described occurred prior to the relevant period.

The only other portion of Stephen's trial testimony that the Plaintiffs reference in their Second Opposition does not in any way support their assertion that Richard initiated the sexual conduct in the bathroom at the Wynn Middle School. In that portion, Stephen describes an incident in which Stephen claims that Richard was bothering him, so "I took my elbow and punched him in his nose and made it bleed, and then I got detention. He didn't". Trial Transcript Day 6 at pp. 21-22. Stephen does not testify that this incident occurred during the seventh grade at the Middle School, rather the testimony indicates that the incident occurred in the fourth grade. A review of Stephen's trial testimony makes clear that Stephen never testified that Richard initiated any sexual behavior in the bathroom at the Wynn Middle School.

5

Incredulously, in one portion of their latest filing the Plaintiffs attempt to place the burden on the Defendant to show that it was Stephen who initiated the behavior in the bathroom and assert that Stephen reported at the SAIN meeting that it was Richard's idea to have an encounter. Second Opposition at p. 6. This suggestion is without any support. First, statements made by Stephen at the SAIN meeting are hearsay when introduced by the Plaintiff. Regardless, the evidence was crystal clear at trial that all at the SAIN meeting including, Mr. Ware, the Assistant District Attorney Ms. McDougal, Dr. McGrath and Mr. McGuire, heard and testified about the horrifying exchange between Ms. Porto and Stephen in which Stephen admitted that he initiated the sexual behavior in the bathroom in January 2001. Trial Transcript Day 4 at pp. 73-74. In fact, Ms. Porto at trial testified that Stephen also admitted to initiating the behavior in the bathroom in January 2001 at a meeting held prior to the SAIN meeting with Principal McGuire, Superintendent McGrath, Behavioral Specialist Ware and Stephen. Specifically Ms. Porto testified as follows:

Q. – Isn't it true that in front of you, Stephen told – you were told – do you recall going to a meeting with the principal of the Wynn Middle School, the superintendent, the behavioral specialist, and a detective, you and your son, after the January 11, 2001 incident:

A. – Yes, I remember, I remember.

Q. – And do you remember that you were told at the meeting that it was Stephen that initiated the sexual relationship with R?

A. This is what I was –

Q. Do you remember that?

A. I remember, and this is what I was told.

6

Q. – Do you remember, do you remember that in front of you, you asked Stephen, "Is that true?" And he said "yes," that he did initiate the sexual relationship with R?

A. Did – if I could speak, I would explain ---

The Court: You know what, cross-examination is a little different. Do you remember Stephen saying that?

A. I remember Stephen saying that only because of what the –what Mr. Ware said. And what Mr. Ware said, I was not told in any way, shape, or form through the whole time of the incident.

The Court: I'm going to strike all of that you need to listen to the question, all right?

Q. Mrs. Porto, do you remember that at that meeting, you turned to Stephen and said, "Is it true that you initiated the sexual relationship with Richard?" Do you remember that?

A. What was that?

Q. Do you remember that you at this meeting turned to your son –

A. Uh-huh.

Q. - --and asked him, "Is it true that you were the one that initiated the relationship with Richard?

A. A relationship.

Q. Sexual.

A. A relationship, not a sexual, a relationship.

The Court: So you remember the word being "relationship"?

The Witness: Yes.

Q. And do you remember, Mrs. Porto, that when Stephen admitted to you and everyone there, stated that he was the one that started the idea of having sex with Richard, you said, "If he's the perpetrator, I do not want him in my house. I'm going

7

to return him to his parents. I don't want him in my house because he's the

perpetrator"? Do you remember saying that?

A. I remember saying that, yes, I do.

Trial Transcript at Day 2 at p. 77-79.


It is obvious that Stephen's statements at the SAIN meeting cannot form the

basis of a finding that Richard harassed him and forced him to have a sexual

encounter in the bathroom. Indeed, if one considers that evidence, the only

reasonable conclusion is that Stephen was the initiator of the sexual behavior.

The Plaintiffs introduced the following additional evidence at trial in an

attempt to support their harassment claim.

**2.      Testimony of DSS Worker Elizabeth Stasio Englehart and the DSS Report**

Ms. Stasio-Englehart was the Department of Social Services employee who

investigated the 51A allegation of child abuse, neglect or sexual abuse filed against

the Tewksbury Public Schools after the January 11, 2001 incident between Richard

and Stephen in the bathroom of the Wynn Middle School. At the outset of her

testimony the Court ruled that all statements contained in Ms. Stasio-Englehart's 51B

report introduced into evidence at trial as Exhibit No, 27 were hearsay and were only

being admitted, not for the truth of the statements, but as evidence of the basis of her

opinion. The Court gave the following limiting instructions at trial concerning the

statements made to the witness:


**Trial Transcript Day 6 at pp. 58-59 (direct examination).**

The Court: What are you reading from?

Ms. Leonard:  This is the investigation.

The Court: This is what you just introduced into evidence?

Ms. Leonard: Yes

The Court: Don't forget, <u>all of those comments are hearsay,</u> but I'm allowing in the report because this is a public record. So it's just as to what was the basis for how she came to her conclusion (emphasis added).

Ms. Leonard: Although there's statements by Mrs. Porto.

The Court:    Excuse me. They're all hearsay.

Ms. Leonard: Okay, okay.


The Court again instructs that the statements contained in the report are hearsay during the cross examination of Ms Stasio-Englehart. Specifically the Court instructed:

**Trial Transcript 6 at p. 78 (cross examination)**

The Court: Now, don't forget, all of these statements that she's relying on are <u>hearsay,</u> and the only reason I'm allowing any of it to come in is not for the truth of it but so that you understand what was the basis for her bottom-line conclusion so that you can evaluate that (emphasis added).

The Plaintiffs now assert that this court should now consider statements made by Stephen to the witness contained in the report as non-hearsay evidence. In their attempt to reverse the court's ruling post trial, the Plaintiffs argue that the statements contained in the properly admitted report should be admitted under the exception to the hearsay rule contained in Fed. R. Evid. 803(1) and 803(3), the present sense impression and the existing state of mind exceptions to the hearsay rule. Obviously, it is much too late to make evidentiary arguments. At the trial, the Court ruled that the statements were hearsay. That is that. In any event, Stephen did not make the

statements to the investigator contained in the 51B report until January 18, 2001, one week after the incident occurred. He also made the statements in the presence of Mrs. Porto, thus making them even more unreliable as her desire to blame Richard and her unwillingness to accept that Stephen had any responsibility for the sexual conduct was most evident. As the statements were not made contemporaneously with the bathroom incident, they do not qualify for the hearsay exceptions cited by the Plaintiffs.

There are other reasons why Stephen's statements to Ms. Stasio-Englehart that Richard initiated the sexual behavior cannot form the basis of a finding for the Plaintiff. The witness testified that she received contradictory statements from the boys. Stephen said Richard started it, Richard said Stephen started it. The witness testified at trial that it was not the focus of her investigation to determine which boy initiated the inappropriate sexual behavior, nor could she or did she make a conclusion as to which boy initiated the inappropriate behavior. Specifically, Ms. Stasio-Englehart testified as follows:

**Trial Transcript 6 at pp. 54-55 (direct examination)**

Q – Did you have conversations with different individuals during the course of your investigation regarding who initiated the conduct?

A- I interviewed both boys and that was not really the focus of my investigation.

Q – What was the focus of your investigation?

A – I was not investigating an incident of sexual abuse. I was investigating an issue of neglect, so my focus was not exactly on who did what, when, and where, but rather, did sexual activity occur, and if so, was it at the school, and how did these boys have

the opportunity to do this, you know, under the watchful eye of the school? That was my focus.

Q – Notwithstanding your focus, during the course of your interviews, did you receive any information regarding who may or may not have initiated the conduct?

A – You know, there were several statements made, and none of them were consistent. You know, one person said this one, and the other person said that one. There was no consistency.

Q – So when you say one said this one and one said that one, are you stating that some of the individuals you interviewed indicated that Richard was the initiator?

A – Yes, and some of them said that Stephen was.

Ms. Stasio-Englehart, who was the person who interviewed the boys, testified that she heard contradictory evidence as to who initiated the sexual conduct in the school. She was unable to reach a conclusion either at trial or in her report as to which boy initiated the inappropriate sexual behavior. Thus, even if the statements made to the witness by Stephen and Richard were admitted for the truth, the Defendant suggests that a jury could not make a determination as to which boy was telling the truth without hearing the boys testify in Court. Certainly if Ms. Stasio-Englehart could not reach a conclusion as to which boy initiated the inappropriate sexual behavior in the bathroom having the benefit of speaking with both of the boys and weighing their credibility, a jury cannot render a conclusion as regards initiation based on those same statements which were not made in court. In any event, the statements by both Richard and Stephen contained in the DSS report are hearsay and cannot be used by the Plaintiffs to prove that Richard initiated the sexual conduct in the bathroom at the Wynn Middle School.

11

### 3. Testimony of Robert Ware

In addition to the above, during their case, the Plaintiffs introduced the testimony of Robert Ware. Mr. Ware's testimony does not support the Plaintiffs' contention that it was Richard that initiated the inappropriate sexual behavior in the bathroom, but rather is evidence that it was in fact Stephen who initiated the inappropriate sexual behavior in the bathroom at the Wynn Middle School. Regardless, the Plaintiff's cannot introduce Mr. Ware's testimony as to what Stephen told him as those statements are hearsay. On the other hand, the Defendants can introduce the statements made by Stephen to Mr. Ware for the truth of the matter asserted as they are admissions of a party opponent, an exception to the hearsay rule. Mr. Ware testified at trial as follows:

**Trial Transcript 4 at pp. 33 – 35. (direct examination)**

Q- Did you ever ask about what was going on in the bathroom?

A – I did.

Q – And what was the response from Stephen?

A- I brought them both into my office together, and they told me that they were touching each other's privates.

The Plaintiff introduced a memorandum written by Mr. Ware on January 12, 2001 into evidence as Exhibits 21 and 22. In reading from that document Mr. Ware testified as follows:

A – "{SC} stated to me that they were touching each other. I asked Stephen what exactly they were touching, and Stephen said privates. I asked Richard if he could tell me what happened. He was in the bathroom when Stephen had came in and asked Richard if he wanted to do it. Richard then stated, 'I'll do it if you want to.' I then

asked each of the boys if they agreed to this behavior or if they were forced into it. Both boys stated that they agreed to do it."

Q – So you recall telling the DSS investigator that Stephen reported to you that they had been touching each other's private parts in the bathroom once a week; is that correct:

A- Yes I do I recall seeing the document.

**Trial Transcript 4 at pp. 72-74 (cross examination)**

Q – Now at some point [at the SAIN meeting] the version of what occurred on January 11 come out of the Portos—did the Portos report what happened January 11?

A – yes.

Q – And who spoke first? Who spoke, do you remember?

A – I believe that it was Ms. Porto.

Q – And what did she say?

A – Uhm, I believe she was stating that her son was a victim.

Q – A victim of Richard's?

A – Yes.

Q – Did her son say that, or was it just her?

A. – Both.

Q – They both were saying that he was a victim of Richard's?

A – Well, Mrs. Porto spoke first, and then Stephen agreed to that.

Q – Agreed to what she said?

A – Yes.

Q – What did you do when you heard ---now, what did Stephen say? Did Stephen say something different than what he had told you on January 11?

13

A – If I can recall, I believe Stephen said that Richard was exiting the bathroom while he was entering the bathroom, and Richard turned around and proceeded to follow Stephen into the bathroom.

Q – And that it was Richard's idea to have this encounter?

A – That's what Stephen presented at the SAIN hearing.

Q – Okay, so then what happened? Tell everyone what happened next.

A – I—I kind of talked to Stephen and walked him through the steps that we had walked through during the information that he told me.

Q – This was in front of everybody?

A – Yes, it was at the meeting in front of everybody.

Q – Okay. And what did you walk Stephen with? What did you discuss with him?

A – Just step by step from him asking to go to his locker, that he agreed to me that he did go to his locker, and he knew that Richard was in there, and that he proceeded to go down there and seek Richard.

Q – That he initiated the activity?

A- Yes.

Q – Okay. And then Stephen agreed with you that that's in fact what had happened?

A – He did.

Q – And what happened then at this meeting?

A – Mrs. Porto asked Stephen if that was the truth, and Stephen said "yes".


Mr. Ware's testimony at trial cannot be the basis of a finding that Stephen was the victim of sexual harassment by Richard or that Richard initiated the sexual activity in the bathroom at the Wynn Middle School. In fact, it appears to support the

14

opposite proposition that is, that Stephen initiated the sexual conduct in the bathroom at the Wynn Middle School in January 2001.

The Plaintiffs did not introduce any other evidence during their case at trial to show that Richard initiated the sexual conduct in the bathroom of the Wynn Middle School. While Ms. Porto did testify at trial, her testimony as to what Stephen told her is all hearsay and was introduced at trial only to prove alleged notice to the school of the behavior between the two boys as long as Ms. Porto testified that she told the teachers about the conversations. Ms. Porto did not witness any of the behavior alleged. [1].

As the Plaintiffs did not introduce any other evidence during their case to support their claim that Richard harassed Stephen and that Richard initiated the inappropriate sexual behavior in the bathroom at the Wynn Middle School, there was no evidence from which a reasonable fact finder could conclude that Richard was the aggressor and Stephen was the victim of sexual harassment. As a result, this Court should enter Judgment Notwithstanding the Verdict as regards the Plaintiffs' Title IX claim.

**Evidence Introduced at Trial During the Defendant's Case**

The Defendant called only two witnesses to testify at trial, Dr. Bradford Smith and Dr. Christine McGrath, the Superintendent of the Tewksbury Public Schools. At trial, Dr. McGrath recounted what occurred at the SAIN meeting. Her version of events corroborated the testimony of Mr. Ware that Stephen admitted to initiating the

---

[1] If the Court seeks information as to the evidence introduced at trial as to which boy initiated the October incidents, the sum total of the evidence introduced at trial is set forth by the Defendant in the Defendant's JNOV at pp. 7 and 8. While the evidence introduced does not support the Plaintiffs claim that Stephen was the victim of Richard, as discussed in the JNOV, the one statement the Plaintiffs seek to introduce in support of their assertion that Richard initiated on incident of sexual touching in October 2000, is hearsay.

sexual conduct in the bathroom at that meeting.  Again Stephen's statements are not hearsay when introduced by the Defendant as they are admissions of a party opponent an exception to the hearsay rule.  On the other hand, the Plaintiffs cannot use Ms. Porto's or Stephen's statements at the SAIN meeting for the truth as those statements are hearsay when introduced by the Plaintiff.

Dr. Smith testified as to what is contained in his treatment notes which were marked as exhibits at trial and as to what he was told by Ms. Porto and Stephen concerning Stephen's sexual behavior both with Richard and with his foster sister. Dr. Smith's testimony and treatment notes introduced at trial do not support the Plaintiffs claim that Stephen was harassed by Richard, specifically that Richard initiated the sexual conduct in the bathroom in 2001.  Dr. Smith testified as follows:

**Trial Transcript 7 at pp. 35-38 (direct examination)**

Q – It's "First he went in room,", right [referring to treatment notes introduced into evidence as Exhibit   ] Is that where that begins?

A – Yes. Well, he began to say up above, "I don't know the day of the week. I think it was afternoon, after health regular time to go to the boy' room after health is fundamental health to math spelling and social skills. First he went into bathroom. Then I had to go really bad. He said, 'Oh, I have to go to bathroom.'  Then he asked me if I wanted to do it. He said, 'Do you want to do it?' No other boys in the bathroom at the time.  I said, 'Do you want to do it?' And he said 'Yes.'"…

**p. 37**

Q – And were you interested in finding out who initiated this behavior on January 11?

Ms. Leonard: objection.

16

The Court: Overruled.

A – I was interested, but that was not my primary role in this work.

Q – But you were interested, and you asked him questions about it, didn't you?

A – Yes.

Q – Now, the next page on the bottom is the page that begins "Mr. Ware came in".

And on the bottom there's a question written, "Who started it?"

A- Uh-huh.

Q – Who asked the question?

A – I did.

Q – And what did he tell you?

A – Stephen said, "I started it." That was what Stephen reported his answer was to

–oh, I'm sorry, I misspoke. This would be Stephen reporting to me at this time his

conversation with Mr. Ware, and it would be Mr. Ware who asked the questions,

"Who started it?"

Q – And Stephen said, he said, "I started it"?

A – Right.

Q – And then you wrote, "Steve – I started it, meaning I humped him first,", right?

That's what you wrote that Stephen told you?

A – Yes, yes.

**Trial Transcript 7 at pp. 42-43 (direct examination)**

Q – And Stephen told you on January 30, 2001, that he said. [referring to Dr. Smith's

treatment notes marked as Exhibit    ] "Let's have sex in the bathroom," and Richard

said "Sure"?

A – Yes. ….

Q – Now, you asked him, didn't you, on January 30 why he was having sexual touching with Richard?

A – Yes.

Q – And why don't you tell us all what he told you.

A – "Why do that? To get attention, to be wanted by someone."

**Trial Transcript 7 at p. 48, 52, 66-67 (direct examination)**

Q – And he told you then that he and Richard asked each other before they would have sexual contact?

A – Yes. …

**p. 66**

Q – He told you that he and Richard always asked each other before they did anything right?

A – I did not take that quote to mean that they always asked each other. I took that quote to mean referring to the January 11, time that they had asked each other.

Q – Does it anywhere in your notes reflect Stephen indicating to you that there was some time when they didn't ask each other?

A – You know, there is very conflicting data much of which we've looked at, and I can't remember who asked who and if in each case they asked each other.

Q – Is it anywhere in your notes – and the jury will have these notes—indicated that there was a time when they didn't ask each other?

A – Are you asking, was there a time where they both didn't reciprocally ask each other and both say "yes"?

Q – Yes, in your notes anywhere?

A – I can't – recall my notes that well. I would have to review that date.

18

Q – Well, we won't take the time because the jury will have all the time in the world to look.

During the cross- examination of Dr. Smith, the Plaintiffs' attorney questioned him as to what Ms. Porto reported to him as to what Stephen told her had occurred during the second grade through the fifth grade between he and Richard (Trial Transcript 7 at pp. 89-95). The testimony by Dr. Smith as to what Ms. Porto told him Stephen had told her is all hearsay and cannot be introduced by the Plaintiffs for the truth of the matter asserted, but rather, could only be introduced by them as statements he used to form the basis of his opinion.[2]

Further, during cross-examination, Dr. Smith testified as to what Stephen told him. Specifically, Dr. Smith testified as follows:

**Trial Transcript 7 at pp. 97 – 99**

Q – Okay. And there have been several references to the notes today regarding the sexual contact in January 2001, in that area. It's fair to say that there were several disclosures to you from Stephen, and from Mrs. Porto in fact that Richard had initiated sexual contact with Stephen; isn't that correct?

A – There are –there are some disclosures in there that <u>Stephen</u> initiated (emphasis added).

Q – Okay. And do you recall that Richard had asked Stephen if he wanted to do it?

---

[2] The Defendant objected to Dr. Smith testifying as to his opinion that was outside the course of his treatment of Stephen and that was not contained anywhere in his treatment notes as the Plaintiffs did not disclose Dr. Smith as an expert witness and did not disclose what they anticipated Dr. Smith's opinions to be and the basis for any such opinions despite repeated requests by the Defendant for such expert disclosures prior to trial.

A – That Stephen reported that?

Q – Yes.

A – Yes.

Q – Okay. And do you recall that Stephen reported that Richard told him to face the wall, and he put his penis in his bum?

A – Yes.

Q – And do you recall that there was a report that Stephen was afraid he would be taken advantage of?

A – I don't remember that.

Q – Okay, well, let me refresh your memory.  Do you see a note that says "Afraid he'll be taken advantage of?"

A – Yes.

Q –Okay. It's fair to say that Stephen's mental retardation affected his reporting, isn't it?

A – At the time, I believed it did, yes.

Q – Did you have an opinion as to who initiated the conduct?

     Mr. Kesten:  Objection.

     The Court: sustained.

Q – In any event, there were several reports to you that the conduct was initiated by Richard; isn't that correct?

A – There was at least one. …


     The Plaintiffs cite to this same testimony in their Second Opposition. First, as with Ms. Stasio-Englehart, the contradictory statements as to who started the sexual behavior were made to Dr. Smith outside the presence of the jury. He did not testify

that he reached a conclusion as to which statement was true, thus the jury could not decide to reject Stephen's statement that he started the sexual behavior and accept a "report" that Richard did. Further, a review of the treatment note referenced does not support Plaintiffs' assertion that Stephen was afraid of Richard or more specifically, that Stephen was afraid of Richard in January 2001. Rather, in reviewing those treatment notes with Dr. Smith, Plaintiffs' attorney (whose questions are not evidence) did not keep each statement in context and in fact when Dr. Smith was asked "do you see a note that says "Afraid he'll be taken advantage of?", that statement is part of the following dialogue contained in the treatment notes:

Said if Richard asks him in school- he would have sex-

…Asked question about Richard – he said he would do it again.

..Masturbation ok in private

afraid –he'll be taken advantage of –

Exhibit 32.

There is no evidence that when Stephen told Dr. Smith that he was "afraid that he'll be taken advantage of" he was referring to Richard or sexual conduct in the bathroom. Further, there is nothing in the treatment notes that indicates that Richard initiated the sexual conduct in the bathroom. Rather the notes state in part:

First, he against wall- he facing against wall – his – pants down, uwear down- my pants down- uwear down, Did you put your penis in his bum – no only the cheek. …How long did you put your penis against his cheek? …like 2 minutes..Then he put his thing in my bum all the way in- ..he told me to face the wall- then he put his penis all the way in the hole…He told me to get against the wall to go against the side –

Exhibit 32.

While statements made by Stephen to Dr. Smith are hearsay and cannot be used by the Plaintiff for the truth of the matter asserted, even if they could, the above complete statement indicates that Stephen told Dr. Smith that he initiated the sexual conduct in the bathroom as it was Richard (according to Stephen) who was up against the wall first with Stephen behind him rubbing his penis against his cheek. No reasonable finder of fact could hear Dr. Smith's testimony and conclude that Stephen was the victim of sexual harassment during the sexual conduct in the bathroom of the Middle School.

What happened to Stephen is a tragedy. It is certainly inappropriate that these two Middle School students were engaged in sexual conduct in the bathroom of the Middle School. However, in order to prevail on their Title IX claim, the Plaintiffs had to prove that the inappropriate sexual conduct in the bathroom was the result of sexual harassment of Stephen by Richard. This Court gave the Plaintiff a great deal of leeway regarding the introduction into evidence of Mrs. Porto's claims of alleged inappropriate language throughout many years in the Tewksbury schools. However, the court ruled, correctly, that all of the alleged conduct prior to the Middle School could not form the basis of a finding for the Plaintiffs. Indeed, the Court also ruled that the October 2,000 mutual touching in class also could not form the basis of a finding for the Plaintiff. Accordingly, when one strips away all of the other evidence, there was a total failure of proof that the sexual behavior in the bathroom of the Middle School resulted from sexual harassment. The Defendant suggests that the reason Stephen did not testify that he was a victim in Middle School was because he was not. The sexual behavior between Richard and Stephen in the seventh grade,

while wholly inappropriate, was not the result of harassment. That is the only conclusion anyone could reach from the actual competent evidence on the subject.

**B.**    **The Plaintiff was not excluded from participation in or denied the benefit of an education program or activity as a result of the alleged sexual harassment between October 2000 and January 2001.**

The Defendant argued in the JNOV that the Plaintiffs did not present any evidence at trial that the alleged behavior between the boys had any effect, much less a systematic effect, on educational programs or activities of Stephen between October 2000 and January 2001. JNOV at p. 12. The Defendants incorporate the evidence cited and arguments made in the JNOV here. At the hearing on the JNOV, the Plaintiffs argued that the fact that the Defendant did not affirmatively give Stephen counseling as part of his individualized education plan ("IEP") was sufficient to show exclusion because exclusion should mean something different for a special education student. There is absolutely no case law that supports the Plaintiffs' theory that for purposes of Title IX it is sufficient to show that a special education student was not provided with certain service as part of his IEP in order to show that he was excluded from the benefit of an education for the purposes of prevailing on a Title IX claim. The argument is nonsensical even if the service had been requested, as the failure to provide counseling to a special education student concerning appropriate and inappropriate sexual behavior does not exclude the student from receiving the benefit of an education and here, there was no evidence that Stephen was excluded from any educational program or activity from October 2000 until January 2001.

### Conclusion

Accordingly, the Plaintiffs failed to introduce sufficient <u>non-hearsay</u> evidence at trial to support the Plaintiffs' claim that Richard harassed Stephen and more specifically, that Richard initiated the inappropriate sexual conduct in the bathroom in

January 2001. Accordingly, the Defendant's Motion for Judgment Notwithstanding the Verdict must be allowed.

Respectfully submitted,
The Defendant,
**Town of Tewksbury**
By their attorney,


/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042
Deborah I. Ecker, BBO # 554623
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

DATED: March 15, 2006