UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
)
ANN MARIE PORTO and               )
NICHOLAS PORTO,                   )
Individually and on Behalf of     )
SC, a Minor Person with           )
a Disability,                     )
               Plaintiffs,        )
          v.                      )    CIVIL ACTION
                                  )    NO. 04-10003-PBS
TOWN OF TEWKSBURY,                )
                                  )
               Defendant.         )
                                  )
```

Saris, U.S.D.J.

**MEMORANDUM AND ORDER**

April 28, 2006

I.   INTRODUCTION

This is a peer-on-peer sexual harassment case involving two mentally handicapped adolescent boys in middle school in Tewksbury, Massachusetts.[1]  On October 21, 2005, after a ten-day trial, the jury returned a verdict for the plaintiff on his Title IX claim that he was sexually harassed by another boy of the same mental handicap, awarding him $250,000 in compensatory damages and $1 in punitive damages.  Defendant has filed a motion for judgment as a matter of law or, in the alternative, for a new trial, pursuant to Fed. R. Civ. P. 50(b).  (Docket No. 119.) Plaintiff moves for attorneys' fees, costs, and prejudgment

---

[1] The Court issued a Memorandum and Order dated June 17, 2005 (Docket No. 38) setting forth the factual background.

interest.  (Docket No. 118.)  After hearing and review of the supplemental briefs, Defendant's motion is **DENIED**.  I also address Plaintiff's request for interest under state law and attorneys' fees.

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

**A. Standard**

Defendant moves for judgment as a matter of law or, alternatively, for a new trial.  "A party seeking to overturn a jury verdict faces an uphill battle."  Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005).  "Courts may only grant a judgment contravening a jury's determination when 'the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.'"  Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004) (quoting Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 759-60 (1st Cir. 1994)).  In deciding such a motion a court must consider all evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000); Rivera Castillo, 379 F.3d at 9.

**B. Application**

As the Court instructed the jury, to prevail on his Title IX claim, Plaintiff had to prove by a preponderance of the evidence

that he was sexually harassed by Richard, the other boy.  The Court further instructed that "if you find that Stephen initiated the sexual touching on any given occasion, he was not the subject of sexual harassment on that occasion."  (Jury Instr. No. 13.)  Defendant vigorously argues that there is insufficient evidence to prove that Richard was the initiator of the sexual conduct which occurred in the bathroom of the Wynn Middle School on January 11, 2001 and precipitated Stephen's leaving the school permanently.

The identity of the initiator of the sexual conduct in the bathroom was a subject of much dispute throughout the trial, and evidence was presented implicating both Stephen and Richard on that score, including contradictory statements by the boys.  Additionally, both boys are profoundly mentally impaired, making factual disputes and credibility determinations particularly difficult to resolve.  It was the jury's job to resolve this factual question, based upon its assessment of the evidence.  As such, if sufficient evidence was presented that Richard was the initiator of the sexual conduct in the bathroom, the Court will not override the jury's decision even if some contradictory evidence was admitted.  See Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 37 (1st Cir. 2006) (stating that to overturn a jury's verdict there must be "a total failure of evidence to prove plaintiff's case" (quoting Mayo v. Schooner Capital Corp., 825 F.2d 566, 568 (1st Cir. 1987))).

In the case at bar, while the evidence was close, properly admitted non-hearsay evidence exists in the record to support a conclusion that Richard initiated the sexual contact with Stephen in the bathroom on January 11, 2001.

Stephen indicated on the stand that he feared Richard, even though neither party's counsel asked him directly who initiated the contact in the bathroom on January 11, 2001. Stephen reported that he was afraid of Richard and would obey him out of fear that Richard would tell the other students that Stephen touched him sexually. (Trial Tr. 6:22, Oct. 17, 2005.) He also testified that Richard "would always try to touch" his private parts, sometimes in the bathroom. (Trial Tr. 6:11-12, Oct. 17, 2005.)

Stephen's fear of Richard is corroborated by the January 21, 2001 report of Elizabeth Stasio-Englehart, the state investigator who investigated the bathroom incident. The report was admitted into evidence as Exhibit 27 under the public records exception, Fed. R. Evid. 803(8)(C). To be sure, statements by third parties are not admissible solely because they are printed in a public record. See Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991). The Court instructed the jury that the report's findings as to the substance of the statements made to the DSS were hearsay and were admitted to provide the basis for the DSS's ultimate conclusion. (Trial Tr. 6:58-59, 78, Oct. 17, 2005.) In her report, Ms. Stasio-Englehart describes her conversation with

4

Stephen, in which he described feeling forced to engage in sexual acts with Richard out of fear that Richard would beat him up or tell others he was gay.  (Ex. 27 at 5.)  Stephen's statements regarding his fearful then-existing state of mind with respect to Richard one week after the incident were admissible pursuant to Fed. R. Evid. 803(3).

The harder question is whether the jury could have considered these prior statements to DSS in assessing Stephen's credibility in his trial testimony that Richard was the initiator.  The defense highlighted evidence of inconsistent statements made by Stephen on January 24, 2001 at a school meeting with the teacher, principal, district attorney, foster mother, and others to support its thesis that Stephen admitted to his teacher he was the initiator, but was lying about it now because he was afraid of his foster mother who threatened to throw him out of the house if he initiated the sex.[2]  (Trial Tr. 8:47, Oct. 19, 2005.)  In the instructions of law, the Court made clear to the jury that prior inconsistent statements by a witness before trial could be used to help make credibility determinations.  (Jury Instr. No. 9.)

Generally speaking, prior consistent statements are hearsay

---

[2] Plaintiff has argued consistently that it does not matter who initiated the contact, but I have rejected this legal position with respect to the Title IX claim.

which cannot be used to bolster a witness's credibility. However, Stephen's before-court statements to the DSS investigator during the meeting on January 18, 2001 (one week after the incident), could be considered as prior consistent statements by a witness to rebut the charge of recent fabrication or improper influence because of the threats of the foster mother at the later "SAIN" meeting on January 24, 2001. Under Fed. R. Evid. 801(d)(1)(B), these consistent statements are separately admissible, are "not hearsay" according to the rule, and could have been used to assess Stephen's credibility.

This evidentiary issue of the admissibility of Stephen's statements to the DSS investigator as non-hearsay under Section 801(d)(1)(B) was not raised at trial. Accordingly, because I instructed the jury that the statements were hearsay, they unlikely considered the statements other than for purposes of assessing credibility and Stephen's state of mind.

The testimony of Dr. Bradford Smith, a defense witness, provides stronger evidence that Richard was the initiator. Dr. Smith is a clinical psychologist who began treating Plaintiff in 1999 and treated him after the bathroom incident.

On cross-examination, Dr. Smith testified that Stephen had told him during one of their sessions that it was Richard who had initiated the sexual contact in the bathroom. (Trial Tr. 7:97-98, Oct. 18, 2005.) Dr. Smith testified as follows:

    Q.   Okay. And there have been several references to the

6

> notes today regarding the sexual contact in January, 2001, in that area. It's fair to say that there were several disclosures to you from Stephen, and from Mrs. Porto in fact, that Richard had initiated sexual contact with Stephen; isn't that correct?
>
> A. There are -- there are some disclosures in there that Richard had initiated.
>
> Q. Okay. And do you recall that Richard had asked him if he wanted to do it?
>
> A. That Stephen reported that?
>
> Q. Yes.
>
> A. Yes.
>
> Q. Okay. And do you recall that Stephen reported that Richard told him to face the wall, and he put his penis in his bum?
> A. Yes.
>
> Q. And do you recall that there was a report that Stephen was afraid he would be take advantage of?
>
> A. I don't remember that.
>
> Q. Okay, well, let me refresh your memory. Do you see a note that says "Afraid he'll be taken advantage of"?
>
> A. Yes.

(Trial Tr. 7:97-98, Oct. 18, 2005.)

Although Dr. Smith was testifying as to an out-of-court statement by Stephen, the Court admitted the evidence under the hearsay exception for statements for purposes of medical diagnosis or treatment. See Fed. R. Evid. 803(4); see also Danaipour v. McLarey, 386 F.3d 289, 297 n.1 (1st Cir. 2004) (holding that an identification of an abuser by a child is admissible under Rule 803(4) if the statement was for diagnosis

7

or treatment). The jury had admissible evidence that Stephen, who was both extremely impaired and sometimes berated by his volatile foster mother, would have felt safest and freest to tell the truth within the confines of the doctor's office. See Fed. R. Evid. 803(4) advisory committee's note (noting the patient's "strong motivation to be truthful"). This evidence supports the jury's finding that Richard was the initiator in the bathroom. In addition, the evidence at trial demonstrated that Stephen was attracted to girls (i.e., his foster sister, "M"), not boys.

When all logical inferences are drawn in favor of the plaintiff, there is sufficient evidence to support a determination that Richard initiated the sexual conduct with Stephen in the bathroom on January 11, 2001 and at other times.

Defendant also argues that there is insufficient evidence to support the jury's verdict on the remaining elements of Plaintiff's Title IX claim. After review of the evidence, the Court finds that sufficient evidence exists to support the jury's verdict. Defendant's motion is **DENIED** (Docket No. 119).

### III. INTEREST

Another issue the Court must resolve is the rate of interest to assess for the jury's damage award. Plaintiff requests interest at the Massachusetts statutory rate: 12 percent per annum running from the date the complaint was filed. Mass. Gen. Laws ch. 231, § 6B. However, the award of the state interest

rate is contingent upon Plaintiff's prevailing on a state cause of action.

In this case, the plaintiff did not prevail on his state cause of action under Mass. Gen. Laws ch. 231, § 1C, but did succeed on his federal cause of action under Title IX. In short, Massachusetts state law does not yet recognize a claim for peer-on-peer sexual harassment. In the only case to address the issue, the Massachusetts Commission Against Discrimination refused jurisdiction over such a claim. Buschini v. Newburyport Public Schs., 18 MDLR 216, at *2 (Mass. Comm. Discrim. 1996) ("Setting aside the question as to whether seven year olds can engage in or experience sexual harassment . . . , I find no support for the proposition that an educational institution can be vicariously liable for the behavior of one student towards another . . . .").

As the plaintiff succeeded on his federal claim, but not his state claim, he is entitled to the federal interest rate for civil cases under 28 U.S.C. § 1961.

### IV. ATTORNEY'S FEES AND COSTS

Plaintiffs, as prevailing parties, are seeking $302,835.27 in attorneys' fees, and $43,535.69 in costs. Defendant challenges those fees as excessive for a variety of reasons. I address certain threshold issues and defer others. First, I do not find that Plaintiffs billed excessive time because two

attorneys attended many proceedings.  It is not unusual for two attorneys to attend or prepare for a deposition, or attend hearings or conferences.

Second, I award an hourly rate of $200 for Plaintiffs' counsel.  Given the going rate for the most experienced civil rights lawyers (around $300-$350 an hour), I find that Plaintiffs' counsel, who are much less experienced in federal practice and civil rights law, should be reimbursed at this lower rate.

Third, the Court will not enhance the lodestar.

Finally, Plaintiffs' counsel shall recalculate hours based on core and non-core rates, and counsel shall confer to eliminate excessive, vague, or poorly documented time entries.  Entries like "confer" or "discuss" are plainly inadequate and should be deleted.  The time spent on the Title II claim should be deducted.  Neither side can bill for this settlement conference over attorneys' fees.  The revised attorneys' fees request shall be filed in two weeks, and any opposition a week later.  Only if necessary will I hold a hearing.

**S/PATTI B. SARIS**
United States District Judge